UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP, INC., ET AL

VERSUS

ZURICH AMERICAN INSURANCE
COMPANY, ET AL

CIVIL ACTION

NO. 12-00257-JJB

**RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for partial summary judgment filed by Plaintiff The Shaw Group, Inc. and Shaw Process Fabricators, Inc. (collectively "Shaw") (Doc. 102), Defendant North American Specialty Insurance Company ("NAS") (Doc. 108), and Defendant Zurich American Insurance Company ("Zurich") (Doc. 110)[1]. Shaw has filed a reply. (Doc. 118). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Shaw's motion for summary judgment and DENIES NAS's motion for summary judgment and Zurich's motion for summary judgment.

I.

REC Solar Grade Silicon LLC ("REC") sued Shaw in the Eastern District of Washington for property damages resulting from pipe spools manufactured by Shaw and used in REC's manufacturing facility in Moses Lake, Washington. At

---

[1] In Zurich's motion for summary judgment, Zurich incorporates and adopts its arguments that it made in its memorandum in opposition to motion for partial summary judgment. (Doc. 107).

the time of the suit, Shaw was insured by NAS, Zurich, and Westchester Fire Insurance Company[2] ("Westchester") (collectively "Insurers"). Shaw filed the REC claims with the Insurers seeking defense and indemnity. The Insurers denied coverage for REC's claims and allegedly failed to properly defend Shaw in the Washington litigation. (Doc. 102-2). Shaw alleges that it invited the Insurers to mediation in Louisiana, but the Insurers did not respond. Shaw and REC have agreed to a settlement, but this settlement is subject to the results of a reasonableness hearing to be held in the Eastern District of Washington. The parties have not notified this Court as to those results.

Shaw filed this action in the Eastern District of Washington in July 2011 seeking a declaratory judgment that the Zurich and NAS insurance policies provided coverage and that Zurich and NAS acted in bad faith "in failing to properly defend the REC's lawsuit, failing to indemnify Shaw and in failing to provide settlement authority to Shaw . . . during their settlement negotiations with REC." (Doc. 102-2, p. 10). Additionally, Shaw contends that the Insurers did not conduct a reasonable investigation prior to denying indemnity coverage, nor did they provide a reasonable explanation of the basis of the policy to support why the claim was denied. In August 2011, Westchester and NAS filed a similar action in the Middle District of Louisiana and sought a determination that Louisiana law controlled. In addition, Westchester and NAS sought a

---

[2] Shaw has resolved its claims against Westchester, and Westchester is no longer a party to these proceedings.

determination that regardless of whether Louisiana or Washington law applied, the underlying claims were excluded by their policies. In November 2011, this Court ordered that the Westchester/NAS suit be transferred to the Eastern District of Washington. In April of 2012, the Eastern District consolidated the actions and granted the defendants' motion for transfer of venue. (Doc. 83). The dispute was transferred back to this Court.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The movant, or party seeking summary judgment, bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In the parties' cross-motions for partial summary judgment, the parties seek a declaration from this Court determining whether Louisiana law or Washington law should govern. Shaw argues that Washington law applies (Doc. 102), and Zurich and NAS argue that Louisiana law applies (Doc. 110 & Doc. 108). Specifically, NAS argues that Louisiana law applies both to Shaw's extra-contractual claims (the insurer misconduct claim) and to the interpretation of the "Your Product" exclusion under the NAS policy. NAS contends that under its policy exclusions, the "your product" exclusion is relevant to this case and reproduces it in part. NAS states that the exclusion bars coverage for:

3

E.  *"Property Damage" To "Your Product" Arising Out Of It or Any Part Of It*

*With regard to fabricated pipe, this exclusion will only apply to "Property Damage" to any spool of fabricated pipe if the "Property Damage" arises out of that spool or any part of that spool.*

(Doc. 108-3, p. 8-9).

Shaw initially argues that, as a threshold matter, Louisiana's choice of law rules should apply, even though it cites a Fifth Circuit ruling to the contrary. (Doc. 102-2). ("In a diversity action, a federal court must apply the choice of law rules of the state in which the complaint was filed." *Kirk v. Universal Underwriters of Texas Insurance Co.*, 359 Fed. Appx. 549, 551 (5th Cir. 2010)). However, in Shaw's reply (Doc. 118), Shaw concedes that 'the Court must decide the applicable law for Shaw's claims . . . using Washington's choice-of-law rules." (Doc. 118, p. 1).

