UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP, INC., ET AL

CIVIL ACTION

VERSUS

NO. 12-257-JJB

ZURICH AMERICAN INSURANCE
COMPANY, ET AL

## RULING ON MOTION FOR RECONSIDERATION

This matter is before the Court on Motions for Reconsideration filed by

Defendants North American Specialty Insurance Company ("NAS") (Doc. 122) and

Zurich American Insurance Company ("Zurich) (Doc. 131). Plaintiffs The Shaw Group

Inc. and Shaw Process Fabricators, Inc. (collectively "Shaw") have filed oppositions

(Doc. 124 & Doc. 128, respectively), to which NAS and Zurich have filed replies. (Doc.

127 & Doc. 131, respectively). Oral argument is not necessary. The Court has

jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons herein, the Court GRANTS

NAS's motion (Doc. 122) in part and DENIES it in part, and the Court DENIES Zurich's

motion (Doc. 131).

I.

Shaw was sued in the Eastern District of Washington by REC Solar Grade

Silicon LLC ("REC") for property damages resulting from pipe spools manufactured by

Shaw and used in REC's manufacturing facility in Washington. At the time of the suit,

Shaw was insured by NAS and Zurich.[1] Zurich was the primary insurance carrier and

NAS was the excess insurance carrier. According to the First Amended Complaint (Doc.

---

[1] Shaw was also insured by Westchester Fire Insurance Company, but Westchester is no longer a party to this action.

11), Shaw alleges that the Insurers informed it that there was no insurance coverage for REC's property damages. Zurich told Shaw that it would defend the underlying litigation in Washington under a "full reservation of rights." (Doc. 11 at p. 5). Shaw alleges that Zurich "unreasonably breached its duty to defend by failing to pay for the defense in a timely manner." (*Id*.). Shaw further alleges that NAS sent a letter, stating that there was no coverage for the underlying litigation under its policy. Finally, Shaw alleges that all of the Defendants "violated their duty to engage in good faith settlement negotiations of the Underlying Litigation by refusing indemnity to Plaintiffs herein prior to the July mediation between Plaintiffs herein and REC." (Doc. 11 at 8).

In NAS's motion for reconsideration, NAS argues that this Court recited incorrect facts by stating that the insurers "denied coverage for REC's claims and allegedly failed to properly defend Shaw in the Washington litigation." (Doc. 122, citing Doc. 119 at 2). The Court was reciting Shaw's allegations in Shaw's memorandum and notes that Shaw has raised both failure to indemnify and failure to defend claims against the Defendants. The Court should have specified that the failure to defend claim was specific to Zurich and not NAS, and will reconsider its findings based on this distinction.

Additionally, NAS argues in its motion that this Court erred in stating that Shaw "invited the insurers to [a] mediation in Louisiana, but the Insurers did not respond." (Doc. 119 at 3). NAS points out that Shaw had invited the Insurers to a meeting in California, but then uninvited them. NAS further points out that Shaw invited its insurers to another mediation in Louisiana, which NAS attended. (Doc. 122). In Shaw's opposition, Shaw argued that it explained in its memorandum and that the record shows that it invited the Insurers to a mediation in Louisiana but the Insurers did not participate

2

"in any meaningful way." (Doc. 124 at 9). It appears from the record that NAS did attend the mediation in Louisiana, and thus the Court erred in finding that NAS did not attend.

Thus, because the Court now finds that the claim against NAS is solely failure to indemnify and NAS did attend the mediation in Louisiana, the Court will now address the legal arguments raised by NAS in support of its motion. NAS has asked this Court to explain why there is no difference between Louisiana law and Washington law concerning a "your product" exemption and to reconsider its holding that Washington law should apply to the extra-contractual claim against NAS.

II.

