UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP, INC., et al.                    CIVIL ACTION

VERSUS                                          NO. 12-257-JJB-RLB

ZURICH AMERICAN INSURANCE
COMPANY, et al.

## ORDER

Before the Court is defendant Zurich American Insurance Company's ("Zurich") Motion to Quash Deposition of Ken Ford that was filed on January 13, 2014 (R. Doc. 225). This Motion is opposed by Plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc. (collectively, "Shaw") (R. Doc. 231). The deposition at issue is scheduled to take place on January 16, 2014. Because of the timing of the Motion to Quash and the scheduled deposition, Zurich has requested an expedited hearing (R. Doc. 226). This is the fourth time in the past month that the parties have been unable to resolve a discovery matter and requested expedited consideration from the Court (R. Docs. 180, 189, 207).

In the Motion to Quash, Mr. Ford is identified as an attorney employed by Zurich. In his affidavit, Mr. Ford states that his position is "Claims Counsel Manager." (R. Doc. 225-3). Zurich argues that the deposition notice "fails to indicate any basis or any unique circumstance that warrants the extraordinary instance of taking the deposition of Zurich's, in house claims counsel" (R. Doc. 225-1). Zurich urges the Court to apply the three part test articulated in

*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986),[1] and conclude that the deposition should be quashed.

With respect to the second *Shelton* factor, Zurich states that Mr. Ford "was not involved in the investigation or 'adjusting' of Shaw's claim" and that "[h]is involvement began when Zurich was advised of Shaw's intent to pursue a claim against it for bad faith." (R. Doc. 225-1 at 4-5). Mr. Ford supports these assertions in his sworn affidavit (R. Doc. 225-3).

Zurich also notes that it is not relying on an "advice of counsel" defense, and any relevant, non-privileged information can be obtained from any of the other six depositions of Zurich personnel currently scheduled.

In response, Shaw argues that the *Shelton* test does not apply every time a party seeks to depose an attorney, but that instead it is intended to protect the potential disclosure "of the attorney's litigation strategy." (R. Doc. 231 at 3) (citing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002)). Therefore, Shaw argues that because Mr. Ford is not trial counsel in the instant case, his involvement in the previous concluded case (the lawsuit between Shaw and REC) is not entitled to any heightened protection. Shaw provides an email, dated August 1, 2011, for the proposition that Mr. Ford was involved in the defense of the underlying lawsuit. Shaw also argues that Zurich has already waived the attorney client privilege and work product protection for every communication in its claims file when the unredacted claim file was

---

[1] The *Shelton* factors permit the deposition of opposing counsel where "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (internal citation omitted).

produced following Zurich's failure to timely respond to discovery, and then failure to timely comply with this Court's order to do so.[2]

Rule 30 of the Federal Rules of Civil Procedure allows for discovery depositions to be taken of "any person." Fed. R. Civ. P. 30(a)(1). The Rule itself does not preclude depositions of attorneys. The federal courts, however, disfavor depositions of a party's attorney and allow them only in limited circumstances. *See Delor v. Intercosmos Media Group, Inc.*, No. Civ. A. 04-3262, 2005 WL 1588300 (E.D. La. June 27, 2005) (citing cases and applying *Shelton* to quash the deposition of defendant's in-house counsel). In addition, a deponent need not answer a question in a deposition when necessary to "preserve a privilege." Fed. R. Civ. P. 30(c)(2).

Rule 26 limits the scope of discovery to "any non-privileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 further authorizes the Court to enter protective orders that forbid certain discovery.

