UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE SHAW GROUP, INC., ET AL | * | CIVIL ACTION NO. 3:12-cv-257 |
| | * | |
| VERSUS | * | JUDGE JAMES J. BRADY |
| | * | |
| ZURICH AMERICAN INSURANCE | * | MAGISTRATE RICHARD L. |
| COMPANY, ET AL | * | BOURGEOIS, JR. |

**************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
## RESPONSES TO INTERROGATORIES

Defendant, Zurich American Insurance Company ("Zurich"), moves the Court for an Order compelling the plaintiffs, The Shaw Group, Inc. and Shaw Process Fabricators, Inc. (collectively referred to as "Shaw") to provide complete and appropriate responses to Interrogatories served upon Shaw on December 6, 2013 and January 2, 2014.

Shaw objected to these discovery requests as untimely, and on January 16, 2014, the Court ordered that the discovery deadline be extended as to all parties and ordered Shaw to respond to Zurich's previously served discovery requests (Rec.Doc. 236) no later than February 15, 2014. Shaw served its responses via electronic mail on Zurich on February 18, 2014.

Shaw's responses to the initial and supplemental Interrogatories are evasive, incomplete, and unresponsive. On March 7, 2014, the parties conferred via telephone but were unable to resolve the dispute with regard to the Interrogatories.

## LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 33, a party must answer Interrogatories "separately and fully in writing under oath." "An evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37; See also *Colsan v. Cincinnati Insurance Company,* 2013 WL 6531917 (M.D.La. December 12, 2013).

In the Second Amended Complaint filed by Shaw (Rec.Doc. 156), an entitlement to damages is alleged. In paragraph 23 of the Second Amended Complaint, for instance, plaintiffs alleged that Zurich breached certain duties to the plaintiffs "proximately causing damage to Plaintiffs herein in an amount to be proven at trial." Similarly, in paragraph 49 it is alleged "Plaintiffs have been damaged by Defendant Zurich North American breach of contract, ...". This paragraph further alleges, "Plaintiffs have been damaged in an amount to be proven at time of trial, ...".

Finally, in Section G of the "**PRAYER FOR RELIEF**" plaintiffs make a request for monetary damages.

Zurich is entitled to know what damages the plaintiffs are seeking and the evidence the plaintiffs have to support these damage claims. Several Interrogatories were addressed to this issue. These Interrogatories and the Shaw responses will be set forth here. The Interrogatories and Answers are attached as Exhibit A. The Supplemental Interrogatories and Answers are attached as Exhibit B.

Interrogatory No. 4:

Please identify each and every act or omission you claim Zurich committed or omitted which prejudiced you or caused you damage, and the basis for any and all claims for damages and/or penalties identified in your Complaint (including all amendments thereto).

Answer:

Shaw objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome. Shaw further objects to this Interrogatory as seek a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers as follows:

While it is impossible for Shaw to identify each and every act or omission Zurich committed or omitted that prejudiced Shaw or caused it damage at this time since discovery is continuing, Shaw offers the following as a non-exhaustive description of Zurich's conduct that Shaw is aware of that supports Shaw's claims and the damages sought in the Second Amended Complaint.

After Zurich received a copy of the complaint in REC Solar Grade Silicon LLC v. The Shaw Group, Inc., et al, No. 2:09-CV-188-LRS (the "Underlying Lawsuit") in June 2009, Zurich breached its duty to defend to Shaw by failing the retain defense counsel, by failing to pay defense costs, and by failing to agree to defend Shaw until approximately 15 months later on September 9, 2010. As a result of this breach of the duty to defend, Shaw had to retain counsel and pay its own defense costs and was uncertain whether Zurich would defend its insured a lawsuit that exposed Shaw to tens of millions of dollars in damages. During this time, Shaw and its counsel asked Zurich and its third-party administrator on several occasions whether Zurich was accepting the defense. Zurich

and its third-party administrator FARA failed to adequately respond to Shaw's inquiries. After Zurich finally accepted the defense in September 2010, Zurich and its third-party administrator FARA failed to timely pay defense costs, which constituted further breaches of the duty to defend. As a result of Zurich's failure to timely pay defense counsel, Shaw's main defense counsel at the time, Griffith Nixon Davison, PC, complained about the late payments and threatened to withdraw as counsel in the Underlying Lawsuit. Because of Shaw's uncertainty in the defense to a damage claim made by REC that by June 2011 had ballooned to over $100 million, Shaw hired another firm, Baker Donelson, to take over as lead counsel. Shaw then had to pay Baker Donelson with its own funds for a period of time until Zurich eventually agreed the retention of Baker Donelson was appropriate and agreed to pay those defense costs. In addition, Shaw lost the time value of the money that Shaw was forced to pay to Baker Donelson and Zurich eventually reimbursed.

