# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THE SHAW GROUP, INC., et al.**               **CIVIL ACTION**

**VERSUS**                                    **NO. 12-257-JJB-RLB**

**ZURICH AMERICAN INSURANCE
COMPANY, et al.**

---

## RULING AND ORDER

Before the court are several interrelated discovery motions filed by plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc. (collectively, "Shaw"), defendant Zurich American Insurance Company ("Zurich"), and the third party law firms Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson"); Griffith, Davison & Shurtleff, P.C. ("Griffith"); and Oles, Morrison, Rinker & Baker, LLP ("Oles Morrison"). Because all of these motions concern the discovery of information from Shaw's former and current counsel, the court will consider all nine motions together.[1] The court has reviewed and considered all motions, supporting memoranda, oppositions, replies, and other documents submitted in support of the positions of the foregoing parties.[2]

## I. Background

This is an insurance dispute. In the underlying action, REC Solar Grade Silicon, LLC ("REC") sued Shaw for damages regarding defective pipe spools sold by Shaw to REC for use in

---

[1] The nine motions considered in this Ruling includes three motions to compel *subpoenas duces tecum* filed by Zurich (R. Docs. 242, 256, 262); three motions to quash *subpoenas duces tecum* filed by Baker Donelson, Griffith, and Oles Morrison (R. Docs. 247, 265, 266); and three motions to quash deposition subpoenas filed by Shaw (R. Docs. 249, 250, 251).

[2] As discussed below, three of the motions considered in this Ruling are motions to quash deposition subpoenas issued by Zurich to five individual attorneys who provided counsel to Shaw in another matter. (*See* R. Docs. 249, 250, 251). Although these individuals have been provided notice of Shaw's motions to quash the subpoenas issued to them, they have not submitted any briefing in addition to the briefing submitted by Shaw.

a gas manufacturing plant. Shaw filed an action in the Eastern District of Washington in July of 2011 seeking a declaratory judgment providing that, among other things, Zurich American Insurance Company ("Zurich"), Shaw's primary insurer, breached its duty to defend Shaw in the underlying litigation and did so in bad faith. In August of 2011, Shaw's excess insurers, North American Specialty Insurance Company ("NAS") and Westchester Fire Insurance Company ("Westchester"), filed a similar action in the Middle District of Louisiana seeking a declaration that Shaw's claims were excluded by their policies. In November of 2011, this Court ordered the excess insurer's suit to be transferred to the Eastern District of Washington. In April of 2012, the Eastern District of Washington consolidated the actions and the dispute was transferred back to this Court.

According to the Second Amended Complaint, after Shaw tendered Zurich with the complaint in the underlying action, Zurich responded that "there was no insurance coverage" for the damages in the Underlying Litigation, but also provided that "it would accept and undertake the defense of the Underlying Litigation under a full reservation of rights." (R. Doc. 156, "SAC," ¶ 15). Shaw alleges that since undertaking its duty to defend, Zurich has "disputed the extent to which it was obligated to pay for defense costs" and has "unreasonably breached its duty to defend by failing to pay for the defense in a timely manner." (SAC, ¶ 16). Shaw alleges that Zurich "controlled the defense of Plaintiffs in the Underlying Litigation in the Eastern District of Washington," but breached its duty to exercise the degree of reasonable care applicable to the defense, which proximately caused it harm. (SAC, ¶ 23). Shaw also alleges that Zurich violated its "duties to engage in good faith settlement negotiations of the Underlying Litigation by refusing indemnity to Plaintiffs herein prior to the July mediation between the

Plaintiffs and REC." (SAC, ¶ 23). This court has ruled that Shaw's extra-contractual claims against Zurich shall be governed under Washington law. (R. Doc. 132 at 11).

Shaw retained Baker Donelson, Griffith, and Oles Morrison during the course of the underlying litigation. Zurich issued a *subpoena duces tecum* to each of these law firms seeking the production of documents related to their defenses of Shaw in the underlying litigation.[3] Each of the law firms objected to their respective subpoenas on several grounds, including attorney-client privilege, the work product protection, insufficient time to respond, and undue burden. Zurich filed a motion to compel compliance with the subpoenas in the respective courts of compliance.[4] Upon consent of the law firms subject to the subpoenas, the U.S. District Courts for the Eastern District of Louisiana, Northern District of Texas, and Western District of Washington transferred the motions to compel to this court for adjudication. (*See* R. Docs. 242, 256, 264). Each of these motions to compel is opposed by the respective law firm.[5] In addition, Shaw has filed motions to quash the respective subpoenas issued to Baker Donelson, Griffith, and Oles Morrison. (R. Docs. 247, 265, 266).[6]

The document subpoenas issued by Zurich to Baker Donelson, Griffith, and Oles Morrison all request that the following nine categories be produced:

1.   Any and all correspondence/communications between you and Shaw regarding Shaw's solicitation of your services, your retention, the fees you agreed upon, or file management/handling procedures regarding the REC suit.

