UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**THE SHAW GROUP, INC., et al.**                        **CIVIL ACTION**

**VERSUS**                                              **NO. 12-257-JJB-RLB**

**ZURICH AMERICAN INSURANCE
COMPANY, et al.**

---

# RULING AND ORDER

Before the Court is defendant Zurich American Insurance Company's ("Zurich") Motion to Compel Responses to Interrogatories. (R. Doc. 259). This Motion is opposed by plaintiffs The Shaw Group, Inc. and Shaw Process Fabricators, Inc. (collectively, "Shaw"). (R. Doc. 271). Zurich has filed a Reply. (R. Doc. 279).

Also before the Court is Zurich's Motion for Leave to Serve Excess Requests for Admission and Excess Interrogatory. (R. Doc. 280). The motion is opposed by Shaw. (R. Doc. 281).

## I. Background

This is an insurance dispute. In the underlying action, REC Solar Grade Silicon, LLC ("REC") sued Shaw for damages regarding defective pipe spools sold by Shaw to REC for use in a gas manufacturing plant. Shaw filed an action in the Eastern District of Washington in July of 2011 seeking a declaratory judgment providing that, among other things, Zurich American Insurance Company ("Zurich"), Shaw's primary insurer, breached its duty to defend Shaw in the underlying litigation and did so in bad faith.

According to the Second Amended Complaint, after Shaw tendered Zurich with the complaint in the underlying action, Zurich responded that "there was no insurance coverage" for the damages in the Underlying Litigation, but also provided that "it would accept and undertake the defense of the Underlying Litigation under a full reservation of rights." (R. Doc. 156, "SAC," ¶ 15). Shaw alleges that since undertaking its duty to defend, Zurich has "disputed the extent to which it was obligated to pay for defense costs" and has "unreasonably breached its duty to defend by failing to pay for the defense in a timely manner." (SAC, ¶ 16). Shaw alleges that Zurich "controlled the defense of Plaintiffs in the Underlying Litigation in the Eastern District of Washington," but breached its duty to exercise the degree of reasonable care applicable to the defense, which proximately caused it harm. (SAC, ¶ 23). Shaw also alleges that Zurich violated its "duties to engage in good faith settlement negotiations of the Underlying Litigation by refusing indemnity to Plaintiffs herein prior to the July mediation between the Plaintiffs and REC." (SAC, ¶ 23). This court has ruled that Shaw's extra-contractual claims against Zurich shall be governed under Washington law. (R. Doc. 132 at 11).

Discovery in this action has been extended multiple times in light of various discovery disputes between the parties. The current deadline for filing all discovery motions and completing fact discovery is February 28, 2014. (R. Doc. 236 at 4). The parties have submitted a joint request to extend fact discovery to May 15, 2014, because of "weather, witness availability, and the need to continue depositions due to pending discovery motions before the Court that will impact their scope." (R. Doc. 260-1 at 3). On April 11, 2014, the court held a telephone status conference and provided that after rulings were issued on the pending discovery motions, new discovery deadlines would be set accordingly. (R. Doc. 277).

On March 12, 2014, Zurich filed the instant motion to compel responses to its interrogatories. (R. Doc. 259). Zurich served its Initial Interrogatories on Shaw on December 6, 2013 and its Supplemental Interrogatories on January 2, 2014. Zurich argues that Shaw's responses to its initial and supplemental interrogatories are "evasive, incomplete, and unresponsive." (R. Doc. 259-1 at 1). More specifically, Zurich argues that Shaw has not provided sufficient responses to Interrogatories Nos. 4 and 5, and Supplemental Interrogatories Nos. 2, 3, 4, and 7. Zurich also argues that the court implicitly granted Zurich leave to propound upon Shaw more than 25 interrogatories by extending the deadline for Shaw to respond to those interrogatories. (R. Doc. 277). (R. Doc. 259-1 at 12). Shaw counters that its responses are sufficient and do not rely upon its objection that the interrogatories request legal conclusions. Shaw also asserts that it properly refused to answer interrogatories in excess of those allowed by Rule 33 in the absence of leave of court.

