UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP INC., et al.                    CIVIL ACTION

VERSUS                                          NO. 12-257-JJB-RLB

ZURICH AMERICAN INSURANCE
COMPANY, et al.

---

ORDER

Before the court is Plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc.'s

(collectively "Shaw") "Motion to Enforce Order, Compel Deposition Testimony, Quash

Untimely Discovery Requests, and for Sanctions" (R. Doc. 182), filed on December 13, 2013.

The Motion is directed toward defendant Zurich American Insurance Company ("Zurich").

Zurich opposes the Motion (R. Docs. 204 and 227). Shaw filed a Reply Memorandum (R. Docs.

212 and 228) and Zurich filed a Reply Memorandum (R. Docs. 218 and 229).

I.      Background

This is an insurance dispute.  In the underlying action, REC Solar Grade Silicon, LLC

("REC") sued Shaw for damages regarding defective pipe spools sold by Shaw to REC for use in

a gas manufacturing plant.  Shaw filed an action in the Eastern District of Washington in July of

2011 seeking a declaratory judgment providing that, among other things, Zurich American

Insurance Company ("Zurich"), Shaw's primary insurer, breached its duty to defend Shaw in the

underlying litigation and did so in bad faith.

According to the Second Amended Complaint, after Shaw tendered Zurich with the

complaint in the underlying action, Zurich responded that "there was no insurance coverage" for

the damages in the Underlying Litigation, but also provided that "it would accept and undertake the defense of the Underlying Litigation under a full reservation of rights." (R. Doc. 156, "SAC," ¶ 15). Shaw alleges that since undertaking its duty to defend, Zurich has "disputed the extent to which it was obligated to pay for defense costs" and has "unreasonably breached its duty to defend by failing to pay for the defense in a timely manner." (SAC, ¶ 16). Shaw alleges that Zurich "controlled the defense of Plaintiffs in the Underlying Litigation in the Eastern District of Washington," but breached its duty to exercise the degree of reasonable care applicable to the defense, which proximately caused it harm. (SAC, ¶ 23). Shaw also alleges that Zurich violated its "duties to engage in good faith settlement negotiations of the Underlying Litigation by refusing indemnity to Plaintiffs herein prior to the July mediation between the Plaintiffs and REC." (SAC, ¶ 23).

On September 6, 2013, the parties filed a "Joint Consent Motion for an Agreed Protective Order and Order Governing Electronic Discovery, and Request for Entry of the Order on an Expedited Basis." (R. Doc. 161). The terms of the protective order were proposed by the parties. With respect to electronic discovery, the protective order set forth the parties' responsibilities regarding preservation of "electronically stored documents" as well as a provision that the "parties will endeavor to agree on search terms to be utilized" in the search for certain documents. (R. Doc. 164 at 6-7). The protective order was docketed on September 25, 2013. (R. Doc. 164).

On September 13, 2013, one week after requesting the protective order, Shaw filed a "Motion to Compel Answers and Responses to First Interrogatories and Requests for Production" to Zurich. (R. Doc. 162). No opposition was filed to this motion. On October 10,

2013, Zurich was ordered to submit complete responses, without objections, to these outstanding

discovery requests, within seven days. (R. Doc. 165).[1]

On October 23, 2013, Shaw filed a "Motion to Enforce the Court's October 10, 2013

Order." (R. Doc. 166). In that motion, Shaw alleged that Zurich had "failed to produce its

documents or provide written discovery responses on time; provided its (untimely) responses

subject to multiple objections; and withheld numerous documents based on attorney-client

privilege and work product objections." (R. Doc. 166 at 1).

Zurich, through its attorney Thomas Darling, apologized that Shaw needed to file the

motion to enforce the court's order and represented that Zurich "has now" provided amended

responses to Shaw including "over 30,000 pages of unredacted documents and production of all

documents previously claimed [as] privilege[d]. . ." (R. Doc. 169).

