UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE SHAW GROUP INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 12-CV-257-JJB-RLB** |
| **ZURICH AMERICAN INSURANCE COMPANY, ET AL.** | **JUDGE JAMES J. BRADY** |
| | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ZURICH NORTH AMERICAN INSURANCE COMPANY'S MOTION TO COMPEL PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**INTRODUCTION AND RELIEF REQUESTED**

This is an insurance bad faith dispute arising out of a $100 million lawsuit filed by REC Solar Grade Silicon, LLC (the "Underlying REC Action") against The Shaw Group Inc. and Shaw Process Fabricators, Inc. (collectively, "Shaw").  The remaining Defendant in this action is Zurich American Insurance Company ("Zurich"), which Shaw claims breached the duty to defend, investigate, and settle a claim for insurance benefits submitted by Shaw to Zurich for the Underlying REC Action (the "REC Insurance Claim").

On July 7, 2014, Zurich filed a motion to compel Shaw to produce electronically stored information ("ESI").  *See Docket No. 306*.  Zurich's motion to compel ESI provides few facts and no affidavits in support, but instead vaguely argues that "Shaw has failed to respond to Zurich's ESI requests." *Docket No. 306, at 1*.  Nothing could be further from the truth.

As demonstrated by the record submitted with this Memorandum, Shaw has repeatedly responded to Zurich's ESI requests for months in a good-faith attempt to "endeavor to agree on

search terms" to be utilized in the ESI search, as required by the Court's September 24, 2013 Protective Order and Order Governing Electronic Discovery. *See Docket No. 164, at 6*. However, Zurich has failed to engage in good-faith discussions regarding reasonable search terms and insists on using its overly-broad ESI search terms and protocol. In late 2013, Shaw and a former defendant North American Specialty Insurance Company ("NAS") were able to efficiently resolve their similar dispute and come to an agreement on ESI search terms. Subsequently, Shaw produced ESI to Zurich and NAS in response to NAS's ESI requests. During this time, Zurich's primary counsel, Thomas Darling, was unresponsive due to personal issues, as explained in the Court's Order, dated May 12, 2014. *See Docket No. 288, at 5*.

After Mr. Darling withdrew from the case, counsel for Shaw attempted to agree on search terms with Zurich's new counsel because Shaw had objected to Zurich's proposed ESI search terms as overly broad, unduly burdensome, and seeking information not reasonably likely to lead to the discovery of admissible evidence. The record shows that Zurich repeatedly refused to do the same or consider any alternative search terms to narrow the extremely broad net Zurich's ESI requests cast and the corresponding cost burdens they imposed on Shaw, despite the Court's September 25, 2013 directive that required both parties to "endeavor to agree on search terms" for responsive ESI. *See Docket No. 164, at 6*.

Consequently, Shaw requests that the Court deny Zurich's motion to compel ESI and grant Shaw's motion for a protective order that limits the ESI to be produced by Shaw in accordance with a proposal that Shaw outlined to Zurich in a letter dated March 7, 2014. *Declaration of Jason A. Lien ("Lien Dec."), Exhibit 10, at 3*. As demonstrated below, Shaw's March 7, 2014 ESI search proposal outlines reasonable, alternative search terms and protocol in

2

light of the remaining claims and defenses in this case and Shaw's prior production of ESI to the parties in response to NAS's ESI search requests to Shaw. In addition, Shaw's March 7, 2014 ESI proposal is consistent with Zurich's Request for Production of Documents and Things (*see Docket 306-2, at 14- 22*), which only seeks documents relevant to either the Underlying REC Action or the REC Insurance Claim.

## STATEMENT OF FACTS

A.  **The Court's September 24, 2013 Agreed-To Protective Order and Order Governing Electronic Discovery.**

Pursuant to a stipulation signed by the parties, the Court entered a Protective Order and Order Governing Electronic Discovery on September 24, 2013. *Docket No. 164.* Relevant to this motion, the Court's September 24, 2013 Order provides:

> 2. Only electronically stored documents created or received since September 1, 2005 must be preserved pursuant to this agreement. This agreement does not supersede any obligations the parties may otherwise owe under the court rules or case law to preserve evidence. If not already notified, each party will identify the custodian(s) of the above-referenced documents and notify them of their duty to preserve electronically stored documents pursuant to this Order. **The parties will endeavor to agree on search terms to be utilized in the search for the above-referenced documents.** The parties represent to one another that they have used their best efforts to preserve electronically stored documents from the date that this lawsuit was filed on July 30, 2011.

*Id., at 6* (emphasis added).