NAS argues that because Shaw filed first in Washington, raising contractual and extra-contractual claims, and NAS filed second in Louisiana on just contractual claims, both Washington and Louisiana's conflict of law rules should be utilized "because that contractual issue is pertinent to both Shaw's first-filed Washington action and NAS's second-filed Louisiana action." (Doc. 108-3, p. 10). Zurich contends that Louisiana's conflicts of law rules apply, but does not cite any support for this proposition. (Doc. 107).

4

Case 3:12-cv-00257-JJB-DLD    Document 119    10/17/12    Page 4 of 12

As a threshold matter, this Court must make an initial determination as to which state's conflict of laws rules apply in an effort to streamline the voluminous arguments propounded by the parties. Because this action was initially filed in Washington, the first filed suit in Washington is the controlling action. Although NAS argues that because their initial action was filed in Louisiana, and therefore Louisiana's conflict of laws rules should control in addition to Washington's conflict of laws rules, the Court disagrees. The substance of the NAS action is nearly identical to the substance of the Shaw action, with the only difference being that NAS wanted to raise defenses that the policies did not apply and that Louisiana law controlled. This could have been raised in an answer to the original Shaw action in Washington and would have prevented potential forum shopping. The law requires a "transferee forum to apply the law of the transferor court," this Court will apply Washington's choice of law rules. *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). Thus, this Court will apply Washington's conflict of laws rules.

Under Washington law, there must be an actual conflict between Washington law and the law of another state before the court will "engage in a conflict of laws analysis." *Seizer v. Sessions*, 940 P.2D 262, 264 (Wash. 1997). An actual conflict exists when "the result of the issues is different under the law of the two states." *Id.* If there is not an actual conflict, then Washington law "presumptively applies." *Id.* Additionally, Washington "follows the rule of

dépeçage, which may require the Court to apply the law of one forum to one issue, while applying the law of a different forum to another issue in the same case." *Milgard Mfg., Inc. v. Illinois Union Ins. Co.*, 2011 WL 3298912, at *3 (W.D. Wash. 2011). Thus, even though NAS cites this case for support that Washington law directs this Court to apply Louisiana law, NAS also argues that "the law that applies to the policy is dispositive of what law applies to the extra-contractual obligations created by the policy." (Doc. 108-3, p. 9). However, this is not the rule under Washington's law.

Therefore, under the rule of dépeçage, this Court must consider whether there is an actual conflict with respect to the parties' claims. If the party alleging a conflict demonstrates that there is an actual conflict, then the court must determine "which jurisdiction has the 'most significant relationship' to a given issue." *Seizer v. Sessions*, 940 P.2D 262 at 265. To determine this, courts consider the factors in the Restatement (Second) of Conflict of Laws § 188 for contract claims, and the Restatement (Second) of Conflict of Laws § 145 for tort claims. *See Mulcahy v. Farmers Ins. Co. of Washington*, 95 P.3d 313, 317 (Wash. 2004) and *Rice v. Dow Chemical Co.*, 875 P.2d 1213, 1217 (Wash. 1994). The Restatement (Second) of Conflict of Laws § 188 provides

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

6

Case 3:12-cv-00257-JJB-DLD    Document 119    10/17/12    Page 6 of 12

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place of contracting,
>> (b) the place of negotiation of the contract,
>> (c) the place of performance,
>> (d) the location of the subject matter of the contract, and
>> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971).

The Restatement (Second) of Conflict of Laws § 145 provides

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.

Case 3:12-cv-00257-JJB-DLD   Document 119   10/17/12   Page 7 of 12

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

In this case, the claims are (1) Shaw's claim for insurer misconduct (which encompasses Shaw's arguments concerning the duty to indemnify and duty to defend) and (2) NAS's claim that there was no duty under the "Your Product" exclusion.

*Insurer Misconduct Claim*

Shaw contends that there is an actual conflict for the insurer misconduct claims because Washington imposes more stringent duties and steeper penalties. (Doc. 118, p. 8 & Doc. 102-2, p. 13). However, Shaw does not cite any support for this proposition. In NAS's motion, NAS appears to skip the first prong of the analysis, determining whether an actual conflict exists, and applies the second prong of the analysis, citing the Restatement factors. (Doc. 108, p. 21).