Your Product

NAS has asked this Court to clarify its holding that there was no conflict of law with respect to the "your product" exclusion. The Court cited the Louisiana case *Stewart Interior Contractors, LLC v. Metalpro Industries, LLC*, 2007-0251 (La. App. 4th Cir. 10/10/07); 969 So.2d 653, and the Washington case *Mutual of Enumclaw Insurance Co. v. T&G Construction Inc.*, 199 P.3d 376 (2008), and found that that there was no difference between the cases. In *Stewart*, the court found that the policy precluded coverage for the "allegedly defective steel studs, all costs related to the replacement of the steel studs, and for any damage to property attendant to their removal and/or repair, including any loss of use or profits caused by the delay . . . ." *Stewart*, 969 So.2d at 668. Thus, NAS is correct in arguing that Louisiana law interprets the "your product" exclusion not to cover consequential damages. However, the *Stewart* court explained that Louisiana law "has further interpreted the 'work product' provisions to exclude consequential damages *directly* resulting from defective products, such as costs

3

incurred as a result of the delay in a construction project during the repair and replacement process." *Id.* at n. 24 (emphasis added). *Stewart* referenced two Louisiana cases, *McMath Constr. Co., Inc. v. Dupuy*, 03-1413 (La.App. 1 Cir. 11/17/04), 897 So.2d 677 and *Gaylord Chem. Corp. v. ProPump, Inc.,* 1998-2367 (La. App. 1 Cir. 2/18/00), 753 So.2d 349, in which the courts both found that the exclusion of consequential damages did not necessarily exclude damages to other property. *See McMath*, 897 So.2d at 683 ("damage to property other than the insured's work or product may not be unambiguously excluded") and *Gaylord*, 753 So.2d at 356 ("damages to *other* property would not be excluded by the 'work' and 'product' exclusions."). In other words, when the consequential damages are those "directly resulting from defects in the insured's 'work' or 'product' itself, such as damages for inconvenience, engineering fees, and repair costs," these damages are excluded. *Gaylord*, 753 So.2d at 355-56. However, if the consequential damages are damages to other property, then these are not necessarily excluded. *Id.*

In *Mutual of Enumclaw Insurance Co. v. T&G Construction Inc.*, the Washington Supreme Court found that there was "no coverage for the removal and replacement of the siding." *T&G*, 199 P.3d at 385. However, if the siding needed to be removed to "repair damage caused by T&G to the surfaces and interior walls underneath the siding, then there is coverage for the cost of the removal and replacement." *Id.* Similarly, the Western District of Washington addressed the scope of coverage for consequential damages. *Riverfront Landing Phase II Owners' Ass'n v. Assurance Co. of America*, 2009 WL 1952002 (W.D. Wash. 2009). In *Riverfront*, the court cited *T&G*, explaining that "to the extent that removal and repair of [the insured's] work was necessary to get

to and repair the resultant damage to the work of another, those consequential damages are covered losses." *Id.* at *6. However, the insurance company is "not responsible for the costs of removing and repairing [the insured's] work to uncover and repair property damage that is not covered by the policy, including [the insured's] own faulty work." *Id.*

Thus, the Court does not see a discernible difference between the two states' laws and their interpretations of a "your work" exclusion. Both states appear to interpret a "your work" exclusion to exclude damages directly caused by the insured's work and consequential damages that directly result from the work. However, both states also appear to interpret this exclusion as not necessarily excluding coverage for damages to other's work caused by the insured's work. Therefore, there does not appear to be a conflict of laws, and thus, Washington law shall apply.

III.

Law Governing Extra-Contractual Claim Against NAS

As a threshold matter, NAS does not argue that Washington's conflict of laws rules should not apply and the Court sees no reason to upset that finding. NAS does argue that it was error for this Court to rely on a Washington case, *Newmont USA Ltd. v. American Home Assur. Co.*, 676 F.Supp.2d 1146 (E.D. Wash. 2009) to decide that Washington law applied to the extra-contractual claims against NAS because *Newmont* was a duty to defend case, not a duty to indemnify. Shaw objects to this argument, noting that this Court did not cite *Newmont* as the basis for its ruling, and instead, relied on the Restatement (Second) Conflict of Laws § 145, which governs torts, to make its decision. While the Court did use the factors in section 145 to make its decision, upon

5

reconsideration, the Court finds that its application was erroneous, and that Louisiana

law should apply.

Because "Washington courts follow Restatement section 145 to determine which

state's laws governs tort . . . claims," this Court will apply the factors in the Restatement

to determine whether Louisiana law or Washington law applies.  *Tilden-Coil*

*Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1016 (W.D. Wash.