In their briefs both parties recognize concerns of the courts of any potential disclosure, through discovery, of the opposing side's litigation strategy. At the same time, however, when an insured asserts a bad faith claim against his insurer regarding the way the insurer has handled the insured's claim, unique considerations arise. "Implicit in an insurance company's [handling] of [a] claim is litigation or the threat of litigation that involves the advice of counsel. To permit a blanket privilege in insurance bad faith claims because of the participation of lawyers hired or

---

[2] Shaw also argues that Zurich's motion should be denied because they delayed in filing it so close to the scheduled deposition. Because the matters at issue involve assertions of privilege, any such objections could have been raised at the deposition itself. *See* Fed. R. Civ. P. 30(c)(2). For this reason, the Court does not find the Motion to Quash untimely. The parties are all advised, however, that the Court will consider sanctions, including the reasonable expenses and attorney's fees incurred by any party, on a person who impedes, delays or frustrates an examination under Rule 30 or is otherwise compelled to respond to discovery pursuant to Rule 37 or any other applicable rule.

employed by insurers would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices." *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 245 (Wash. 2013).[3]

There is a presumption that there is no attorney client privilege in the claims adjustment process. This presumption, however, may be overcome by a showing that the attorney was not engaged in the quasi fiduciary tasks of investigating or processing the claim. *Id. at 246.* In this case, Mr. Ford's affidavit specifically states, under oath, that he was "not involved in the investigation or adjusting of claims made by The Shaw Group, Inc. or Shaw Process Fabricators, Inc." In addition, there has been no blanket assertion of privilege to the investigation or claims process by Zurich based on Mr. Ford's involvement. Rather, Zurich has provided a sworn statement that he was not so involved. Based on this limited information, the Court is not satisfied as to the relevance of Mr. Ford's deposition. If his personal involvement was limited to privileged communications and work product regarding litigation strategy in defending Shaw's lawsuit against Zurich, then his testimony on that topic is impermissible. His affidavit supports that position.

In support of their position that Mr. Ford's involvement followed the threat of a lawsuit by Shaw, Zurich provides an email dated June 27, 2011 from a Shaw Vice President and General Counsel to Zurich alleging failure to provide an adequate defense (R. Doc. 225-4). The Court also notes that the instant lawsuit was filed on July 29, 2011 (R. Doc. 1) in the United States District Court for the Eastern District of Washington.

---

[3] Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The district judge has determined that "for Shaw's claim that Zurich breached its duty to defend, the Court finds that Washington law is the correct law." (R. Doc. 132 at 11).

4

Shaw has not provided any information demonstrating Mr. Ford's involvement in the handling of their claim, despite having received the un-redacted claims file and asserting that "Mr. Ford was involved during the defense of the REC Solar v. Shaw lawsuit." (R. Doc. 231 at 3). The Court is not satisfied that the single document provided, an email dated August 1, 2011, following the filing of the lawsuit by Shaw, demonstrates his involvement in the defense of the underlying REC litigation sufficient to find he was engaged in this process as contemplated by *Cedell*.

The Court has also considered Shaw's position that any assertions of privilege to the communications in the claims file have been waived based on their compelled production. The Court need not make that determination at this time. Even if the Court were to find that privilege was waived in the investigation or adjustment process, there is nothing before the Court to demonstrate Mr. Ford's involvement in that process or how his deposition (whether to privileged or non-privileged matters) would be relevant. Instead, based on what is before the Court, it appears that Mr. Ford's involvement is limited to the litigation strategy in the current lawsuit. The Court does not hold that there has been a waiver as to privileges concerning those communications or work product and has not been shown proof of such a waiver.

The Court presumes that the additional Zurich depositions that have been scheduled include personnel involved in the investigation and claims adjusting process.[4] It is possible that those depositions will demonstrate involvement in that process of individuals who are attorneys, like Mr. Ford, and whose actions may therefore be relevant and non-privileged. It is also possible that there are documents in the claim file, not yet provided to the Court, that also

---

[4] One of the individuals listed as a deponent, Leo Bigley, is included on the same email correspondence referenced by Shaw.

demonstrate the involvement of such attorneys, including Mr. Ford. Should that information be presented, this analysis may result in a different conclusion. For these reasons,

**IT IS HEREBY ORDERED** that the Motion to Quash Deposition of Ken Ford (R. Doc. 225) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on January 15, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**