In addition, Zurich also breached its duties to Shaw by failing to thoroughly or timely investigate the claim for insurance benefits arising out of the Underlying Lawsuit (the "REC Claim"). After receiving the REC Claim in June 2009, neither Zurich nor its third-party administrator FARA performed a timely or thorough investigation. Moreover, despite determining at some point that coverage existed for the REC Claim and that Shaw would be found liable, Zurich then never attempted to negotiate a settlement with the plaintiff, offer the limits of Zurich's policy to Shaw, or otherwise offer settlement authority to Shaw. Instead, Zurich continued to act in furtherance of its own financial interest instead of those of the insured, Shaw. Because Zurich would not acknowledge to Shaw that coverage existed for the REC Claim, Shaw's excess carriers failed to acknowledge that it owed any duty to Shaw (since the limits of Zurich's policy had not been exhausted) and offer settlement authority within the limits of those excess insurance policies. As a result, Shaw was forced to settle the Underlying Lawsuit on its own in October 2011 for $24.5 million. Only after Shaw settled the Underlying Lawsuit with its

own funds did Zurich acknowledge there was coverage under the Zurich policy and tender its policy limits for two occurrences in the amount of $4 million. But for Zurich's failures to properly investigate and settle the REC Claim, Shaw could have settled the Underlying Lawsuit for a sum less than $10 million between the period of the fall of 2009 through late spring of 2011 in response to a demand made by plaintiff. Because Zurich breached these duties, the settlement value of the Underlying Lawsuit substantially increased, thereby exposing Shaw to even larger substantial damages. Shaw also lost the time value of funds it used to pay to defense bills and to settle the Underlying Lawsuit.

Zurich committed other violations of Washington law in its handling of the REC Claim. Zurich failed to acknowledge its receipt of the notice of claim within 10 days of being notified in June, 2009. After receiving notice of the claim, Zurich failed to promptly provide necessary claim forms, instructions, and reasonable assistance to Shaw so that it could comply with the policy conditions and any other requirements. Zurich failed to adopt or implement reasonable standards for the prompt investigation of claims. To the extent Zurich's Claims Best Practices for Construction & Defect Claims applied to the handling of the REC Claim, Zurich failed to follow the standards set forth in that document. Zurich failed to complete its investigation or the REC Claim within 30 days after notification of the claim. Zurich misrepresented pertinent facts and insurance policy provisions to Shaw in the September 2010 letter it sent to Shaw that reserved its rights and through communications to Shaw after Zurich performed its investigation of the REC Claim in July 2001. Zurich also failed to inform Shaw that Zurich had determined coverage under Shaw's excess policies would be jeopardized if Shaw accepted $2 million from Zurich as the limits of the Zurich policy. Shaw also refers Zurich to the pleadings, deposition testimony, documents, Shaw's expert reports, and other information produced by the parties and third parties in this case as further evidence supporting Shaw's claims and damages asserted against Zurich in the Second Amended Complaint.

Discovery is continuing in this matter and Shaw reserves its right to further supplement its answer to this Interrogatory as necessary.

\* \* \* \*

Interrogatory No. 5:

Please state the total amount of damages you allegedly suffered and the total amount of penalties to which you claim entitlement as a result of Zurich's alleged bad faith/improper handling of your claim arising out of the REC suit. For each category (damages and penalties), break down the total value according to each alleged act or omission by Zurich which you claim caused you damage and each alleged act or omission that triggered penalties under Washington or Louisiana and the amount of said penalties.

Answer:

Shaw objects to this Interrogatory as overly broad, and unduly burdensome. Shaw further objects to this claim as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers as follows:

Zurich is liable for the entire amount of the $24.5 million settlement of the Underlying Lawsuit ($20,750,00 in cash, plus the $3,804,520.50 counterclaim that Shaw Process Fabricators, Inc. released), plus treble damages under Washington bad faith law for a total amount of $73.6 million, plus prejudgment interest and attorneys' fees in an amount to be determined at trial.

Supplemental Interrogatory No. 2:

Please identify the harm that you contend was suffered as a proximate cause of Zurich's allegedly late payment of defense counsel, and explain the causal connection between the alleged harm and the time of payment.

Answer:

Shaw objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

Supplemental Interrogatory No. 3:

Please identify each act or omission of Zurich during the adjustment of the underlying claim that you contend violated Washington state law, and for each act or omission, specify the harm or damage that you allegedly suffered as a result.

Answer:

Shaw objects to this Interrogatory as overly broad, unduly burdensome, and vague and ambiguous. Shaw further objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013 and to the Second Amended Complaint.

Supplemental Interrogatory No. 4:

Pleade identify every fact that you allege Zurich failed to discover but would have discovered if it had investigated the claim properly, and as to each such fact, explain how you were damaged by Zurich's alleged failure to discover it.