---

[3] The subpoena issued to Baker Donelson seeks compliance in Grenta, Louisiana. (R. Doc. 242 at 27). The subpoena issued to Griffith seeks compliance in Dallas, Texas. (R. Doc. 256 at 99). The subpoena issued to Oles Morrison seeks compliance in Seattle, Washington. (R. Doc. 262 at 35).

[4] *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").

[5] Zurich's motion to compel Baker Donelson (R. Doc. 242) is opposed (R. Doc. 246), and Zurich has filed a reply. (R. Doc. 254). Zurich's motion to compel Griffith (R. Doc. 256) is opposed. (R. Doc. 267). Zurich's motion to compel Oles Morrison (R. Doc. 262) is opposed. (R. Docs. 269, 270).

[6] Although Zurich has not filed a formal opposition to these motions to quash, they are all clearly opposed in light of Zurich's motions to compel.

2.      Any and all correspondence/communications between you and Shaw regarding your assessment of the merits of REC's claims against Shaw.

3.      Any and all correspondence/communications between you and Shaw regarding your prosecution of Shaw's Counterclaim against REC.

4.      Any and all correspondence/communications between you and Shaw or you and opposing counsel regarding settlement negotiations or settlement of the REC suit in general.

5.      Any and all documents/bills regarding the professional services you rendered to Shaw and arising out of the REC suit. This request includes any and all supporting documents for costs you may have advanced or services you may have retained on behalf of Shaw in the defense of the REC suit.

6.      Any and all correspondence/communications between you and Zurich and/or any third party administrator regarding the handling, settlement, or defense of the REC suit.

7.      Any and all agreements between you and Zurich and/or any third party administrator as to fees you charged arising out of the REC suit.

8.      Any and all documents/correspondence/communications regarding Zurich's evaluation of your bills, your response to Zurich's evaluation, and Zurich's response to your response.

9.      Any and all documents which may substantiate or relate to a claim for bad faith or improper claims handling by Zurich in the REC suit.

(R. Doc. 242 at 25-26; R. Doc. 256 at 103-04; R. Doc. 262 at 39-40). In addition, the subpoena issued to Baker Donelson requests that five additional categories of documents be produced:

10.      Any and all invoices submitted reflecting your work on the REC claim.

11.      Evidence of payment on all invoices for your work on the REC claim.

12.      Copy of Zurich Guidelines regarding your work on the REC claim.

13.      Timesheets indicating any work performed by any Baker Donaldson employee reflecting work on the REC claim.

14.      Any document reflecting the total monthly hours billed by any Baker Donaldson employee who billed more than 50 hours on the REC claim.

(R. Doc. 242 at 25-26).  In contrast, the subpoenas issued to Griffith and Oles Morrison requests only that one additional category of documents be produced:

> 10.    Any and all documents/correspondence/communications regarding your refusal or failure to perform legal services for Shaw as a result of a failure or delay in the payment of your legal bills.

(R. Doc. 256 at 103-04; R. Doc. 262 at 39-40).

Zurich also issued deposition subpoenas to five individual attorneys representing Shaw in the underlying action:  Jason Cagle (an attorney with Griffith); Anthony Jach (an attorney with Griffith); Daniel Terrell (former in-house counsel with Shaw); Danny Shaw (an attorney with Baker Donelson); and Robert Brown (former in-house counsel with Shaw).  As with the subpoenas issued to the three law firms, the deposition subpoenas issued to Cagle, Jach, Terrell, Shaw, and Brown sought compliance within the geographical jurisdictions of other district courts.[7]  Shaw filed a motion to quash the deposition subpoenas in the respective courts of compliance.  Upon consent of the individuals subject to the subpoenas, the U.S. District Courts for the Eastern District of Louisiana, Northern District of Texas, and Northern District of Georgia transferred the motions to compel to this court for adjudication.  (*See* R. Docs. 249, 250, 251).  Zurich opposes all three motions to quash.  (R. Doc. 255).  Zurich does not limit the scope of the five deposition subpoenas to specific topics of discussion.

In support of its motions to compel, Zurich claims that Shaw cannot prove its bad faith claims against Zurich without relying upon information otherwise subject to the attorney-client privilege and work product doctrine.  Zurich argues that Shaw has waived the attorney-client privilege by putting the subject matter of that privilege at issue.  Zurich also argues that it has a substantial need to obtain any information protected under the work product doctrine.