On April 15, 2014, Zurich filed its motion to exceed the 25 allowed requests for admission allowed under L.R. 36.2. (R. Doc. 280). The motion was filed four days after the court stated it would extend the discovery deadlines after resolving already pending motions. (R. Doc. 277). Zurich requests leave to serve an additional 35 requests for admissions, as well as an additional interrogatory related to those requests for admissions. (R. Doc. 280-1). Zurich has already served 18 requests for admissions and has reached its limit of available interrogatories. Zurich has not yet served this additional discovery on Shaw. Shaw opposes the motion on the grounds that Zurich has failed to establish good cause to serve excess requests for admissions because the majority of proposed discovery seeks either impermissible legal conclusions or attempts to establish immaterial facts. (R. Doc. 281 at 2-9). Furthermore, Shaw opposes the additional interrogatory on the ground that it actually amounts to thirty-five additional

3

interrogatories because it relates to each of the thirty-five additional requests for admissions, and Zurich has made no particularized showing of why this additional discovery is warranted.

## II. LAW AND ANALYSIS

### A. Sufficiency of Shaw's Interrogatory Responses

Zurich claims that Shaw has not provided sufficient responses to Interrogatories Nos. 4 and 5, and Supplemental Interrogatories Nos. 2, 3, 4, and 7. Zurich argues that Shaw's answers are "evasive or incomplete" disclosures that "must be treated as a failure to disclose, answer, or respond" to discovery under Rule 37 of the Federal Rules of Civil Procedure. Zurich argues that Shaw's answers are insufficient because they do not specifically identify how Shaw was allegedly harmed by Zurich's actions. (R. Doc. 259-1 at 8). Zurich also argues that Shaw improperly objected, and refused to respond, on the basis that Zurich's interrogatories sought legal conclusions.

The interrogatories and answers at issue in Zurich's motion to compel are as follows:

Interrogatory No. 4:

>Please identify each and every act or omission you claim Zurich committed or omitted which prejudiced you or caused you damage, and the basis for any and all claims for damages and/or penalties identified in your Complaint (including all amendments thereto).

Answer:

>Shaw objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome. Shaw further objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers as follows:

>While it is impossible for Shaw to identify each and every act or omission Zurich committed or omitted that prejudiced Shaw or caused it damage at this time since discovery is continuing, Shaw offers the following as a non-exhaustive description of Zurich's conduct that Shaw is aware of that supports Shaw's claims and damages sought in the Second Amended Complaint.

4

After Zurich received a copy of the complaint in REC Solar Grade Silicon LLC v. The Shaw Group, Inc., et al, No. 2:09-CV-188-LRS (the "Underlying Lawsuit") in June 2009, Zurich breached its duty to defend to [sic] Shaw by failing to retain defense counsel, by failing to pay defense costs, and by failing to agree to defend Shaw until approximately 15 months later on September 9, 2010. As a result of this breach of the duty to defend, Shaw had to retain counsel and pay its own defense costs and was uncertain whether Zurich would defend its insured against a lawsuit that exposed Shaw to tens of millions of dollars in damages. During this time, Shaw and its counsel asked Zurich and its third-party administrator on several occasions whether Zurich was accepting the defense. Zurich and its third-party administrator FARA failed to adequately respond to Shaw's inquiries. After Zurich finally accepted the defense in September 2010, Zurich and its third-party administrator FARA failed to timely pay defense costs, which constituted further breaches of the duty to defend. As a result of Zurich's failure to timely pay defense counsel, Shaw's main defense counsel at the time, Griffith Nixon Davidson, PC, complained about the late payments and threatened to withdraw as counsel in the Underlying Lawsuit. Because of Shaw's uncertainty in the defense to a damage claim made by REC that by July 2011 had ballooned to over $100 million, Shaw hired another firm, Baker Donelson, to take over as lead counsel. Shaw then had to pay Baker Donelson with its own funds for a period of time until Zurich eventually agreed the retention of Baker Donelson was appropriate and agreed to pay those defense costs. In addition, Shaw lost the time value of the money that Shaw was forced to pay to Baker Donelson and Zurich eventually reimbursed.