On November 6, 2013, the court granted Shaw's Motion to Enforce the Court's October

10, 2013 Order. (R. Doc. 170). The court concluded that although Zurich represented that it had

complied with the court's previous order, it had only done so after the Order was violated and

after Shaw had to file another motion. The court ordered Zurich to pay $250 to Shaw for

reasonable expenses but also found that additional sanctions were not warranted. Again, the

court relied on the representation by Zurich "that the responsive documents have been produced

and Interrogatories have been answered as ordered." (R. Doc. 170 at n.1).

The instant motion (R. Doc. 182) again seeks the court to order Zurich to comply with the

October 10, 2013 Order. In addition, it seeks an order to compel Zurich to produce its corporate

---

[1] As a general rule, discovery objections are waived if a party fails to timely object to interrogatories, production requests or other discovery efforts. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989); *Godsey v. United States*, 133 F.R.D. 111, 113 (S.D. Miss. 1990). Where parties have failed to respond timely to written discovery requests, this court has required those parties to answer interrogatories and produce documents without objections. *See, e.g., Matherne v. Schramm*, No. 12-807, 2013 WL 5961096 (M.D. La. Nov. 7, 2013); *Johnson v. City of Baton Rouge*, No. 10-129, 2011 WL 709186 (M.D. La. Feb. 18, 2011).

representative and its officers and employees for depositions on dates certain and for an order

quashing Zurich's untimely discovery requests to Shaw. Shaw seeks sanctions including treating

Zurich's continued violations as contempt of court, reimbursement of reasonable expenses

including attorney's fees, and additional sanctions including default judgment and dismissal of

Zurich's counterclaim. (R. Doc. 182 at 1).

## II.    Law and Analysis

Certain relief requested by Shaw has been rendered moot by subsequent orders of the

court.[2] As set forth above, Shaw requests an order compelling Zurich to produce certain

individuals for depositions. This same issue was raised in Zurich's Motion for Protective Order

and to Quash Depositions (R. Doc. 177) which was opposed by Shaw (R. Doc. 184). In that

opposition, however, plaintiffs agreed to an extension in the discovery deadlines to conduct the

depositions. This was further discussed in a status conference on December 16, 2013 (R. Doc.

190). Because the parties agreed to reschedule the depositions at issue, Zurich's Motion for

Protective Order was denied as moot. (R. Doc. 194). Because this issue has been resolved, the

relief requested by Shaw on this issue has likewise been rendered moot.

In addition, Shaw asks the court to quash certain untimely discovery requests sent to

Shaw. Zurich had previously requested an extension of discovery deadlines to address the

timeliness of these discovery requests. (R. Doc. 178). That motion was also opposed. (R. Doc.

184). For the reasons set forth in the court's Order, the discovery deadlines were extended for all

parties. (R. Doc. 236). Because this issue has been resolved, Shaw's request to quash the

discovery requests as untimely has also been rendered moot.

---

[2] The parties' various disputes regarding discovery have resulted in motions filed by each side that often
overlap issues. For example, on numerous occasions a motion for a protective order filed by one side is
often accompanied by a motion to compel filed by the other.

Shaw's first and final requests for relief, however, remain outstanding. Shaw alleges that

Zurich has still failed to provide complete responses to the request for production of documents

that was the subject of the October 10, 2013 Order. Specifically, Shaw claims that it provided

Zurich with a proposed list of search terms and custodians to collect and produce ESI that is

responsive to Shaw's document requests as provided by the September 25, 2013 Protective

Order. Shaw represents that counsel for Zurich never informed Shaw that it objected to the

proposed ESI search terms or that Zurich refused to provide ESI. (R. Doc. 182-1 at 4). Finally,

Shaw notes other deficiencies in the ultimate production by Zurich, identifying certain specific

documents that Shaw asserts are responsive to its requests and therefore covered by the October

10, 2013 Order.