B.  **Shaw and NAS Agree on ESI Search Terms While Zurich Is Non-Responsive.**

After the Court entered its September 24, 2013 Order, Shaw and NAS began to negotiate the search terms that would be utilized for ESI in the possession of Shaw and NAS. *See Lien Dec., Exs. 1-3.* In November 2013, Shaw and NAS came to an agreement on ESI search

3

terms for the respective searches of ESI files in the possession of NAS and Shaw. *Lien Dec., ¶ 3.* During this time, Zurich's primary counsel, Thomas Darling, was unresponsive due to personal issues. *See Docket No. 288, at 5.*

Shaw subsequently produced ESI files to both NAS and Zurich in response to the agreed-upon ESI search terms. *Lien Dec., ¶ 4.* NAS also produced its ESI to both Shaw and Zurich pursuant to the agreed-upon search terms. *Id.* Zurich only produced its ESI to Shaw and NAS after being compelled to do so by the Court through an Order dated May 12, 2014. *Id.; see also Docket No. 288.*

**C.     Zurich Declines to Negotiate Over ESI Search Terms.**

After Mr. Darling withdrew from the case, counsel for Shaw attempted to discuss and agree with Zurich's new counsel on search terms for Shaw and Zurich's ESI on several occasions. *Lien Dec., ¶ 5.* However, Zurich refused to negotiate in good faith. *Id.*

On December 19, 2013, counsel for Shaw told counsel for Zurich that Shaw would consider alternative search terms if a test search with Shaw's proposed ESI search parameters produced an unreasonably large set of files. *See Lien Dec., Ex. 4, at 2.* In response to Shaw's offer, counsel for Zurich stated that he did not "think the terms of the search make the search any more problematic." *Id., at 1.* At no time did Zurich subsequently object to Shaw's proposed ESI search terms or propose alternative search terms for Shaw's consideration. *Lien Dec., ¶ 6.* Had Zurich done so, Shaw would have endeavored to agree on reasonable search terms to resolve any disagreement, as it had done with NAS. *Lien Dec., ¶ 6.*

On January 24, 2014, counsel for Zurich sent counsel for Shaw a list of proposed ESI search terms. *See Lien Dec., Ex .5.* Zurich's January 24, 2014 letter proposed a date range

between September 1, 2008 through December 31, 2012 and 90 different search terms, including such words as "Settlement," "Settle," "Mediation," "Mediator," "Claims," "deductible," "defense," "Reservation of Rights," and "attorney fees." *See id.* The proposed custodians included three individuals from Shaw's risk management department and two in-house attorneys from Shaw's legal department. *See id.*

In response, counsel for Shaw objected to Zurich's proposed ESI search terms and suggested to counsel for Zurich that they attempt to resolve the objections and agree on alternative search terms that were not so broad. *Lien Dec., ¶ 8.* The parties, through their counsel, then spoke on February 13, 2014, during which time counsel for Shaw proposed to counsel for Zurich that he review the search terms that NAS had submitted to Shaw as an example, and then draft new search terms that were tailored to Zurich's relevant claims and defenses. *Lien Dec., Exs . 6, 7 and 8.* If an agreement was reached on Zurich's ESI search terms, counsel for Shaw proposed that Shaw run the Zurich results against the NAS results already produced to remove duplicate files. *See id.* After duplicates were removed, the remaining files would be reviewed for privilege and then produced to Zurich. *See id.*

On February 19, 2014, counsel for Zurich informed counsel for Shaw that he had discussed Shaw's objections with his client and that Zurich would not negotiate because they believed the original search terms were reasonable. *Lien Dec., ¶ 9; Ex. 9, at 2.* On February 20, 2014, counsel for Shaw responded by stating that Zurich's refusal to consider alternative search terms was inconsistent with the Court's September 24, 2013 Order that required the parties to endeavor to agree on search terms. *Lien Dec., ¶ 9; Ex. 9, at 1.* Shaw's February 20, 2014 email

5

again provided examples of why Zurich's proposed ESI search terms were overbroad:

> For example, requiring the Plaintiffs to pull and review every email from the accounts of Steve Allison (a risk manager), Daniel Terrell (a lawyer) and Robert Brown (a lawyer) that mention the words "claims" or "defense" or "deductible" or "attorneys fees" would generate tens of thousands of emails that are completely unrelated to the underlying lawsuit filed by REC Solar Grade Silicon LLC against The Shaw Group, Inc. and Shaw Process Fabricators, Inc. In addition, Zurich's proposed time range that seeks emails far after this case was commenced and the REC lawsuit was settled in 2011 is similarly overbroad.