Because the parties do not dispute that there is an actual conflict, the Court will pretermit this issue and address the second prong of the analysis to determine which state, Washington or Louisiana, has the most significant relationship to the issue. Under Washington law, insurer misconduct, or "bad faith handling of an insurance claim is a tort and is analyzed under general tort principles." *Absher Construction Co. v. North Pacific Insurance Co.*, 2012 WL 966198, at *13 (W.D.Wa. 2012). Under the conflict of laws analysis, Washington courts will look to Restatement (Second) of Conflict of Laws § 145 to assess

8

which jurisdiction has the most significant relationship to this tort-based claim. Shaw cites *Newmont USA Ltd. v. American Home Assurance Co.*, 676 F.Supp.2d 1146 (E.D. Wash. 2009) to support its claim that Washington has the most significant relationship. In *Newmont*, the parties disputed whether New York or Washington applied in a bad faith claim for breach of insurance contract. *Newmont USA Ltd. v. American Home Assurance Co.*, 676 F.Supp.2d 1146, 1163 (E.D. Wash. 2009). The court applied Washington law, finding that "Washington has the greatest contacts with such claim." *Id.* First, Washington was the "place of performance of the contract as it is the place where the events which constituted the basis of the underlying lawsuit occurred." *Id.* Additionally, the court found that "Washington has a substantial interest in deterring bad faith conduct of insurers within the state." *Id.*

Notably, the court stated that New York law could govern "the question of coverage under the policies," and "[a]s messy and unpredictable as it may be, certainly is not an anomaly to have various states laws applied to different issues in an insurance dispute involving a policy without a choice of law provision." *Id.* at 1163-64. Thus, the court applied Washington's law for the bad faith claim, but noted that this did not "decide the issue of choice of law as to the coverage dispute in which other contacts . . . might play a more significant role than they do here." *Id.* at 1164.

9

Case 3:12-cv-00257-JJB-DLD   Document 119   10/17/12   Page 9 of 12

Here, Washington law should apply to the bad faith claim because Washington was the location of the property damage and loss that gave rise to the underlying lawsuit. Additionally, Washington was the jurisdiction in which the underlying lawsuit was filed and defended. Although Shaw is a Louisiana citizen, Washington has a more significant relationship than Louisiana does to the present suit. Therefore, Washington law should apply.

*"Your Product" Exclusion*

NAS argues that an actual conflict exists regarding the "your product" exclusion because Washington and Louisiana courts have reached different results in interpreting similar provisions. (Doc. 108-3).[3] In its reply motion, Shaw contends that neither NAS, nor Zurich, has shown that an actual conflict exists between Washington and Louisiana law as to the "your product" exclusion. (Doc. 118, p. 15). Shaw urges that Washington law applies because there is a lack of an actual conflict. Furthermore, Shaw cites a Washington case and a Louisiana

---

[3] NAS cites a Washington case for the proposition that the "exclusion bars coverage for the defective work itself, but not for the consequential damages to correct the defect." (Doc. 108-3, p. 10). However, the case provides that "'property damage' . . . is a term of art and . . . can include consequential damages." *Mutual of Enumclaw Ins. Co. v. T&G Const., Inc.*, 199 P.3d 376, 384 (Wash. 2008). NAS also argues that Louisiana courts have found "your work" exclusions to "bar coverage for both the defective work or product itself, *and* for the consequential damages to correct the defect." (Doc. 108-3, p. 10, citing *Stewart Interior Contractors, LLC v. Metalpro Industries, LLC*, 2007-0251 (La. App. 4th Cir. 10/10/07), 969 So.3d 653, 655-60. Therefore, the Court does not see how the Washington and Louisiana courts differ.

case to establish that both jurisdictions apply the same construction rules to policy exclusions. See *Williamson v. Historic Hurstville Ass'n*, 556 So.2d 103, 107 (La. App. 4th Cir. 1990) ("If there is any doubt or ambiguity as to meaning of a provision in an insurance policy it must be construed in favor of the insured and against the insurer. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage such that exclusionary clauses are strictly construed against the insurer.") (citations omitted); *see also Stuart v. American States Insurance Co.*, 953 P.2d 462, 464 (Wash. 1998) ("In interpreting exclusions, we have held exclusions from coverage of insurance are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning. Exclusions should also be strictly construed against the insurer.") (citations omitted).

Therefore, because there does not seem to be an actual conflict, there is no need to address which jurisdiction's laws apply. Under Washington choice of law principles, Washington law will apply in the absence of showing an actual conflict. *Milgard Mfg., Inc. v. Illinois Union Ins. Co.*, 2011 WL 3298912, at *3 (W.D. Wash. 2011).

III.

For the foregoing reasons, the Court GRANTS Shaw's motion for summary judgment that Washington law applies, and DENIES NAS's and Zurich's motion that Louisiana law applies.

Signed in Baton Rouge, Louisiana on October 17th, 2012.

_____

**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**