2010). The Restatement (Second) of Conflict of Laws § 145 provides

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). In *Tilden-Coil*, the Western

District of Washington considered whether Washington law or California law should

apply. Tilden-Coil, a California contractor, hired Westec, Industries, Inc., a Washington

corporation, to design and manufacture a belt conveyor system. *Tilden-Coil*, 721 F.

Supp. 2d at 1011. The system was defective and Tilden-Coil, after removing and

reinstalling the system, informed Westec that it planned to "seek reimbursement for the costs that it had incurred in repairing" the system. *Id.* Westec informed its insurance carrier, Landmark, about the claim, and Landmark informed Westec that the policy did not cover the claim. *Id.* Tilden-Coil sued Westec in California, which was the underlying lawsuit. *Id.* Tilden-Coil eventually took an assignment of Westec's insurance claims against Landmark, and Tilden-Coil sued Landmark in Washington, adding extra-contractual claims, including breach of duty to pay. *Id.* at 1012.

The Western District of Washington found that, after applying the factors in Section 145 of the Second Restatement of Conflict of Laws, Washington law applied. The court noted that neither Westec nor Landmark were California citizens, with Westec being domiciled in Washington and Landmark being domiciled in Oklahoma and Georgia. *Id.* at 1016.  Moreover, "the first two contacts—place of injury and place of conduct—are of less significance where, as here, the alleged injury did not occur in a single, ascertainable state, as with personal injuries and injuries to tangible things." *Id.*

Similarly, in *Milgard Manufacturing, Inc. v. Illinois Union Insurance Co.*, the Western District of Washington reached the same conclusion. *Milgard Mfg., Inc. v. Illinois Union Ins. Co.,* 2011 WL 3298912 (W.D. Wash. 2011). In *Milgard*, Milgard was a Washington-based manufacturer who sold defective windows to an Oregon-based company, Baugh.  2011 WL 3298912 at *1. Baugh sued Milgard in Oregon, and Milgard, in turn, sued IUIC, its insurance carrier, for breach of contract and bad faith. *Id.* at *2. The Western District found that Washington law, and not Oregon law, governed the tort action against IUIC. *Id.* at 8. First, the court noted that the tort claims "arise out of IUIC's duties to Milgard under the contract of insurance." *Id.* The court had already

determined that Washington had the "most significant relationship to the policy" and the "policy implications of the choice of law for Milgard's tort claims are consistent with the analysis for the choice of law of the contract claims." *Id.*  The court explained that because Milgard was domiciled in Washington and IUIC was domiciled in Illinois, Washington, and not Oregon, was the favored law. *Id*. The fact that the "underlying suit was brought in Oregon does not change the greater significance of the location of the insured's manufacturing facility and the place of purchase of the policy of insurance." *Id.*

Here, the Court finds that it was error to apply Washington law to govern the extra-contractual claim of failure to indemnify against NAS, and finds that Louisiana law is the appropriate law. Neither NAS nor Shaw are Washington citizens. Additionally, as the court in *Tilden-Coil* noted, the "place of injury and place of conduct" were "of less significance, where, as here, the alleged injury did not occur in a single, ascertainable state, as with personal injuries and injuries to tangible things." *Tilden-Coil*, 721 F. Supp. 2d at 1016. Additionally, following the reasoning in *Milgard*, the fact that the underlying suit was brought in Washington does not "change the greater significance of the location of the insured's manufacturing facility and the place of purchase of the policy of insurance." *Milgard*, 2011 WL 3298912 at *8. In *Milgard*, the court found it instructive that it had already determined that Washington law governed the contract dispute because the tort claims arose out of the duties under the contract. *Id.* Thus, it appears that the factors in Section 188 of the Second Restatement, which govern contract coverage, are also instructive in determining which law applies to extra-contractual claims.