Answer:

Shaw objects to this Interrogatory as overly broad, unduly burdensome, and vague and ambiguous. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

Supplemental Interrogatory No. 7:

As to your allegation that Zurich "did not provide a reasonable explanation of the basis in the policy in relation to the facts or applicable law in support of the declination of coverage," state how you were harmed or damaged by this alleged failure.

Answer:

Shaw objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

These Interrogatories are specifically addressed to issues related to the claimed damages. The responses contain no details about the damages. Shaw continually asserts in its answers that with regard to the damages "harm is presumed." This does not provide information about specific damages or evidence to support such damages. There is a difference between presumed harm and actual harm or damages. Shaw refers to its response to Interrogatory No. 4 in other Interrogatory answers. However, Interrogatory No.

-10-

4 never sets forth any specific damages. As an example, Shaw contends in Answer to Interrogatory No. 4 that it was "forced to settle the Underlying Lawsuit on its own in October 2011 for $24.5 million." It also asserts that because of Zurich's alleged breach of duties "the settlement value of the Underlying Lawsuit substantially increased" and exposed "Shaw to even larger substantial damages." These allegations are not facts with regard to specific damages. At trial, Shaw will have to prove to the jury a specific amount of damages. Zurich is entitled to know what those damages are and what the proof is to support those claims in order to defend the claims. Shaw has not provided this in its responses.

## SHAW'S ANSWERS ARE INSUFFICIENT

1. A "presumption" of harm is different from "actual" harm. Washington law provides that an insurer can rebut a presumption of harm by showing its acts did not harm or prejudice the insured. *National Union Fire Ins. Co. v. Greenwich Ins. Co.*, No. C07-2065-JCC, 2009 WL 1794041 (W.D. Wash. June 22, 2009). Therefore, Shaw is not entitled to simply "rest on the presumption of harm". Zurich maintains it did not act in bad faith toward Shaw. No court has found Zurich acted in bad faith, so Shaw is not yet entitled to a presumption of harm. It must identify how it was allegedly harmed by Zurich's actions. If it intends to rest only on the presumption of harm afforded when an insurer is found to have acted in bad faith, it must say so.

2. Zurich's Interrogatories do not seek legal conclusions, and they are not

improper based on such assertion. Fed. R. Civ. P. 33 states:

> **An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . .**

Fed. R. Civ. P. 33 (emphasis added).

Even if Zurich's Interrogatories sought a legal conclusion, Shaw would be forced to answer them, since they relate to the facts or the application of laws to the facts. Shaw's entire case surrounds allegations it was harmed by Zurich's actions and such harm was caused by violations of Washington State law, how can the questions "what harm did Shaw suffer" and "what actions of Zurich during the claim adjustment process violated Washington law" be considered improper?

Magistrate Judge Hanna of the Western District of Louisiana resolved a similar dispute in a case pending in the Lafayette-Opelousas Division. In *Akers v. Shaw Envtl., Inc.*, two Shaw entities (sister companies of plaintiffs *sub judice*) argued that a similarly evasive answer was inappropriate. The Court summarized:

> Shaw argues it is entitled to discover the facts on which [plaintiff] bases his accusations, but [plaintiff's] responses are evasive and incomplete and should therefore be treated as a failure to answer under Fed. R. Civ. P. Rule 37(a)(4). As such, Shaw asks for an order compelling full responses and for reasonable expenses and attorneys fees incurred in filing the motion against [plaintiff].

*Akers v. Shaw Envtl., Inc.*, CIV.A. 09-915, 2011 WL 867524, *1 (W.D. La. Mar. 14, 2011).

The Interrogatories the Shaw entities served on plaintiff and the answers about

which they complained were strikingly similar to the Interrogatory currently at issue:

>INTERROGATORY NO. 11:
>
>In Paragraph 25 of your Complaint, you allege that Shaw Environmental's conduct was "intentional, willful, malicious, wanton, and reckless." Please **identify** specific facts and/or documents that you are currently aware of **that you contend** support a finding that Shaw Environmental's conduct was intentional, willful, malicious, wanton, or reckless.
>
>ANSWER TO INTERROGATORY NO. 11:
>
>**Plaintiff objects to this interrogatory in that it calls for a legal conclusion**, seeks the mental impressions of an attorney, is vague, ambiguous, overly broad, and otherwise insusceptible of precise response. Subject to the foregoing and without waiving same, Plaintiff asserts the facts as alleged and as will be shown at the trial of this matter will support a finding that Shaw Environmental's conduct was intentional, willful, malicious, wanton, or reckless.
>
>INTERROGATORY NO. 12:
>
>Please **identify** specific facts and/or documents that you are currently aware of **that you contend** support an award of exemplary/punitive damages against Shaw Environmental in this case.
>
>ANSWER TO INTERROGATORY NO. 12:
>
>**Plaintiff objects to this interrogatory in that it calls for a legal conclusion**, seeks the mental impressions of an attorney, is vague, ambiguous, overly broad, and otherwise insusceptible of precise response. Subject to the foregoing and without waiving same, Plaintiff asserts the facts as alleged and as will be shown at the trial of this matter will support an award of exemplary/punitive damages against Shaw Environmental in this case.