---

[7] The subpoenas issued to Cagle, Jach, and Terrell seek compliance in Dallas, Texas.  (R. Doc. 249 at 44).  The subpoena issued to Shaw seeks compliance in Gretna, Louisiana.  (R. Doc. 250 at 42).  The subpoena issued to Brown seeks compliance in Atlanta, Georgina.  (R. Doc. 251 at 44).

In contrast, Shaw and the subpoenaed law firms argue that Shaw has not waived its attorney-client privilege because it need not rely upon otherwise protected information to prove its bad faith claim against Zurich.[8] Shaw and the subpoenaed law firms argue that Zurich has no substantial need to obtain work product. The subpoenaed law firms raise additional arguments for why non-compliance with the subpoena was proper, including Zurich's failure to provide a reasonable time to respond, vagueness and overbreadth, and undue burden and costs. As an extension of their undue burden argument, the subpoenaed law firms argue that several categories of documents requested by Zurich could either be obtained directly from Shaw or are already in Zurich's possession.

## II.    Law & Analysis

### A.    Scope of Relevant Discovery

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Furthermore, it is well established that the scope of discovery is within the sound discretion of the trial court. *E.g.*, *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 724 (5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of discovery").

---

[8] Shaw does not specifically argue in its motion to quash that documents sought by Zurich and in possession of Baker Donelson contain work product. (*See* R. Docs. 247).

Rule 45 governs the issuance of subpoenas, and provides that on a timely motion, the court for the district where compliance is required must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(c)(3). Additionally, parties or attorneys who issue and serve subpoenas "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1).").

Zurich has issued a total of three document subpoenas and five deposition subpoenas to Shaw's attorneys in the underlying litigation. Unlike the document subpoenas, which provide various categories of documents Zurich seeks to have produced, the deposition subpoenas do not delineate the scope of the deposition topics. Zurich argues that it is entitled to discovery regarding Shaw's attorneys because it "will be impossible for Shaw to successfully prove its claim without referring to allegedly privileged communications between it and its defense counsel." (R. Doc. 242 at 7). In essence, Zurich is arguing that all attorney-client privileged communications between Shaw and its attorneys in the underlying litigation is relevant to Shaw's claims in this litigation and, accordingly, Shaw has waived its privilege with regard to any relevant information. In light of the open-ended deposition subpoenas and broad categories of documents requested in the document subpoenas, the court will first identify the proper scope of relevant information sought in light of the allegations in this lawsuit.

Shaw claims that Zurich breached its duty to defend in bad faith, as well as its corresponding duties to investigate and settle. Zurich claims that "most, if not all, of the allegations against Zurich put at issue its representation by defense counsel." (R. Doc. 242 at 7). Zurich argues that "[b]y alleging bad faith arising out of (among other things) failure to investigate, tardy legal invoice payments, and improper control of the defense, Shaw has placed its defense file, defense strategy and communications between itself and defense counsel in the REC suit 'at issue.'" (R. Doc. 254 at 2). Zurich specifically identifies three paragraphs in Zurich's Second Amended Complaint in support of this position:

> 16. Since undertaking the defense of the The Shaw Group and Shaw Process Fabricators in the Underlying Litigation under a reservation of rights, Zurich disputed the extent to which it was obligated to pay for defense costs. Zurich unreasonably breached its duty to defend by failing to pay for the defense in a timely manner.
>
> 17. Having undertaken to defend the [REC suit] under a reservation of rights, Zurich was bound to comply with certain "enhanced obligations" of good faith . . . requiring that [it] "abstain from deception, and practice honesty and equity in all insurance matters" . . . Zurich violated these enhanced obligations of good faith by failing to recognize [Shaw] as [Baker's] sole client, and instead, directing such counsel to be its "partners" . . .
>
> 23. Zurich controlled the defense of [Shaw] in the [REC suit]. Having done so, Zurich was obligated to exercise the degree of reasonable care applicable to the defense of actions pending in the Eastern District of Washington. Zurich breached that duty, proximately causing damage to Plaintiffs herein in an amount to be proved at trial.

(R. Doc. 255 at 4) (quoting SAC, ¶¶ 16, 17, 23). Shaw also stated in an interrogatory response that as a result of Zurich's alleged failure to timely pay defense counsel, Griffith "complained about the late payments and threatened to withdraw as counsel in the Underlying Lawsuit." (R. Doc. 259-2 at 4). Shaw also claims that it was harmed by Zurich's alleged failure to investigate and settle the claims because it "could have settled the Underlying Lawsuit for a sum less than $10 million between the period of the fall of 2009 through late spring of 2011 in response to a demand made by [REC in the Underlying Lawsuit]." (R. Doc. 259-2 at 5).