In addition, Zurich also breached its duties to Shaw by failing to thoroughly or timely investigate the claim for insurance benefits arising out of the Underlying Lawsuit (the "REC Claim"). After receiving the REC Claim in June 2009, neither Zurich nor its third-party administrator FARA performed a timely or thorough investigation. Moreover, despite determining at some point that coverage existed for the REC Claim and that Shaw would be found liable, Zurich then never attempted to negotiate a settlement with the plaintiff, offer the limits of Zurich's policy to Shaw, or otherwise offer settlement authority to Shaw. Instead, Zurich continued to act in furtherance of its own financial interest instead of those of the insured, Shaw. Because Zurich would not acknowledge to Shaw that coverage existed for the REC Claim, Shaw's excess carriers failed to acknowledge that it owed any duty to Shaw (since the limits of Zurich's policy had not been exhausted) and offer settlement authority within the limits of those excess insurance policies. As a result, Shaw was forced to settle the Underlying lawsuit on its own in October 2011 for $24.5 million. Only after Shaw settled the Underlying Lawsuit with its own funds did Zurich acknowledge there was coverage under the Zurich policy and tender its policy limits for two occurrences in the amount of $4 million. But for Zurich's failures to properly investigate and settle the REC Claim, Shaw could have settled the Underlying Lawsuit for a sum less than $10 million between the period of the fall of 2009 through late spring of 2011 in response to a demand made by plaintiff. Because Zurich breached these duties, the settlement value of the Underlying Lawsuit substantially increased, thereby exposing Shaw to even larger substantial damages. Shaw also lost the time value of funds it used to pay to defense bills and to settle the Underlying Lawsuit.

Zurich committed other violations of Washington law in its handling of the REC Claim. Zurich failed to acknowledge its receipt of the notice of claim within 10 days of being notified in June, 2009. After receiving notice of the claim, Zurich failed to promptly provide necessary claim forms, instructions, and policy conditions and any other requirements. Zurich failed to adopt or implement reasonable standards for the prompt investigation of claims. To the extent Zurich's Claims Best Practices for Construction & Defect Claims applied to the handing of the REC Claim, Zurich failed to follow the standards set forth in that documents. Zurich failed to complete notification of the claim. Zurich misrepresented pertinent facts and insurance policy provisions to Shaw in the September 2010 letter it sent to Shaw that reserved its rights and through communications to Shaw after Zurich performed its investigation of the REC Claim in July 2001. Zurich also failed to inform Shaw that Zurich had determined coverage under Shaw's excess policies would be jeopardized if Shaw accepted $2 million from Zurich as the limits of the Zurich policy. Shaw also refers Zurich to the pleadings, deposition testimony, documents, Shaw's expert reports, and other information produced by the parties and third parties in this case as further evidence supporting Shaw's claims and damages asserted against Zurich in the Second Amended Complaint.

Discovery is continuing in this matter and Shaw reserves its right to further supplement its answer to this interrogatory as necessary.

Interrogatory No. 5:

Please state the total amount of damages you allegedly suffered and the total amount of penalties to which you claim entitlement as a result of Zurich's alleged bad faith/improper handling of your claim arising out of the REC suit. For each category (damages and penalties), break down the total value according to each alleged act or omission by Zurich which you claim caused you damage and each alleged act or omission that triggered penalties under Washington or Louisiana and the amount of said penalties.