In response, Zurich opposed the request for sanctions, but acknowledged that deadlines

had not been met and that there has been a lack of responsiveness. Zurich attributes all fault to

the personal issues of one of its counsel of record. (R. Doc. 204-3). Zurich dedicates most of its

briefing to support its motion to extend deadlines because of its concern that it would be

prejudiced if it was not allowed additional time to conduct discovery based on its own lack of

diligence. On January 13, 2014, Zurich filed a "Supplemental Memorandum in Support of

Motion to Extend Deadlines and in Opposition to Motion for Sanctions." (R. Doc. 227).[3] As

with the prior filing, Zurich dedicates its brief in support of its requested extension. Other than a

representation that it is making continued efforts to address all other discovery issues, it does not

---

[3] Based on the personal information contained in this memorandum as well as in the prior memorandum
(R. Doc. 204), the court allowed these documents to be filed under seal. The court does not need to
specifically reference any of that information in this decision.

specifically address its failure to comply with the court's prior orders or its failure to search for ESI as required.[4]

Also on January 13, 2014, Shaw filed a reply memorandum that further addresses the outstanding discovery. (R. Doc. 228). Shaw represents that as of January 6, 2014, Zurich has not made any document production responsive to the ESI search terms and custodians, has yet to identify a process for producing the ESI, or indicate when it will be produced. Shaw re-urges its request for sanctions.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, on October 10, 2013, this court granted a motion to compel and ordered Zurich to produce complete responses, without objections, to Shaw's First Set of Interrogatories and Requests for Production. (R. Doc. 165). That Order was served on Zurich through its counsel of record, Mr. Thomas Darling and Mr. Michael Peytavin. The court noted Shaw's good faith attempt to obtain the discovery requested without court action as well as Zurich's failure to file any opposition to the motion to compel.

Approximately two weeks later, Shaw filed an additional motion alleging that Zurich had failed to comply with the court's order. That Motion was also served on Mr. Darling and Mr. Peytavin. Zurich, through its attorney Mr. Darling, represented to the court in its response that it had provided amended responses and all documents previously claimed as privileged, "in accordance with the Court's order of October 10, 2013." (R. Doc. 169). Relying on that representation, Shaw's motion to enforce was granted but Zurich was only required to pay

---

[4] Zurich argues that ESI discovery was "not part of the October 10, 2013 Order" because it is governed by Agreed Protective Order and Order Governing Electronic Discovery docketed on September 25, 2013. (R. Doc. 164). On the contrary, the court ordered a complete production of documents, without objection, in response to Shaw's First Requests for Production. (R. Doc. 165). Although the Agreed Protective Order provided for the types of documents that must be preserved and that the parties would endeavor to agree on search terms with regard to the production of such documents, nothing in the Agreed Protective Order would preclude Zurich from having to produce ESI in response to Shaw's discovery requests as required by the court's October 10, 2013 Order.

certain reasonable expenses in bringing the motion. (R. Doc. 170). No additional sanctions were imposed based on the representation to the court that the failure to comply was only for a period of a couple of weeks. As with all other filings, Zurich's counsel of record was served with this order.

Zurich has not contested, by appeal to the district judge, the October 10, 2013 Order (R. Doc. 165), or the subsequent Order to enforce the October 10, 2013 Order (R. Doc. 170). Mr. Peytavin has received all filings in this court since he became counsel of record on May 14, 2012. (R. Doc. 95). Such filings include the foregoing discovery orders requiring Zurich to completely respond to Shaw's written discovery without objection and Zurich's representation, through Mr. Darling,[5] that it had provided complete responses to interrogatories and document productions without objection. Neither Mr. Peytavin or any other counsel for Zurich has corrected, or qualified, Mr. Darling's representation regarding Zurich's compliance with the court's October 10, 2013 Order.

Two additional attorneys from the same law firm, Wade Langlois and John Danna, enrolled as counsel of record for Zurich on December 12, 2013. (R. Doc. 176). Since enrolling as counsel, these attorneys have also been aware of the court's October 10, 2013 Order and Mr. Darling's representation that Zurich had complied with the order. Accordingly, they have known since at least December 2013 that Zurich had not fully complied with the October 10, 2013 Order by failing to search for, or produce, any responsive ESI. In the past five months, Zurich has failed to make sufficient efforts to fully comply with the court's October 10, 2013 Order by producing responsive ESI and correcting deficient productions.