*Lien Dec., Ex. 9, at 1.* Counsel for Shaw concluded his February 20, 2014 email by stating that if Zurich would not propose alternative search terms, Shaw would propose alternative search terms in response to Zurich's search terms so that the parties could endeavor to reach an agreement on this issue, as contemplated by the Court's September 24, 2013 Order. *See id.*

Having received no response from counsel for Zurich after more than two weeks, counsel for Shaw proposed alternative ESI protocol and search terms to Zurich in a letter dated March 7, 2014. *Lien Dec., Ex. 10, at 3.* Shaw's proposal used the same five custodians selected by Zurich, but limited the search to 28 terms that were relevant to either the Underlying REC Action or the REC Insurance Claim. *See id.* In addition, Shaw's proposal limited the search timeframe from September 1, 2008 through the date of the settlement of the Underlying REC Action, October 24, 2011. *See id.* Shaw's March 7, 2014 proposal concluded by stating that if the alternative terms were acceptable to Zurich, Shaw would compare the results of the search against the results from the NAS ESI search to remove duplicates, and then review and produce the remaining ESI with a privilege log. *See Lien Dec., Ex. 10, at 3.*

After counsel for Shaw received no response to the March 7, 2014 proposal, he asked counsel for Zurich on two occasions whether Zurich had any response to Shaw's proposal. *See*

*Lien Dec., Exs. 11 and 12.* On March 18, 2014, counsel for Zurich informed counsel for Shaw that Zurich believed its original January 24, 2014 search terms were reasonable and Zurich would not consider Shaw's proposal. *See Lien Dec., Ex. 13.* Counsel for Shaw responded by urging Zurich to consider alternative search terms and emphasized that Shaw remained "willing to work in good faith to come to an agreement on ESI search terms." *See Lien Dec., Exs. 13 and 14.* Zurich rejected Shaw's invitations, stated through its counsel that it would not "negotiate the terms," and, instead, filed this motion to compel ESI. *See id.*

## ARGUMENT

**A.     Governing Standards for Motion to Compel and for Protective Order Regarding ESI.**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permitted discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See Fed. R. Civ. P. 26(b)(1)* For good cause, the court may order discovery of any matter relevant to the subject matter involved in the case. *Id.*

Under Rule 26(c) of the Federal Rules of Civil Procedure, district courts have discretion to issue protective orders limiting the scope of discovery. When a party seeking the protective order shows good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding or limiting the discovery, specifying terms for the discovery, and prescribing a discovery method other than the one selected by the party seeking discovery. *Fed. R. Civ. P. 26(c)(1).*

Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure identifies specific limitations on electronically stored information ("ESI"). The rule explains that a party need not provide discovery of ESI from sources that are identified as not reasonably accessible because of undue

7

burden or cost. *See Fed. R. Civ. P. 26(b)(2)(B).* On a motion to compel discovery or for a protective order, the party from whom the discovery is sought must show that the ESI is not reasonably accessible because of undue burden or cost. *Id*. If that showing is made, the court may nonetheless order discovery if the requesting party shows good cause, considering the proportionality limitations of Rule 26(b)(2)(C). *Id.* Furthermore, "[t]he court may specify the conditions for the discovery [of ESI]." *Id.*

**B.      Zurich's Proposed ESI Search Terms Are Overbroad and Would Impose Undue Burdens and Costs Upon Shaw.**

Zurich's January 24, 2014 proposed ESI search te*r*ms, including 90 separate search terms and a request for numerous emails generated after the Underlying REC Action was settled, would impose undue burdens and costs upon Shaw. The overbroad nature of Zurich's proposal is readily apparent in the several general words it contains, which include "Settlement," "Settle," "Mediation," "Mediator," "Claims," "deductible," "defense," "Reservation of Rights," and "attorney fees." *See Lien Dec., Ex. 5.* Using these very general, commonly-used terms to search the email files of the five custodians in Shaw's risk management and legal departments will generate tens of thousands of e-mails and attachments completely unrelated to the REC lawsuit or the REC insurance claim. This is because Shaw's risk managers and in-house attorneys worked on several other insurance claims, other insurance-related matters, and lawsuits during the requested time period between September 1, 2008 and December 31, 2012.

In support of this showing, Shaw submits the Declaration of Logan Hollobaugh, who performed Zurich's proposed ESI search on the requested custodians, and the Declaration of Jason A. Lien, who estimated the amount of time and cost Shaw would incur to review and

8

produce Zurich's requested ESI search.  *See Declaration of Logan Hollobaugh ("Hollobaugh Dec.") and Declaration of Jason A. Lien ("Lien Dec.").*  Zurich's January 24, 2014 ESI search terms generated 103,202 e-mails and an estimated 20,000 attachments.  *See Hollobaugh* Dec., ¶ 3; *Lien Dec.,* ¶ 13.  Assuming five paralegals / junior associates were used to conduct the review of the results of this search, it would take an estimated 10-12 weeks to review the ESI, and an additional two weeks to perform redactions and draft a privilege log.  *Lien Dec.,* ¶ 14.  Using a blended hourly rate of $250 for the five staff members who would perform this task, Shaw estimates that conducting this review and production requested by Zurich would cost Shaw approximately $550,000.00 - $650,000.00 in legal fees and related production costs.  *Id*.