Restatement (Second) of Conflict of Laws § 188 provides

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971). In *Tilden-Coil*, the court found that the first, second, and fifth contacts[2] supported application of Washington law because Westec was a Washington corporation, it negotiated and purchased its policy in Washington, and Landmark was not a California corporation, but an Oklahoma and Georgia corporation. *Tilden-Coil*, 721 F. Supp. 2d at 1015. The court found that the third and fourth contacts, "place of performance and location of the contract's subject matter" were not as significant. *Id.* At the time that the contract was entered into, the place of performance was uncertain because Westec at the time primarily did its work in Washington and Alaska. *Id.* Moreover, the "location of the policy's subject matter was

---

[2] The first, second, and fifth contacts are: the place of contracting, the place of negotiation of the contract, and the residence of the parties.

9

not fixed," which indicated that it was not a policy that insured "against a localized risk." *Id.* The comments to the Restatement provide that "place of performance can bear little weight if uncertain or unknown," and the "situs of the subject matter is significant for contracts that protect against localized risks." *Id.* The court concluded that Washington had the most significant relationship, and thus, should govern. *Id.*

Here, the place of contracting and the place of negotiation of the contract were in Louisiana, satisfying the first and second prong of the contacts analysis. The place of performance and the location of the subject matter of the contract were unknown at the time of contracting. However, as the comments to the Restatement provide, the place of performance "can bear little weight in the choice of applicable law" if it is unknown or uncertain at the time of contracting. *See cmt. e to* Restatement (Second) of Conflict of Laws § 188 (1971). Finally, as previously stated, neither party is a Washington resident.

Thus, the Court finds that Louisiana law governs the extra-contractual claim as to NAS and vacates its earlier ruling to the extent that it found that Washington law governed the extra-contractual claim as to NAS.

IV.

Zurich has also filed a motion for reconsideration, requesting that this Court reconsider the choice of law ruling with respect to the extra-contractual claims Shaw brought against it. (Doc. 125). This Court found that the claim of breach of duty to defend should be governed under Washington's law. In its motion, Zurich argues that Zurich has already paid over $8,200,000.000 defending Shaw in the underlying litigation. Additionally, Zurich asserts that it paid $4,000,000.00 after being notified that Shaw and REC had settled. Zurich argues that the tort alleged by Shaw is that Zurich

failed to properly defend and indemnify Shaw in the underlying suit, and this conduct did not occur in Washington. Zurich claims that it sent a reservation of rights letter to Shaw's headquarters in Louisiana, and the claim was initially adjusted in Louisiana. Zurich argues that the injury and the conduct causing the injury were in Louisiana and not Washington, and thus Louisiana law should apply. Moreover, Zurich argues that this Court failed to address Zurich's domicile and place of incorporation when making its determination, as well as the place where the relationship between the parties was based.

However, for Shaw's claim that Zurich breached its duty to defend, the Court finds that Washington law is the correct law. In *Newmont USA Ltd. v. American Home Assurance Co.*, the Eastern District of Washington noted that the "alleged injury here is lack of performance of the duty to defend under the contract." *Newmont USA Ltd. v. American Home Assurance Co.*, 676 F.Supp.2d 1146, 1163 (E.D. Wash. 2009). The court did note that Washington had an interest in "deterring bad faith conduct of insurers within the state," and that the plaintiff, Dawn Mining, was a Washington corporation. *Id.* The court concluded that Washington law should govern the matter.

In *Bethlehem Construction, Inc. v. Transportation Insurance Co.*, the Eastern District of Washington considered whether to apply Washington law or California law. *Bethlehem Construction, Inc. v. Transportation Insurance Co.*, 2006 WL 2818363 *28 (E.D. Wash. 2006). The insured was domiciled in Washington, the policies covered projects in Washington, and the insurance policies were entered into in Washington. *Id.* The underlying litigation occurred in California, the plaintiff maintained an office in California, the insurance policies "covered the work being performed" in California, and

11

the defense attorney was barred in California. *Id.* The Court concluded that California had the more significant contacts to the claim.

Upon reconsideration, the Court, in its discretion, has determined that Washington law shall apply to the duty to defend claim.

V.

Accordingly, the Court GRANTS NAS's motion (Doc. 122) in part and DENIES it in part, and the Court DENIES Zurich's motion (Doc. 131).

Signed in Baton Rouge, Louisiana on February 7th, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**