*Akers*, 2011 WL 867524 *2 (emphasis added).

Shaw entities correctly argued that plaintiff's evasive, non-answer response was improper. The Court agreed and ordered plaintiff to respond to Shaw's discovery requests. It also ordered the Shaw entities to submit proof of their costs in bringing their Motion to Compel for later consideration.

In the case now before the Court, the tables are turned. Just like plaintiff in *Akers*, Shaw now hides behind the assertion that Zurich's Interrogatories seek legal conclusions and that its alleged "presumption of harm" will support a <u>finding</u> of harm at trial. The plaintiff in *Akers* was rightfully compelled to respond to the Shaw entities' Interrogatories, and Shaw must be compelled to respond to Zurich's similar Interrogatories.

3.      Shaw objects to Supplemental Interrogatory No.'s 10-16 as beyond the twenty-five written Interrogatories Zurich is permitted to serve pursuant to Rule 33 of the Federal Rules of Civil Procedure, and therefore declines to answer.

The Court ordered Shaw to respond to the discovery requests Zurich served on it prior to the date the Court extended the discovery deadlines. See Order, attached as Exhibit "C".

The Court specifically states:

> **IT IS FURTHER ORDERED** that responses by Shaw to Zurich's previously served discovery requests, as referenced in R. Doc. 229, are hereby due no later than February 15, 2014 (30 days from the date of this order).

-14-

*Id* (emphasis in original).

Despite this clear Order, Shaw has decided that it will not answer more than 25 Interrogatories, as that is the normal limit permitted to be served under Rule 33. Federal Rule of Civil Procedure 33 states: "Unless otherwise stipulated **or ordered by the court**, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Fed. R. Civ. P. 33. In this case, the Court has made it clear its order was for Shaw to answer "Zurich's previously served discovery requests". It did not limit Shaw's obligation to answer only the first 25 Interrogatories. The Court was certainly aware that Zurich had filed two sets of Interrogatories on Shaw which contained 32 Interrogatories and ordered Shaw to answer all of them.

Shaw can not now unilaterally rewrite the Court's Order to lessen its obligation to respond to Zurich's discovery requests.

Shaw would seek to have Zurich take on unnecessary steps to get this discovery answered. There was no point in asking the Court for leave to serve more than twenty-five (25) Interrogatories when the Supplemental Interrogatories were initially served because the discovery deadline had expired at that point. These were served on Shaw's attorneys as a courtesy of notice pending the Court's ruling on the extension of the deadline. A copy of the email to Shaw's counsel in this regard is attached with Shaw's response (Exhibit D). There was no assertion that the twenty-five (25) Interrogatory limit had been exceeded at that time.

Shaw maintains that Zurich had an obligation to then come in and request leave to serve more than twenty-five (25) Interrogatories after the Court ordered that Shaw answer the initial Interrogatories and Supplemental Interrogatories. The number of Interrogatories was plain to everyone at that point. It is obvious that it was implicit in the Court's Order that Zurich had leave to serve more than twenty-five (25) Interrogatories.

Alternatively, Zurich now requests leave. This is a lawsuit in which Shaw seeks to recover over $75,000,000 from Zurich. Allegedly as a result of the bad faith handling of an underlying lawsuit which sought more than $100,000,000 in damages from Shaw. The scope of the claims in this lawsuit justifies exceeding the twenty-five (25) Interrogatory limit, in this case, by seven (7) Interrogatories for a total of thirty-two (32).

## CONCLUSION

Shaw has plainly failed to fully answer the Interrogatories which were served upon it. It claims damages from Zurich but has failed to specify what the claimed damages are. The Court should grant this Motion to Compel so that Shaw's claims can be fully discovered and a proper defense developed.

RESPECTFULLY SUBMITTED,

GAUDRY, RANSON, HIGGINS &
GREMILLION, L.L.C.

/s/ Wade A. Langlois
MICHAEL D. PEYTAVIN (#14315)
WADE A. LANGLOIS, III (#17681)
JOHN J. DANNA, JR. (28894)

Oakwood Corporate Center
401 Whitney Ave., Suite 500 (70056)
P.O. Box 1910
Gretna, Louisiana 70054-1910
Telephone: (504) 362-2466
Facsimile: (504) 362-5938
mpeytavin@grhg.net
wlanglois@grhg.net
jdanna@grhg.net
*Attorneys for Zurich American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*/s/ Wade A. Langlois*
Wade A. Langlois III