Zurich claims that it "will be impossible for Shaw to successfully prove its claim without referring to allegedly privileged communications between it and its defense counsel." (R. Doc. 242 at 7). In contrast, Shaw states that it "does not intend to use any communications between itself and [its attorneys] to prove its bad faith claims and has never indicated an intent to call any [of its attorneys] as witnesses." (R. Doc. 247-2 at 1; 265-1 at 1; 266-1 at 1). The court must, therefore, turn to the substantive law regarding bad faith under Washington law to determine whether any of the documents requested by Zurich are relevant to Shaw's claims or Zurich's defenses.

Under Washington law, the bad faith handling of an insurance claim is a tort, and is accordingly "analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 169 P.3d 1, 8 (Wash. 2007) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)). "[W]here an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage." *Safeco Ins. Co. v. Butler*, 823 P.2d 499, 504–05 (Wash. 1992). An insurer who accepts its duty to defend under a reservation of rights, "but then performs the duty in bad faith is no less liable than the insurer who accepts but later rejects the duty." *Id.* at 504. "[A]n insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit." *Indus. Indem. Co. v. Kallevig*, 792 P.2d 520, 526 (Wash. 1990).

"In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins.*, 951 P.2d 1124, 1126 (Wash. 1998). "Although a showing of harm is an essential element of an action for bad faith handling

of an insurance claim, [the Washington Supreme Court has] imposed a rebuttable presumption of harm once the insured meets the burden of establishing bad faith. *Id*. at 1127 (citing *Butler*, 823 P.2d 499, 504). "Without the rebuttable presumption of harm, the insurer could defend its position under the following contract theory—even if there were a duty to defend, our bad faith breach did not cause injury to the insured because ultimate liability was found to be outside the scope of coverage." *Id*. "Whether the insurer's acts prejudiced the insured is . . . a question of fact." *Butler*, 823 P.2d at 506.

Zurich's document subpoenas seek information regarding the assessment of Shaw's defenses and counterclaims in the underlying action. Zurich's duty to defend is premised on whether it could deny coverage based upon a reasonable interpretation of the insurance policy, not on whether Shaw's attorneys provided an adequate defense.

Whether Shaw was harmed by Zurich's alleged bad faith acts or omissions, however, is an altogether different factual issue. Zurich is entitled to discovery that is "reasonably calculated to lead to the discovery of admissible evidence" regarding either Shaw's claims or its own defenses. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Zurich is entitled to discovery regarding any alleged harms caused by its bad faith acts or omissions, regardless of whether such harms are presumed, because it is entitled to rebut the presumption of harm as a defense. *Butler*, 823 P.2d 499, 506 ("[T]he insurer can rebut the presumption [of harm] by showing by a preponderance of the evidence its acts did not harm or prejudice the insured."); *National Union Fire Ins. Co. v. Greenwhich Ins. Co.*, No. C07-2065, 2009 WL 1794041, at *5 (W.D. Wash. June 22, 2009) (insurer rebutted presumption of harm on summary judgment where any damages caused by the insurer had already been awarded to the insurer's assignee).

Furthermore, some of the documents sought by Zurich are relevant to the issue of recoverable damages. Assuming that Shaw can establish Zurich's bad faith breach of its duty to defend, the measure of damages under Washington law may include the reasonable settlement amount paid by the insured to settle the underlying claim. *See Bird v. Best Plumbing Grp., LLC*, 260 P.3d 209, 211 (Wash. Ct. App. 2011) ("When a defendant whose liability insurer has acted in bad faith proceeds to make his own settlement with an injured plaintiff, the amount of that settlement may become the presumptive measure of damage in the bad faith lawsuit, but only if a trial court determines that the settlement is reasonable and not the product of fraud or collusion."), *aff'd*, 287 P.3d 551 (2012). In this action, Shaw is seeking its entire settlement amount with REC as the measure of damages, namely $20,750,000 in cash, and the value of its withdrawn counterclaim of $3,804,520.50. (SAC, ¶ 42). Shaw is also claiming treble damages. (SAC, ¶ 49). Shaw further claims that Zurich's full payment of its $4,000,000 policy limits, as well as its payment of certain defense work conducted by Baker Donelson, did not cure Zurich's breaches. (SAC, ¶ 35). This court has not yet determined whether the damages sought by Shaw, assuming they are recoverable, are reasonable.[9] Accordingly, discovery sought by Zurich