Answer:

Shaw objects to this Interrogatory as overly broad, and unduly burdensome. Shaw further objects to this claim as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers as follows:

Zurich is liable for the entire amount of the $24.5 million settlement of the Underlying Lawsuit ($20,750,000 in cash, plus the $3,804,520.50 counterclaim that Shaw Process Fabricators, Inc. released), plus treble damages under Washington bad faith law for a total amount of $73.6 million, plus prejudgment interest and attorneys' fees in an amount to be determined at trial.

Supplemental Interrogatory No. 2:

Please identify the harm that you contend was suffered as a proximate cause of Zurich's allegedly late payment of defense counsel, and explain the causal connection between the alleged harm and the time of payment.

Answer:

Shaw objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

Supplemental Interrogatory No. 3:

Please identify each act or omission of Zurich during the adjustment of the underlying claim that you contend violated Washington state law, and for each act or omission, specify the harm or damage that you allegedly suffered as a result.

Answer:

Shaw objects to this Interrogatory as overly broad, unduly burdensome, and vague and ambiguous. Shaw further objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013 and to the Second Amended Complaint.

Supplemental Interrogatory No. 4:

Please identify every fact that you allege Zurich failed to discover but would have [been] discovered if it had investigated the claim properly, and as to each fact, explain how you were damaged[1] by Zurich's alleged failure to discover it.

---

[1] Although Zurich uses the word "damaged" in this Interrogatory, the context of the sentence clearly requests Shaw to identify the extent it was injured or harmed. In response to this Interrogatory, Shaw interprets the word "damaged" in the same manner, as it discusses the rebuttable presumption of harm, not the damages sought as identified in response to Interrogatory No. 5.

7

Answer:

Shaw objects to this Interrogatory as overly broad, unduly burdensome, and vague and ambiguous. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

Supplemental Interrogatory No. 7:

As to your allegation that Zurich "did not provide a reasonable explanation of the basis in the policy in relation to the facts or applicable law in support of the declination of coverage," state how you were harmed or damaged by this alleged failure.

Answer:

Shaw objects to this Interrogatory as seeking a legal conclusion, and as improper under the Federal Rules of Civil Procedure. Subject to these objections and its General Objections, Shaw answers that Washington law presumes Shaw was harmed from Zurich's bad faith actions. Shaw also refers Zurich to Shaw's answer to Interrogatory 4 from Zurich's Interrogatories to Shaw dated December 6, 2013.

(R. Docs. 259-2, 259-3).

Although Shaw has objected to the foregoing interrogatories on the basis that they seek legal conclusions, it has nevertheless provided responses in spite of that objection. Accordingly, the court will not grant Zurich's motion on the basis that Shaw failed to answer the interrogatories at all based on its objections that the interrogatories seek legal conclusions.

Zurich's argument that Shaw's answers are incomplete in that they do not specifically identify how Shaw was harmed by Zurich's actions raises an altogether different issue. Under Washington law, the bad faith handling of an insurance claim is a tort, and is accordingly "analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr. Co.*, 169 P.3d 1, 8 (Wash. 2007) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)). "[W]here an insurer acts in bad faith in handling a claim under a reservation of rights,

the insurer is estopped from denying coverage." *Safeco Ins. Co. v. Butler*, 823 P.2d 499, 504–05 (Wash. 1992). An insurer who accepts its duty to defend under a reservation of rights, "but then performs the duty in bad faith is no less liable than the insurer who accepts but later rejects the duty." *Id.* at 504. "[A]n insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit." *Indus. Indem. Co. v. Kallevig*, 792 P.2d 520, 526 (Wash. 1990).