---

[5] Although he has withdrawn his representation in the instant case, Mr. Darling continues to appear as counsel of record in several other cases in the Middle District of Louisiana and continues to represent Zurich. *See* 14-cv-226-JJB-RLB, 14-cv-99-SDD-RLB, 13-cv-450-BAJ-SCR.

Correspondence between counsel for Zurich and counsel for Shaw confirms that Zurich did not produce ESI in compliance with the court's order requiring complete responses to Shaw's requests for production without objection. On January 13, 2014, Mr. Langlois informed counsel for Shaw that he was working with Zurich to obtain and produce responsive ESI. (Exhibit A).[6] This e-mail correspondence reveals that Zurich did not object to the production of ESI, but had concerns regarding proper search terms to obtain responsive documents. Zurich also represented in its briefing that it was making continuing efforts to address this discovery issue. (R. Doc. 227 at 4). There has been no indication to the court, however, that Zurich has produced all responsive ESI without objections. As stated above, Shaw represents that as of January 6, 2014, Zurich has not made any document production responsive to the ESI search terms and custodians, has yet to identify a process for producing the ESI, and has not indicated when it will be produced.[7]

Moreover, Shaw has raised various insufficiencies regarding Zurich's production in addition to the non-production of ESI. On December 2, 2013, counsel for Shaw sent a letter to Mr. Darling raising several questions regarding the insufficient and incomplete productions of documents in response to Shaw's written discovery requests. (R. Doc. 182-5 at 2). Shaw requested Zurich's complete 2007-08 underwriting files, completed versions of documents produced with missing lines or redactions, Zurich's claims handling guidelines, the Unbundled TPA Guidelines and a certain "DJ file" referred to in produced documents, and various other documents listed on the privilege log that were not produced. In his December 18, 2013 e-mail

_____

[6] This e-mail correspondence was filed under seal as part of R. Doc. 228-2. The document does not reveal any sensitive information regarding the personal and private reasons why various documents in this litigation have been filed under seal since December 31, 2013. (*See* R. Doc. 204).
[7] The court held a telephone conference on April 11, 2014 regarding several pending discovery motions. At the telephone conference, counsel for Shaw informed the court that the ESI production remained an issue.

correspondence, Mr. Langlois represented that he would obtain and produce the documents requested by Shaw's counsel. (*See* Exhibit A). It is unclear, however, to what extent these documents have been produced.

The court concludes that Zurich has failed to obey the previous discovery orders by not timely searching for and producing ESI in response to Shaw's requests for production. (R. Docs. 165, 170). Zurich's original representation, through Mr. Darling, that it produced documents and responses to Shaw's written discovery, in accordance with the court's October 10, 2013 Order, was not completely correct. The court will, once again, order Zurich to produce complete responses, without objections or redactions, to Shaw's First Requests for Production within fourteen (14) days of this Order. In accordance with the September 25, 2013 protective order, the parties shall endeavor to agree on the search terms to be used to obtain ESI responsive to Shaw's First Requests for Production. If the parties cannot agree to search terms, custodians, and date ranges for locating documents responsive to Shaw's document requests, then Zurich must produce all responsive ESI in accordance with Shaw's suggested search terms, custodians, and date ranges. (*See* R. Doc. 182-3). In addition, Zurich must produce any responsive non-ESI documents that have not been previously produced, including all responsive documents identified in Shaw's December 2, 2013 letter to counsel for Zurich. (*See* Exhibit A).

Where a party fails to obey a discovery order, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses of unjust." Fed. R. Civ. P. 37(b)(2)(C). The court must award payment of expenses as a sanction, as Zurich's failure to initially comply with the court's Order

was not substantially justified and there are no circumstances that would make an award of expenses unjust.