C.     **The Court Should Issue a Protective Order that Limits Zurich's ESI Request to the Proposed Search Terms and Protocol Set Forth in Shaw's March 7, 2014 Proposal.**

Because Shaw has demonstrated good cause that Zurich's January 24, 2014 ESI request is overbroad, unduly burdensome, and would impose significant costs upon Shaw, the Court should deny Zurich's ESI request and issue a protective order pursuant to its authority under Rules 26(b)(2)(B) and 26(c)(1) of the Federal Rules of Civil Procedure.  As set forth in Rule 26(c)(1), the Court in its protective order may prohibit the requested discovery, specify terms for the discovery, and prescribe a discovery method other than the one selected by the party seeking discovery.

While Shaw would be warranted in seeking an order prohibiting Zurich from seeking the production of ESI given Zurich's continuing recalcitrance in failing to engage in good-faith discussions over reasonable ESI search terms, Shaw is *only* requesting that the ESI search terms and protocol be reasonably limited.  Accordingly, Shaw requests that the Court order that Shaw's proposed ESI search terms and the protocol set forth in Shaw's March 7, 2014 letter be

9

utilized to perform the search of the five Shaw custodian accounts identified by Zurich.  *See Lien Dec., Ex. 10, at 3*; *see also, e.g.*, Hannah v. Wal-Mart Stores, Inc., 2014 U.S. Dist. LEXIS 2971, at **16-17 (D. Conn. Jan. 10, 2014) (ordering the parties to use defendant's proposed ESI search terms because plaintiff's proposed ESI search terms "would cast far too wide a net over the universe of ESI, which would result in a burdensome amount of irrelevant documents.")

Shaw's proposed ESI search terms in counsel's March 7, 2014 letter appropriately tailors the search to the Underlying REC Action, the REC Insurance Claim numbers used by Shaw and its insurers for the REC insurance claim, the insurance policy numbers at issue in this case, and the email prefixes of the relevant entities involved in the Underlying REC Action and REC Insurance Claim.  *See Lien Dec., Ex. 10, at 3.*  Shaw's March 7, 2014 ESI proposal is also consistent with Zurich's Request for Production of Documents and Things (*see Docket 306-2, at 14- 22*), which only seeks documents relevant to either the Underlying REC Action or the REC Insurance Claim.  *See id.*  In addition, Shaw proposed to compare the ESI search results against the NAS ESI search results in order to eliminate duplicate emails and attachments that have already been reviewed and produced.  *See id.*  The emails and attachments remaining after duplicates are removed would then be reviewed for privilege and produced to Zurich with a privilege log.  *See id.*

Alternatively, Shaw would ask that the Court order Zurich to comply with the September 24, 2013 Protective Order and Order Governing Electronic Discovery by working with Shaw to "endeavor to agree on search terms to be utilized in the search," which to date Zurich has declined to do.  *See, e.g.*, Simon Prop. Group, Inc. v. Taubman Ctrs., Inc., 2008 U.S. Dist. LEXIS 5065, at **15-16 (E.D. Mich. Jan. 24, 2008) (ordering parties to work together to narrow the

scope of a subpoena duces tecum whose ESI search terms would produce over 250,000 files that would require weeks of review).

**CONCLUSION**

Shaw respectfully requests that the Court deny Zurich's motion to compel ESI and issue a protective order that utilizes the search terms and protocol for Zurich's ESI search set forth in Shaw's letter dated March 7, 2014. *See Lien Dec., Ex. 10, at 3.* Alternatively, Shaw requests that the Court deny Zurich's motion to compel ESI and issue a protective order that requires Zurich to endeavor to agree with Shaw on the search terms to be used to obtain ESI responsive to Zurich's document requests, as required by the Court's September 24, 2014 Protective Order and Order Governing Electronic Discovery.

Respectfully Submitted,

HARPER | HAYES PLLC

By  s/Todd C. Hayes
Todd C. Hayes (WSBA No. 26361)
todd@harperhayes.com
600 University Street, Suite 2420
Seattle, WA 98101-1129
Telephone: (206) 340-8010

MASLON EDELMAN BORMAN & BRAND, LLP

By s/Jason A. Lien
James Duffy O'Connor (MN #80780)
Jason A. Lien (MN #028936)
David E. Suchar (MN # 392583)
90 South Seventh Street, Suite 3300
Minneapolis, Minnesota  55402-4140
612-672-8200

and

JONES WALKER

By s/William Schuette
William Schuette
wschuette@joneswalker.com
8555 United Plaza Blvd.
Baton Rouge  LA 70809
Telephone: (225) 248-2056

Attorneys for Plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc.

**CERTIFICATE OF SERVICE**

    I certify that a true copy of this document was served via the Court's electronic filing system on July 28, 2014.

                                        By /s/ Jason Lien
                                            Jason A. Lien (MN No. #028936X)

1053423