---

[9] Prior to transfer of this action, Shaw moved the Eastern District of Washington for a reasonableness hearing pursuant to RCW 4.22.060 to determine the reasonableness of its settlement with REC for the purpose of establishing the presumptive damages recoverable against Zurich and NAS if they acted in bad faith. (R. Doc. 41). Zurich, NAS, and Westchester opposed the reasonableness hearing. (R. Docs. 61, 64). On April 27, 2012, the Eastern District of Washington issued an order granting Shaw's motion for a reasonableness hearing pursuant to RCW 4.22.060 and granting NAS's motion to transfer venue to the Middle District of Louisiana. (R. Doc. 83). Although the Eastern District of Washington ruled that it would hold a reasonableness hearing, it stated that it "makes no finding with respect to whether its determination following the reasonableness hearing will be the presumptive measure of damages in the insurance disputes." (R. Doc. 83 at 9). The Eastern District of Washington also informed the parties that the reasonableness hearing would be docketed in the underlying action between Shaw and REC, and advised Zurich, Westchester, and NAS to file motions to intervene in the underlying action if they wished to participate in the reasonableness hearing. (R. Doc. 83 at 10). Despite opposing Shaw's motion for reasonableness hearing in this action, Zurich did not intervene in the underlying action to participate in the reasonableness hearing. NAS did intervene, but according to the Status Report submitted by the parties, NAS did not contest the reasonableness of the settlement. (R. Doc. 144 at 4). The Eastern

regarding the reasonableness of the settlement amount between REC and Shaw is also relevant to the issue of damages.

In sum, the scope of relevant information sought by Zurich is limited to (1) information regarding the resulting harm allegedly suffered by Shaw as a result of Zurich's untimely payments, failure to exercise reasonable care in controlling Shaw's defense, and failure to conduct good faith settlement negotiations; and (2) information regarding the reasonableness of the measure of damages sought by Shaw. The court now turns to whether Zurich may obtain this relevant information in spite of the attorney-client privilege and the work product doctrine.

### B.     Implied Waiver of the Attorney-Client Privilege

#### 1.     Choice-of-Law Analysis

Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Rule 501 is silent, however, regarding how the court must determine the "state law" governing privileges.

Lead commentators have discussed three approaches for interpreting Rule 501 when faced with a horizontal choice of law issue: "(1) [a]ssume that the state "which supplies the rule of decision" is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict of law doctrine of the state in which the federal court sits." *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) (citing Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5435, 865-69 (1980)). The Fifth Circuit has endorsed the third approach to Rule 501, which requires the court to apply the choice-of-law rules of the forum state to determine the governing law for attorney-

District of Washington ruled that a reasonable settlement amount was $20,750,000.00. (R. Doc. 144 at 4).

client privilege. *See Miller v. Transamerican Press, Inc*., 621 F.2d 721, 724, *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980).[10] This approach is consistent with the *Erie* doctrine, which requires federal courts sitting in diversity to apply the forum state's substantive law, including its choice-of-law rules. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 495-96 (1941).

Where an action is transferred under 28 U.S.C. § 1404(a), however, the court must apply the law of the "transferor" court to the action. *Ferens v. John Deere Co.,* 494 U.S. 516, 528 (1990). Because this action was originally transferred from the Eastern District of Washington, this court has already concluded that it will apply the choice-of-law rules of Washington. (R. Doc. 199 at 5).[11] Washington "follows the rule of depecage, which may require the Court to apply the law of one forum to one issue, while applying the law of a different forum to another issue in the same case." *Milgard Mfg. v. Illinois Union Ins. Co.*, No. C10-5943, 2011 WL 3298912, at *3 (W.D. Wash. 2011). Accordingly, the court must apply a choice-of-law analysis to the separate issue of the law governing attorney-client privilege.

The parties present three potential jurisdictions with an interest in the communications at issue: Washington, Louisiana, and Texas. Before conducting a choice-of-law analysis, the court

---

[10] Several decisions in the Fifth Circuit appear to endorse the first approach to Rule 501 in the absence of any clear need to conduct a choice-of-law analysis. *See*, *e.g.*, *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) ("Since [Mississippi] state law provides the rule of decision, Mississippi law is determinative of the attorney client privilege."). In fact, this court has applied the first approach in resolving a motion to quash a deposition filed by Zurich where there was no clear choice of law issue. (*See* R. Doc. 234 at 4, n. 3). Some courts have explicitly endorsed the first approach to Rule 501, however, where the substantive law has already been determined through choice-of-law principles. *See*, *e.g.*, *United States Sur. Co. v. Stevens Family Ltd. P'ship*, No. 11 C 7480, 2014 WL 902893 (N.D. Ill. Mar. 7, 2014) ("Once the court has, by applying appropriate choice of law principles, determined the substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law.").