"In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins.*, 951 P.2d 1124, 1126 (Wash. 1998). "Although a showing of harm is an essential element of an action for bad faith handling of an insurance claim, [the Washington Supreme Court has] imposed a rebuttable presumption of harm once the insured meets the burden of establishing bad faith. *Id.* at 1127 (citing *Butler*, 823 P.2d 499, 504). "Without the rebuttable presumption of harm, the insurer could defend its position under the following contract theory—even if there were a duty to defend, our bad faith breach did not cause injury to the insured because ultimate liability was found to be outside the scope of coverage." *Id.*

Here, Shaw has sufficiently answered Interrogatory 4 and Interrogatory 5. Interrogatory 4 requests Shaw to identify Zurich's acts and omissions upon which Shaw is seeking damages. In response, Shaw identifies, with sufficient detail, those alleged acts and omissions, i.e., Zurich's alleged breach in bad faith of its duties to defend, as well as its corresponding duties to investigate and settle.[2] Interrogatory 5 inquires about the damages and penalties sought by Shaw

---

[2] Shaw's response also identifies some harm resulting from those alleged breaches. For example, Shaw's "uncertainty in the defense to a damage claim made by REC" is sufficient for a showing of harm (or prejudice) under Washington law. *See Dan Paulson*, 169 P.3d 1, 12 (uncertainty concerning potential prejudice to an arbitrator by insurance company's bad faith acts was harmful and prejudicial to insured);

9

in light of these breaches. Shaw identifies, with sufficient detail, the alleged damages and penalties it is seeking to recover from Zurich. In response to Interrogatory 5, Shaw does not specifically identify, as requested, the acts or omissions underlying the requested damages and penalties. Under Washington law, however, where an insured can establish breach of the duty to defend in bad faith, the resulting measure of damages may presumptively become the reasonable settlement amount paid by the insured to settle the underlying claim. *See Bird v. Best Plumbing Grp., LLC*, 260 P.3d 209, 211 (Wash. Ct. App. 2011), *aff'd*, 287 P.3d 551 (2012). Washington's Insurance Fair Conduct Act also allows a policyholder to recover up to three times its actual damages for an unreasonable denial of a claim for coverage or payment of benefits by an insurer for certain acts delineated in the statute. *See* RCW 48.30.015. Accordingly, the court concludes that Shaw need not identify which damages it seeks in light of the specific alleged acts or omissions of Zurich.[3]

Zurich's Supplemental Interrogatories 2, 3, 4, and 7 inquire into the alleged harm suffered by Shaw as a result of the alleged breaches in bad faith. This inquiry is distinct from Zurich's inquiries into whether Zurich had any duties, whether it breached those duties, whether it acted in bad faith, and the extent of recoverable damages sought by Shaw. Those inquiries are addressed by Interrogatories 4 and 5. In contrast, Zurich's Supplemental Interrogatories 2, 3, 4, and 7 seek information regarding whether Zurich's alleged acts and omissions actually and proximately caused Zurich any harm. Zurich provides some responses regarding its resulting alleged harm in response to Interrogatory 4, but it is unclear whether, in response to the

---

*but see National Union Fire*, 2009 WL 1794041 (uncertainty concerning whether defense counsel would continue representation during billing dispute with insurer is insufficient to establish cognizable harm to maintain a bad faith claim unless, as in *Dan Paulson*, the insured "lost control of the case"). Whether Shaw must specifically identify the alleged harms provided in Interrogatory 4 in response to the Supplemental Interrogatories is taken up below.

[3] The court is taking no position with regard to whether Shaw has correctly identified its recoverable damages should it prove its allegations.

Supplemental Interrogatories, the alleged "harms" found in the response to Interrogatory 4 are the entire universe of alleged "harms" for which Shaw is seeking damages.