The court will, therefore, order Zurich to pay Shaw's expenses incurred in having to move, a second time, for Zurich to obey the court's October 10, 2013 Order. In its motion, Shaw claimed that it incurred $4,951.50 in attorneys' fees in preparing and filing the motion. (R. Doc. 182 at 1). Zurich does not challenge this amount as unwarranted or unreasonable. In an affidavit attached to Shaw's reply memorandum, which was filed under seal, Shaw informed the court that it incurred an additional $9,410.50 in attorney's fees related to the preparation and filing of the reply and supporting documents, bringing the total incurred attorneys' fees to $14,362.00. (R. Doc. 228-1 at 4). Zurich does not challenge this amount as unwarranted or unreasonable.

The court has considered the additional discretionary sanctions provided by Rule 37(b)(2)(A) for failure to comply with the court's discovery orders and concludes that those sanctions are not merited at this time. Zurich is warned that continued violations of this court's orders will result in additional sanctions pursuant to Rule 37, including, but not limited to, prohibiting Zurich from introducing designated matters in evidence or striking pleadings in whole or in part.

**IT IS ORDERED** that Plaintiffs' Motion to Enforce Order, Compel Deposition Testimony, Quash Untimely Discovery Requests, and For Sanctions is **GRANTED in part and DENIED in part.** The court orders Zurich to produce complete responses, without objections or redactions, to Shaw's First Requests for Production within fourteen (14) days of this order. In accordance with the September 25, 2013 protective order, the parties shall endeavor to agree on the search terms to be used to obtain ESI responsive to Shaw's First Requests for Production. If the parties cannot agree to search terms, custodians, and date ranges for locating documents

responsive to Shaw's document requests, then Zurich must produce all responsive ESI in accordance with Shaw's suggested search terms, custodians, and date ranges. (*See* R. Doc. 182-3). In addition, Zurich must produce, any responsive non-ESI documents that have not been previously produced, including all responsive documents identified in Shaw's December 2, 2013 letter to counsel for Zurich. (*See* Exhibit A). Shaw's request to compel certain depositions and to quash certain discovery requests as untimely are denied as moot.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded their reasonable expenses incurred in making the motion, including attorney's fees, in the amount of $14,362.00. Payment shall be made within thirty days of this order.

Signed in Baton Rouge, Louisiana, on May 12, 2014.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

| | |
|---|---|
| **From:** | Wade Langlois <WLanglois@grhg.net> |
| **To:** | 'Jason Lien' <Jason.Lien@maslon.com> |
| **Date:** | 12/19/2013 2:12 PM |
| **Subject:** | RE: Shaw Group Discovery |
| **CC:** | David Suchar <David.Suchar@maslon.com>, "O'Connor, James" <James.O'Connor@maslon.com>, Todd Hayes <todd@harperhayes.com> |

Thanks for the reply Jason.

I will talk to Zurich about the ESI search. I don't think the terms of the search make the search any more problematic, we were just trying to save everyone the trouble of going through a bunch of irrelevant documents with some agreeable reasonable alternative discussions.

We can schedule Leo Bigley and the 30(b)(6) for January 14 and Joe Kostowski for January 15. I am still working on the others. Please confirm these ASAP so we can get them on the calendar. Bigley will address most of the 30(b)(6) issues.

For the record, I was not trying to limit the Madruga and Mahoney depositions in anyway. I was simply trying to explain their situations and come to an agreeable way to take their depositions.

**From:** Jason Lien [mailto:Jason.Lien@maslon.com]
**Sent:** Thursday, December 19, 2013 1:31 PM
**To:** Wade Langlois
**Cc:** David Suchar; O'Connor, James; Todd Hayes
**Subject:** Re: Shaw Group Discovery

Wade - Thank you for confirming that Zurich has not searched and produced ESI in response to Shaw's request first made on September 27th. We don't believe Shaw's ESI request is as broad as you suggest. It included a limited custodian list, search terms, and a time range (see Exhibit A to my declaration submitted in support of the 12/13/13 motion). Has Zurich attempted to conduct a search in these custodians' accounts with our suggested parameters to test whether they will produce a large volume? If not, I would suggest Zurich first do that. If testing the search does produce an unreasonably large set with non-responsive documents, please provide me with suggested alternative terms for consideration. Please note that Shaw's willingness to consider alternative terms in no way waives Shaw's right to argue that Zurich has waived any right to object to Shaw's proposed e-discovery search that was submitted in conjunction with its request for production of documents to Zurich. Shaw also expects Zurich will be producing all documents without objections, consistent with the Court's October 10th order.