[11] Several of the motions at issue in this Ruling were transferred from other district courts under Rule 45 of the Federal Rules of Civil Procedure. The holding in *Ferens* only applies to transfers under 28 U.S.C. § 1404. *See Ferens*, 494 U.S. at 528.

must first determine whether there is an actual conflict between Washington law and the laws of either Louisiana or Texas. *Seizer v. Sessions*, 940 P.2d 262, 264 (Wash. 1997). An actual conflict exists when "the result of the issues is different under the law of the two states." *Id*. If there is not an actual conflict, then the court must apply Washington law and forego a choice-of-law analysis. *Id*.

All three states recognize an attorney-client privilege and some form of implied waiver of the attorney-client privilege where the plaintiff puts the subject-matter of those communications at issue.[12] Accordingly, the court finds no discernable difference in the laws of Washington, Louisiana, and Texas with regard to the application of the attorney-client privilege and implied waiver in light of the facts of this case. Having found no actual conflict between Washington law and the laws of either Louisiana or Texas, there is no need to engage in a choice-of-law analysis—Washington's law on attorney-client privilege governs.[13]

_____

[12] *See Pappas v. Holloway*, 787 P.2d 30, 36 (Wash. 1990) (under Washington law, a party impliedly waives the attorney-client privilege when (1) its assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *Conoco, Inc. v. Boh Brothers Construction Co.*, 191 F.R.D. 107 (W.D. La. 1998) (under Louisiana law, the attorney-client privilege may be waived by placing the privileged communication "at issue," which occurs when the "waiving party pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail.") (citation and internal quotation marks omitted); *Alford v. Bryant*, 137 S.W.3d 916 (Tex. App. 2004) (under Texas law, a party waives attorney-client privilege under "offensive use" doctrine where (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information sought is such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted; and (3) disclosure of the confidential information is the only means by which the aggrieved party may obtain the evidence).

[13] There is arguably an actual conflict between Washington and Louisiana law because Louisiana courts have refused to follow the implied waiver test as announced in *Hearn* and followed by Washington courts. *See Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138 (La. 1987). Even if the court found an actual conflict and conducted a choice-of-law analysis, however, it would still conclude that Washington law applies to the communications at issue. Although there is little jurisprudence in Washington regarding the governing choice-of-law rules on privileges, at least one Washington court has applied Restatement (Second) of Conflict of Laws § 139 to determine the governing law on privileges. *See State v. Donahue*, 18 P.3d 608, 611 (Wash. Ct. App. 2001) (applying Section 139 in determining that

14

## 2.    Application of Washington Law of Attorney-Client Privilege

The attorney-client privilege has been codified in Washington: "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment."  RCW 5.60.060(2).

Washington law recognizes an "implied waiver" of the attorney client privilege where three conditions are met:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
>
> (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Pappas v. Holloway*, 787 P.2d 30, 34 (Wash. 1990) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  In *Pappas*, the plaintiff sued his client to recover fees for his legal services in defending another action.  The defendant counterclaimed with a malpractice claim and the plaintiff brought third-party demands against all other attorneys who had represented the

---

Oregon's physician-patient privilege applied); *see also State v. Mayes*, 579 P.2d 999, 1005 n. 7 (Wash. Ct. App. 1978) (noting that it would apply Section 139 if faced with a choice-of-law issue).  Under Section 139, the court generally applies the "local law of the state which has the most significant relations with the communication."  Assuming that Louisiana is the "state which has the most significant relations" with at least some of the communications, and further assuming that Louisiana law would find those communications privileged, Section 139 would still allow admission of the communications under Washington law, "unless there is some special reason why the forum policy favoring admission should not be given effect."  The court finds no special reason why it should not give effect to Washington's policy favoring admission.  Indeed, in the context of determining a policyholder's rights to obtain otherwise privileged documents from its insurer, the Washington Supreme Court has created a presumption that there is no attorney-client privilege between the insured and insurer in the claims adjusting process where the insured raises a first-party bad faith claim.  *See Cedell v. Farmers Ins. Co. of Washington*, 295 P.3d 239 (Wash. 2013).  It is clear that the Washington courts are not inclined to divorce the issues of substantive bad faith and attorney-client privilege in the bad faith context.  Accordingly, the court should give effect to Washington's policy favoring admission of documents in insurance bad faith disputes.

defendant in the underlying lawsuit. Those third-party defendants refused to produce documents to the plaintiff based on the attorney-client privilege. The Washington Supreme Court held that an "implied waiver" of the privilege occurred when the defendant brought his legal malpractice counter-claim against the plaintiff. The court further held that the plaintiff was entitled to obtain otherwise privileged documents from the third-party defendants because denying the production would prevent the plaintiff from effectively defending himself.