The court recognizes that, under Washington law, if Shaw can establish that Zurich breached its duties in bad faith, i.e., that those breaches were "unreasonable, frivolous, or unfounded," then the court must presume that the element of "harm" is satisfied. *Kirk*, 951 P.2d at 1126. Nevertheless, that presumption is rebuttable. *Butler*, 823 P.2d 499, 506 ("[T]he insurer can rebut the presumption [of harm] by showing by a preponderance of the evidence its acts did not harm or prejudice the insured."); *National Union Fire Ins. Co. v. Greenwhich Ins. Co.*, No. C07-2065, 2009 WL 1794041, at *5 (W.D. Wash. June 22, 2009) (insurer rebutted presumption of harm on summary judgment where any damages caused by the insurer had already been awarded to the insurer's assignee). In order to rebut the presumption of harm, Zurich is entitled to seek discovery from Shaw regarding any harm alleged or identified, regardless of any potentially applicable presumption.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Accordingly, because Zurich's Supplemental Interrogatories 2, 3, 4, and 7 seek relevant non-privileged information regarding Zurich's ability to rebut any presumption of harm (should Shaw first prove the existence of bad faith), the court will require Shaw to fully answer those supplemental interrogatories. Shaw's response that Washington law presumes harm is insufficient. If Shaw's only allegation of harm is Washington law's rebuttable presumption of harm, then Shaw must explicitly inform Zurich that it is relying solely on that presumption and no underlying facts. Similarly, if Shaw believes the presumed harms caused by Zurich's alleged bad faith is

11

imbedded somewhere in its response to Interrogatory 4, then Shaw must explicitly detail those alleged harms for Zurich in response to the Supplemental Interrogatories.

In short, the court finds that Shaw's responses to Zurich's Supplemental Interrogatories 2, 3, 4, and 7 are insufficient. Although the Washington Supreme Court has recognized a presumption of harm, it has also made it clear that "[w]hether the insurer's acts prejudiced the insured is . . . a question of fact." *Butler*, 823 P.2d at 506. Shaw must identify any factual bases on which it alleges it was harmed as requested in Supplemental Interrogatories Nos. 2, 3, 4, and 7.

> B. **Zurich's Requests for Leave to Serve Excess Requests for Admission and Interrogatories**

Rule 33 of the Federal Rules of Civil Procedure and this Court's Local Rule 36.2 limit parties to 25 interrogatories and 25 requests for admission during discovery. *See* Fed. R. Civ. P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories"); LR 36.2 ("No party shall serve on any other party more than 25 requests for admission . . . ."). Nonetheless, a court may allow a moving party to exceed the set number of interrogatories and requests for admission where good cause is shown. *See* LR 36.2 ("Any party desiring to serve additional requests for admission shall file a written motion setting forth . . . the reasons establishing good cause for their use."); Fed. R. Civ. P. 33(a)(1) ("Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)."); Fed. R. Civ. P. 26(b)(2) ("By order, the court may alter the limits in these rules on the number of depositions and interrogatories" or requests for admission.).

A court should consider the factors listed in Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure to determine the existence of good cause. *See Estate of Manship v. U.S.*, 232

F.R.D. 552, 558-59 (M.D. La. 2005).[4] "Frequently, the issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party." *Id*. at 559.

### 1. Zurich's Supplemental Interrogatories Nos. 10-16

Zurich served its Initial Interrogatories on Shaw on December 6, 2013 (R. Doc. 259-2) and its Supplemental Interrogatories on January 2, 2014 (R. Doc. 259-3). Each set of discovery contained 16 interrogatories, for a total of 32 interrogatories. Shaw refused to answer the final 7 supplemental interrogatories (Nos. 10-16) on the ground that they were beyond the amount of written interrogatories permitted under Rule 33. (R. Doc. 259-3 at 5-9). The court finds that Shaw had no duty to answer written interrogatories in violation of the numerical limit in Rule 33(a)(1). Zurich did not seek leave to serve more than 25 interrogatories prior to serving its Supplemental Interrogatories.

Contrary to its assertion, the court did not implicitly grant Zurich leave to serve more than 25 interrogatories in its January 16, 2014 order. (R. Doc. 236). Zurich made no request for leave to serve additional interrogatories under Rule 26(b)(2). The discovery deadline had expired on December 31, 2013, and the court simply granted Zurich an extension of the discovery deadline, requiring Shaw to respond to Zurich's discovery requests by February 15,

---

[4] Rule 26(b)(2)(C), the scope and extent of discovery should be determined by considering whether:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

2014.  (R. Doc. 236 at 4).  Nothing in the court's order somehow remedies Shaw's violation of Rule 33(a)(1).