As to format, we are fine with Zurich producing the ESI in a native format provided that the emails are produced in a PST file (I am assuming Zurich is using Outlook).

As for deposition scheduling, please propose some specific dates for each of the Zurich depositions we noticed. Shaw will not agree to limit the depositions of Mr. Mahoney and Ms. Madruga or conduct them by telephone / videoconference. For our scheduling purposes, please note that Shaw is taking the Rule 30(b)(6) deposition of NAS in Los Angeles during the week of January 20th (on January 22 and 23). With respect to Mr. Boehning, can you please provide us with his last known address and telephone number?

Thank you for responding to the other miscellaneous document issues. We will look forward to their prompt production so as not to delay the Zurich depositions. Please let us know when we can expect to receive those documents.



**JASON A. LIEN | PARTNER**
p 612.672.8319 | f 612.642.8319 | email | vcard | biography | linkedin
**MASLON EDELMAN BORMAN & BRAND, LLP**
3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402

>>> Wade Langlois <WLanglois@grhg.net> 12/18/2013 4:24 PM >>>

Jason,

I have been working with Zurich on the discovery issues and wanted to give you an update.

Zurich was not aware of the e-discovery requests, but we are getting on these ASAP. I would suggest we talk about the search terms, however. For instance, you have designated "Shaw" as a search term. If Zurich does a search for this term any file that ever dealt with anyone named Shaw will be found and some untold millions of documents could be produced. "REC" is another example. Anytime those three letters are found together will be identified in a search and would result in . This is the same for all the requests so the more we can narrow the search the smaller the production would be. If we could narrow the search then it would be more efficient for everyone. Let me know if we can discuss this.

Zurich's tech people also have told me that the best way to make the production would be in native format. This would be easier to organize and handle. I don't pretend to know anything about these kinds of tech terms so let me know what you think and if this is acceptable.

On the depositions, as I previously wrote you, it looks like the week of the 20th of January would be best. Zurich has requested that I ask if John Mahoney and Rose Madruga could be done by telephone or teleconference because these people had narrow involvement with the issues and their depositions should be relatively short compared to Bigley and Kostowski. It would be a hardship to ask them to travel for what should be fairly specific depositions.

I have also confirmed that John Boehning is not employed by Zurich and has not been for some time.

The UW file for the 2007 -2008 policy  has not been produced. I have requested it and will produce it.

The documents with missing lines and blank spaces. We did not redact these and provided the copies we had. I have requested that Zurich go to the original files and produce additional copies and confirm that nothing has been redacted.

I have requested the Unbundled TPA Guidelines.

Zurich is looking into the "DJ file" issue.

The listed documents that were not produced was inadvertent. Bates numbers 48, 719, 730-36, and 738 will be forwarded under separate cover.

I am also confirming that the claim handling guidelines have been produced.

Feel free to call if we can discuss any of this.

*Wade A. Langlois, III, Partner*
*Gaudry, Ranson, Higgins & Gremillion, LLC*
401 Whitney Avenue, Suite 500
Gretna, Louisiana  70056
Phone:  (504)362-2466
Fax:  (504)362-5938
Email:  wlanglois@grhg.net
This e-mail communication and the documents accompanying it may contain information that is intended only for the recipient named and may be confidential and subject to attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you have received this email in error, and that any review, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone (call collect at 504-362-2466) to make arrangements for returning the original e-mail to us.

CONFIDENTIALITY NOTICE: This e-mail transmission and any attachments accompanying it contain confidential information belonging to the sender that may be protected by the attorney-client or work product privileges. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please notify the sender by reply e-mail, and then destroy all copies of this transmission.