The Western District of Washington has applied the test recognized in *Pappas* in the context of insurance litigation. *See Bank of America v. Travelers Indem. Co.*, No. C07-0322, 2009 WL 2578966 (W.D. Wash. Aug. 18, 2009). In that action, Bank of America was the trustee of real property that contaminated adjacent land. After the adjacent landowner sued Bank of America and other defendants, Bank of America retained defense counsel that had previously represented Bank of America's co-defendants without notifying Travelers, its insurer. Bank of America signed a waiver of conflicts acknowledging that the defense counsel could not sue the co-defendants it represents in other matters. After settling with the adjacent landowner, Bank of America tendered its claim to Travelers demanding reimbursement of the settlement amount and defense fees. Travelers filed a cross-claim seeking declaratory relief for Bank of America's alleged breach of the notice provision in the insurance policy. Travelers claimed it would have hired different defense counsel that could have asserted cross-claims against Bank of America's co-defendants, which would have resulted in a lower settlement amount and defense fees. The court applied the factors discussed in *Pappas*, concluding that Bank of America impliedly waived its attorney-client privilege with defense counsel because Travelers needed to review Bank of America's counsel's litigation strategy and determine whether certain defense or claims were considered.

The Washington Supreme Court's holding in *Pappas* does not require a blanket waiver of the attorney-client privilege in all bad faith litigation in which the insurer seeks documents from its insured. The *Pappas* decision was premised on a finding that the insured breached its duty of providing timely notice to its insurer. Discovery into privileged information was required to determine whether that breach resulted in any harm to the insurer. Here, Zurich is seeking privileged information from Shaw's attorneys to demonstrate that it did not breach its duty to defend in bad faith. Information "vital" to Zurich's defense includes information related to the alleged harm caused by Zurich's acts and omissions and the measure of damages recoverable by Shaw.

Zurich has established the three prongs of the *Pappas* test with regard to information relevant to the issue of Shaw's alleged harm. Shaw has asserted the privilege as a result of its filing a claim alleging that Zurich breached its duty to defend in bad faith and seeking damages measured by its settlement in the underlying litigation. *Pappas*, 787 P.2d at 34. Shaw's affirmative act of seeking to recover those alleged damages from Zurich in this litigation "put the protected information at issue by making it relevant to the case." *Id*. Finally, the privileged communications between Shaw and its attorneys would contain "information vital" to Zurich's ability to rebut any presumption of harm should it be found to have acted in bad faith.

Zurich has not, however, established the third prong with regard to information relevant to the issue of the reasonableness of Shaw's settlement amount. If Zurich challenges the reasonableness of the settlement amount between Shaw and REC, it can rely upon expert witness testimony regarding the objective reasonableness of the settlement amount. Although the subpoenaed law firms' invoices, billing records, and timesheets are arguably vital to Zurich's ability to challenge the measure of defense costs it is liable for, the subpoenaed parties have

represented that those documents are already in the possession of Zurich.  The court will require production of the documents to the extent the subpoenaed law firms cannot confirm that they are already in Zurich's possession, whether through a production by Shaw or otherwise.  Under *Pappas*, Shaw has waived its privilege with regard to descriptions of its attorneys' timesheets and other billing records.  *See Aecon Bldgs., Inc. v. Zurich North America*, No. C07-832, 2008 WL 2434205 (W.D. Wash. June 13, 2008) (policyholder waived privilege communications in invoices where it submitted declarations related to the fees in its motion related to the reasonableness of its settlement and by identifying one of its attorneys as a witness to testify on the "nature, value and reasonableness of legal services rendered," but noting that the court did not find that the policyholder put any "substantive" attorney-client communications at issue by seeking defense fees).

### C.    The Work Product Doctrine

Shaw and the non-parties further argue that some of the information sought is protected by the work product doctrine.  The work product doctrine is a matter of federal procedural law in diversity cases.  *See N. Am. Specialty Ins. Co. v. Iberville Coatings, Inc*., No. 99-859, 2002 WL 34423316, at *3 (M.D. La. Mar. 22, 2002).  The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The moving party may discover relevant information, however, if the "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  "The burden of establishing that a document is work

product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann v. U .S. Government, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

The court need not determine to what extent the information sought by Shaw is protected work product because Zurich has shown a substantial need for relevant information in the possession of Shaw's former counsel that it cannot, without undue hardship, obtain their substantial equivalent by other means than from the subpoenaed law firms. Shaw has specifically alleged that Zurich's actions (and inaction) have directly and adversely affected their defense in the underlying litigation. Zurich is entitled to discovery how and to what extent the defense of Shaw was so harmed. Zurich has a substantial need for documents in the possession of the subpoenaed law firms to evaluate whether Shaw was harmed by its alleged bad faith acts or omissions. Zurich does not have a substantial need for documents for the purpose of demonstrating the reasonableness of the settlement between Shaw and REC, which Zurich may challenge without resort to protected work product.