Zurich did not seek leave to serve more than 25 interrogatories until March 12, 2014.  (R. Doc. 259).  In support of its request for leave, Zurich suggests that the amount of damages sought in this action justifies leave to file more than 25 interrogatories.  Zurich cites no supporting authorities and makes no particularized showing why the court should grant it leave to re-serve the seven interrogatories left unanswered by Shaw.  Without such a showing, it has failed to adequately show that the benefits of these additional interrogatories outweigh any burden to Shaw.  *Estate of Manship*, 232 F.R.D at 559; *see Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996) (denying request to exceed number of allowed interrogatories where plaintiff "did not explain why additional interrogatories were necessary, beyond stating that the information related to [defendant's] defenses in some unspecified way").  The court will, therefore, deny Zurich's request to serve more than 25 interrogatories on Shaw under Rule 26(b)(2).

### 2. Zurich's Second Set of Requests for Admissions and Third Set of Interrogatories

On April 15, 2014, Zurich moved the court for leave to serve an additional 35 requests for admissions (Second Set of Requests for Admissions) and an additional interrogatory related to those requests for admissions (Third Set of Interrogatories).  (R. Doc. 280).  Zurich has already served 18 requests for admissions on Shaw.  The additional 35 requests for admissions sought by Zurich would exceed the number allowed by Local Rule 36.2, which limits such requests to 25, by an additional 17 requests for admissions.  The additional interrogatory sought by Zurich (regardless of whether it is characterized as a single interrogatory or thirty-five interrogatories) would exceed the number allowed by Rule 33.

Zurich suggests that it has good cause to serve these additional requests for admissions and interrogatories "[i]n light of the substantial production of documents (which is still growing), the complexity of the case, and the substantial amount in controversy." (R. Doc. 280-1 at 1). Zurich further contends that it has been unable to obtain the sought information through deposition and prior discovery and that the additional written discovery "is sought to narrow the issues and potentially streamline the jury trial currently set in this matter." (R. Doc. 280-1 at 2).

Given the applicable standard, the Court finds Zurich has not established good cause to warrant allowing more than the twenty-five requests for admissions allowed by Local Rule 36.2. Zurich claims in a conclusory manner that the complexity and high-stakes of this litigation warrants additional written discovery. It has failed to adequately show, however, that the benefits of these additional requests will actually narrow the issues or streamline the trial. Furthermore, as discussed above, Zurich makes no particularized showing why the court should grant it leave to serve more than twenty-five interrogatories. *Estate of Manship*, 232 F.R.D at 559; *Atkinson*, 84 F.3d at 144. Accordingly, the court will not allow Zurich to serve any requests for admissions or interrogatories exceeding the amounts allowed by Rule 33 of the Federal Rules of Civil Procedure and this Court's Local Rule 36.2.

The court will, however, grant Zurich leave to serve seven additional requests for admissions, of its choosing, to Shaw. The court finds good cause under Rule 16 for extending the discovery deadline for the limited purpose of allowing this discovery to proceed.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Zurich's Motion to Compel Responses to Interrogatories (R. Doc. 259) is **GRANTED in part and DENIED in part**. Shaw shall provide Zurich with

supplemental responses to Supplemental Interrogatories Nos. 2, 3, 4, and 7 no later than June 4, 2014.

**IT IS FURTHER ORDERED** that Zurich's Motion for Leave to Serve Excess Requests for Admission and Excess Interrogatory (R. Doc. 280) is **GRANTED in part and DENIED in part**. Zurich may serve on Shaw seven requests for admissions of its choosing from the Second Requests for Admissions (R. Doc. 280-2) submitted to the court, no later than May 15, 2014. Shaw may respond to these additional requests for admissions as allowed by the Federal Rules of Civil Procedure.

Signed in Baton Rouge, Louisiana, on May 7, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**