### D. Additional Objections Regarding the Document Subpoenas

The subpoenaed law firms also challenge the document subpoenas on the grounds that they were not provided a reasonable time to respond, improper form, vagueness and overbreadth, and undue burden. The first two objections are moot now that the court has taken the parties' motions for consideration. The court has addressed the parties' objections regarding vagueness and overbreadth by defining the scope of relevant information. The subpoenaed parties' arguments regarding undue burden are also resolved by the narrowed scope of documents the court is requiring to be produced.

The non-party law firms also argue that several of the categories of documents sought by Zurich are presumably already in Zurich's possession or can be obtained directly from Shaw if not privileged or protected. The court agrees. To the extent the subpoenaed law firms can confirm that responsive documents are already in the possession of Zurich, they need not be produced. Similarly, the court will not require the subpoenaed law firms to produce e-mail communications for which Zurich (and its agents) are authors or recipients. The court will presume those documents to be in Zurich's possession and Zurich has not shown why these non-parties should incur the time and expense to produce materials already in Zurich's possession.

**E.  Scope of Required Productions and Deposition Testimony**

In accordance with the analysis above, the court will compel the production by the non-party law firms, and the depositions of non-party attorneys, to a limited extent. The following categories of information shall define the scope of the required productions or deposition testimony:

> (1) Zurich's alleged failure to pay for Shaw's defense in a timely manner and any resulting harm to Shaw, including complaints or threats to withdraw by counsel as a result of Zurich's alleged late payments;

> (2) Zurich's alleged failure in exercising reasonable care in controlling Shaw's defense, including Zurich's alleged requirement that Shaw's counsel treat it as a "partner"; and

> (3) Zurich's alleged failure to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available to Shaw and any resulting harm to Shaw, including Shaw's alleged loss of an opportunity to settle the underlying lawsuit for a sum less than $10 million between the period of the fall of 2009 through late spring of 2011.

To the extent that Zurich has requested documents or deposition testimony outside of the foregoing scope of information, the court will quash the subpoenas.

## III. Conclusion

For the foregoing reasons, the non-party law firms Baker, Donelson, Bearman, Caldwell; Griffith, Davidson & Shurtleff, P.C.; and Oles, Morrison, Rinker & Baker, LLP shall comply with the respective subpoenas issued to them as detailed in this Ruling. The production of these documents must occur no later than June 4, 2014. The parties are to confer with one another and with Jason Cagle, Anthony Jach, Daniel Terrell, Danny Shaw, and Robert Brown to select mutually agreeable dates for these depositions. The applicable discovery deadlines are extended until June 30, 2014 for the purpose of conducting these depositions.

**IT IS ORDERED** that Zurich's Motion to Compel Production Requested in *Subpoena Duces Tecum* issued to Baker, Donelson, Bearman, Caldwell (R. Doc. 242) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash *Subpoena Duces Tecum* issued to Baker, Donelson, Bearman, Caldwell (R. Doc. 247) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Zurich's Motion to Compel Production Requested in *Subpoena Duces Tecum* issued to Griffith, Davidson & Shurtleff, P.C. (R. Doc. 256) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash *Subpoena Duces Tecum* issued to Griffith, Davidson & Shurtleff, P.C. (R. Doc. 265) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Zurich's Motion to Compel Production Requested in *Subpoena Duces Tecum* issued to Oles, Morrison, Rinker & Baker, LLP (R. Doc. 262) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash *Subpoena Duces Tecum* issued to Oles, Morrison, Rinker & Baker, LLP (R. Doc. 266) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash Subpoenas for the Depositions of Jason L. Cagle, Anthony P. Jach, and Daniel S. Terrell (R. Doc. 249) is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash Subpoenas for the Deposition of Danny Shaw (R. Doc. 250) is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that Shaw's Motion to Quash Subpoenas for the Deposition of Robert P. Brown (R. Doc. 251) is **GRANTED in part and DENIED in part.**

Signed in Baton Rouge, Louisiana, on May 5, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**