UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE SHAW GROUP, INC., ET AL | * | CIVIL ACTION NO. 3:12-cv-257 |
| | * | |
| VERSUS | * | JUDGE JAMES J. BRADY |
| | * | |
| ZURICH AMERICAN INSURANCE COMPANY, ET AL | * * | MAGISTRATE RICHARD L. BOURGEOIS, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ZURICH'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Despite Shaw's unprofessional, vitriolic *ad hominem* attacks on Zurich's "pattern of dishonesty," its Response makes three significant concessions. First, Shaw does not even try to argue why Washington law should apply to its non-defense extracontractual claims against Zurich. Second, Shaw appears to concede that its non-defense extra-contractual claims cannot withstand summary judgment under Louisiana law. Third, Shaw does not oppose Zurich's argument that Shaw suffered no damages, which is a necessary element to a bad faith claim under either Louisiana or Washington law.

Rather, Shaw relies only upon (1) a baseless attack on the accuracy of Zurich's briefing, and (2) an argument misconstruing this Court's February 7, 2013 Order on the choice-of-law. The former is factually inaccurate. The latter is both legally and factually inaccurate. Of course, neither party can fool this Court about the meaning or import of this Court's own Orders. However, application of Louisiana law to Shaw's non-defense extracontractual claims against Zurich is consistent with both the distinctions made in this Court's Orders and applicable law. Zurich carefully followed

1

the Court's ruling by filing a separate Motion for Summary Judgment on the duty to defend under Washington law. Ultimately, regardless of the applicable law, the court should grant summary judgment to Zurich.

## PROCEDURAL BACKGROUND

### I.     The Present Motion in the Context of Shaw's Claims

Shaw's Complaints articulated very specific claims against its insurers. Shaw's opposition to the present motion attempts to confuse the Court with regard to what duties its claims involved and which defendant insurer they implicated. However, Shaw's pleadings speak for themselves. While most of the allegations in Shaw's Third Amended Complaint are legally and/or factually inaccurate, all of them are precise as to which "duty" they intend to invoke as to each defendant insurer.

Paragraphs 16-18 and 23-35 of Shaw's Third Amended Complaint (which was operative at the time of the present motion) are directed at Zurich. Paragraphs 16-17, 23, and 27-33 specifically invoke the duty to <u>defend</u>. Zurich accurately quoted those allegations and addressed them in its separate Motion for Partial Summary Judgment on the Duty to Defend. The remaining allegations pertaining to Zurich (for clarity, referred to herein as "non-defense related extra-contractual" claims) were accurately quoted and addressed in Zurich's Memorandum in Support of the present motion.[1]

---

[1] Therefore, despite Shaw's confusion as to what relief Zurich seeks, this issue should be clear. Zurich seeks partial summary judgment as to the duty to defend (which is governed by Washington law) and complete summary judgment on the remaining extra-contractual claims (regardless of whether they could be characterized as "indemnity" or "non-defense," and regardless of whether the Court chooses to apply Louisiana or Washington law).

Paragraph 18 invoked the related duty to investigate (as if investigation would have led to a cheaper settlement of the underlying claim) <u>Zurich's two dispositive motions followed Shaw's categorizations</u>.

Paragraphs 34 and 35 specifically mention the duty to settle and focus on settlement of the underlying case.

Shaw again made the same distinctions in its just filed Fourth Amended Complaint, which stated, in part, in the Prayer for Relief:

> WHEREFORE, Plaintiffs pray for judgment against Defendant Zurich as follows:
>
> A.  For a declaration
>
>     a.  that Zurich owed a <u>duty to defend</u> Plaintiffs from the REC lawsuit, which duty Zurich unreasonable breached, causing harm to Plaintiffs; (Emphasis added.)
>
>     b.  that Zurich owed a <u>duty to attempt to settle</u> the REC lawsuit, which duty Zurich unreasonably breached, causing harm to Plaintiffs; (Emphasis added.)
>
>     c.  that Zurich is estopped to deny coverage for the settlement in the REC Lawsuit

Shaw made contractual <u>and</u> extra-contractual claims against NAS.[2] The extra-contractual claims against NAS are materially similar to its non-defense extra-contractual claims against Zurich. These are quoted for reference below:

---

[2] Shaw now (after settling with NAS) characterizes its claims against NAS as coverage/indemnity only, to confuse the impact of this Court's prior choice-of-law rulings, but this is inaccurate.

3

38. North American had a <u>duty to conduct good faith settlement negotiations</u> to ascertain the most favorable terms available for its insured. North American deliberately elected not to perform this duty, prolonging the REC action and costs associated with it, and forcing Shaw to incur more than $24,000,000 in damages, representing the amount it was compelled to pay to REC to settle that action. (Emphasis added.)

39. After Shaw settled the REC action and demonstrated its payment of the settled amount, North American <u>failed to pay any portion of the settlement amount.</u> (Emphasis added.)

40. North American <u>failed to adjust</u> the REC claim against its insured fairly and promptly, and as a consequence was substantially uninformed about the REC claim, its reasonable value and its insured's potential liability to REC for damages alleged to be in excess of $100,000,000. (Emphasis added.)

41. North American acted to protect its own interests over the interests of its insured by <u>failing to promptly and fairly adjust the claim; by refusing to conduct good faith settlement negotiations</u> prior to Shaw's self-financed settlement of the REC claims; and by misrepresenting the terms of the policy. These actions and omissions were arbitrary, capricious, or without probable cause in violation of North American's duty of good faith and fair dealing as mandated by Louisiana Revised Statutes §§ 22:1973 and 22:1892. (Emphasis added.)

Accordingly, Shaw previously acknowledged what it would deny now, that:

Pursuant to the Court's February 7, 2013 Order, Louisiana law applies to <u>extracontractual duties Defendant North American</u> owed to Plaintiffs as their insurer. Under Louisiana law, the statutory bases for Defendant North American's obligations to handle and pay claims in good faith, including the <u>duties to investigate</u>, reasonably interpret policy provisions, make reasonable <u>efforts to settle claims</u>, and fund settlements, are set forth in Louisiana Revised Statutes §§ 22:1973 and 22:1892.

*Third Amended Complaint at ¶ 13 (emphasis added).* Therefore, Shaw's non-defense extracontractual claims against Zurich are not only categorically distinct from its duty-to-

defend claims against Zurich, but also materially similar to Shaw's non-defense extra-contractual claims against NAS. A logical application of the Court's choice-of-law analysis should reflect this.

## II.   This Court's Previous Rulings

This Court's October 17, 2012 Order ruled that Washington's dépeçage choice-of law rule applies to this case on an issue-by-issue basis. So, the November 17, 2013 Order separately considered state law applicable to the three operative claims at issue (coverage/indemnity, duty to defend, and non-defense extracontractual claims), ruling:

(1)   With regard to the issue of contractual policy interpretation claims against NAS, "there does not appear to be a conflict of laws, and thus, Washington law shall apply." *Id. at 5*.

(2)   "The Court finds that Louisiana law governs the extra-contractual claim as to NAS." *Id. at 10.*[3]

(3)   "[t]his Court found that the claim of breach of duty to defend should be governed under Washington's law. . . .
"for Shaw's claim that Zurich breached its duty to defend, the Court finds that Washington law is the correct law. . . .
"the Court, in its discretion, has determined that Washington law shall apply to the duty to defend claim." *Id. at 10-11*.

The February 7, 2013 Order did **not** rule on choice-of-law with regard to Shaw's non-defense extra-contractual claims against Zurich.[4] Nor did it need to, because then Shaw was seeking indemnity (contractual and extra-contractual[5]) from its excess insurers as well as Zurich. Accordingly, both in its recitation of its previous

---

[3] This is the ruling cited in Zurich's Motion to Compel (Docket 256 at 81) which concerned only subpoenas issued to defense counsel (seeking evidence relevant to its duty to defend) so Shaw's "clever" attempt to argue that Zurich conceded the matter in page 1 of its Opposition is mistaken.

[4] Nor did Zurich's brief say that it did. Rather, Zurich emphasized that application of Louisiana law to the claims against Zurich "follows" logically from the ruling on similar claims against NAS.

[5] Again, Shaw misconstrues the record to depict Zurich's brief as inaccurate. Zurich's brief did not even address the Court's October 17, 2012 ruling on Shaw's contractual claim against NAS.

ruling, and in its second ruling on reconsideration, the Court made its own distinction, three times limiting its application of Washington law to the "duty to defend" claims against Zurich. (Shaw's argument ignores the Court's distinction.) Choice of law for the other extra-contractual claims against Zurich was not addressed. Zurich did not create or misrepresent this distinction. The Court made this very distinction in its ruling. Zurich's argument logically follows the Court's distinction.

In its opposition, Shaw cites certain discovery rulings and motions as an alleged acknowledgement by Zurich that there is no distinction between the issues. These involve discovery issues, encompassing the duty to defend, which are necessarily broader issues than the issues which are before the Court on Motions for Summary Judgment and at trial. Choice of law was not an issue in those rulings and motions. Anyway, Zurich does not decide what law is applicable. This is the Court's province.

## LAW AND ARGUMENT

**I.   The Court should apply Louisiana law to Shaw's non-defense extra-contractual claims against Zurich.**

**A.   Washington's dépeçage rule calls for a new choice-of-law consideration for each issue, not each party.**

Shaw implies that this Court's application of the dépeçage choice-of-law approach compels the application of Washington law to all claims against Zurich. This is inaccurate. This approach considers the jurisdiction most relevant to an issue, not most relevant to a party. As one court noted:

> "Under the principle of [dépeçage], different issues in a single case arising out of a common nucleus of facts may be decided according to the substantive law of different states." (Emphasis added.) Thus, contrary to Hai's assertion that different state laws can apply to different

> defendants on the same claim, the principle of dépeçage allows for the application of different substantive state law only to <u>different legal claims, **not** different defendants on the same claim.</u>

*Hai v. STL Intern., Inc.*, 180 Wash.App. 1026, 2014 WL 1494107 (Wash. App. Div. 2, 2014) (former emphasis in original, latter emphasis added), citing *FutureSelect Portfolio Management, Inc. v. Tremont Group*, 175 Wn.App. 840, 856 n. 15, 309 P.3d 555 (2013). Accordingly, the fact that this Court will apply Washington law to Shaw's duty-to-defend claims against Zurich does not require it to apply the same law to Shaw's non-defense extracontractual claims against Zurich. Therefore, the same analysis that this Court applied to the non-defense extracontractual claims against NAS should apply to the materially similar claims against Zurich, as explained in Zurich's Memorandum in Support of the present motion and discussed further below.

### B.   This Court's ruling as to non-defense extracontractual claims against NAS is equally applicable to the same claims against Zurich.

This Court's February 7, 2013 Order explained <u>why</u> it would apply Washington law to Shaw's duty-to-defend claim against Zurich. Specifically, the Court cited two cases where Washington forums chose to apply the law of state where the <u>underlying litigation was pending</u> to <u>duty-to-defend</u> claims. *Order at 11, citing Newmont USA Ltd. v. American Home Assurance Co.*, 676 F. Supp. 2d 1146, 1163 (E. D. Wash. 2009); *Bethlehem Construction, Inc. v. Transportation Insurance Co.*, 2006 WL 2818363 *28 (E. D. Wash. 2006). This is a consistent approach that connects only the duty to defend to the venue of the litigation that should be defended (and related

claims such as the behavior of defense counsel controlled by the insurer). The logic of this approach does not extend to insurers' other duties.

Further, conversely, this Court's February 7, 2013 Order specified that it would not apply *Newmont* to Shaw's non-defense extracontractual claims against NAS. Rather, it applied *Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1016 (W.D. Wash., 2010) and *Milgard Mfg., Inc. v. Illinois Union Ins. Co.*, 2011 WL 3298912 (W.D. Wash. 2011).[6]

### C. Shaw's distinction between "indemnity" and the "duty to settle" does not address the context of this case.

Zurich's Memorandum in Support of the present motion characterized Shaw's extracontractual claims against NAS (and the materially similar claims against Zurich) as "duty-to-indemnify" claims in order to track the language in the February 7, 2013 Order ("the Court finds that it was error to apply Washington law to govern the extracontractual claim of failure to indemnify against NAS, and finds that Louisiana law is the appropriate law."). Shaw's Opposition brief attempts to use these labels to confuse the various duties of insurers in order to extend the Court's choice-of-law

---

[6] The distinction could not have been simply because those cases involved excess insurers with no duty to defend (like NAS was in this case) because both *Tilden-Coil* and *Milgard* involved allegations of both failure to defend and failure to settle. See, *Tilden-Coil* at 1014 ("Tilden–Coil asks the court to do, that Landmark wrongfully breached its duty to defend Westec"); *Milgard* at *4 ("Milgard's IFCA claim is predicated on IUIC's alleged bad faith refusal to accept the tender of defense of the underlying litigation").

8

ruling (which the Court three times limited to the "duty to defend") to all of its extracontractual claims against Zurich. To be clear, there are three categories of claims:

(1) contractual claims under the duty to indemnify (coverage)

(2) extracontractual claims for the duty to defend

(3) non-defense extracontractual claims (duties to settle, investigate, etc.)

These fundamental categories are not a matter of state law; virtually all states agree.[7]

This Court's February 17, 2013 Order accurately tracked these three duties:

(1) "Washington law shall apply" to "policy interpretation." *Id. at 5.*
(2) "Louisiana law governs the extra-contractual claim as to NAS." *Id. at 10.*
(3) "the claim of breach of duty to defend should be governed under Washington's law. . . . *Id. at 10.*

Therefore, the only issue left for the Court is to apply its February 17, 2013 ruling to Shaw's non-defense extracontractual claims against Zurich. As explained above, the dépeçage rule applies to distinct <u>issues</u> and not to distinct <u>parties</u>. *Hai, supra*; *FutureSelect, supra*. Therefore, it logically follows that the Court's decision to

---

[7] *See, e.g., Arizona Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 459 (Ariz. 1987) ("As a general matter, insurance carriers owe their insureds three duties, two express and one implied. These are the duties to indemnify, the duty to defend, and the duty to treat settlement proposals with equal consideration."); *Micelotti v. Karno*, 542 So. 2d 734 (La. App. 4 Cir. 1989) (A liability insurer has a duty to defend its insured against claims by a third party apart from its duty to indemnify its insured); *Absher Const. Co. v. North Pacific Ins. Co.*, 861 F. Supp. 2d 1236 (W.D. Wash., 2012) ("In Washington, the duty to defend is different from and broader than the duty to indemnify" and distinguishing both of those duties from the duty to investigate); *see also, House of Clean v. St. Paul Fire*, 775 F. Supp. 2d 302 (D Mass. 2011) (categorizing duty to settle with duty to indemnify and apart from duty to defend).

apply Louisiana law to the non-defense extracontractual claims against NAS, is applicable to the same claims against Zurich. The Court's distinction in the ruling was appropriate because, as an excess insurer, NAS did not have the same duty to defend as Zurich. Indeed, with the exception of the allegations specifically invoking the duty to defend (against Zurich), and contractual coverage (against NAS), Shaw's allegations against NAS and Zurich were materially similar. Shaw alleged that both insurers:

- had a duty to conduct good faith settlement negotiations to ascertain the most favorable terms available for its insured.
- failed to negotiate a settlement, resulting in a $20,000,000 settlement and $4,000,000 "set-off") rather than a cheaper settlement that allegedly would have been possible.
- failed to investigate early in the claim, which would have revealed the "opportunity" to negotiate a cheaper settlement.

Indeed, Shaw's failure-to-settle claim (which comprises the bulk of all the non-defense extracontractual claims) is essentially a joint duty, because it would have required both Zurich and NAS to fund Shaw's (still unproven) $10,000,000 settlement opportunity, since Zurich's primary layer was only $4,000,000. It would make no sense to apply the law of different states to that solidary duty.

Instead, Shaw attempts to conflate the duty to defend with its non-defense extracontractual claims arising out of distinct duties (i.e., duties to settle and investigate). These are distinct duties in Louisiana, Washington, and any other state. *Teague v. St. Paul Fire & Marine Ins. Co.*, 10 So. 3d 806, 845 (La. App. 1 Cir. 2009) ("a liability insurer has an independent duty to keep its insured informed of the status of settlement negotiations, apart from the professional duty of its appointed defense

counsel to its insured."); *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wash.2d 122, 196 P.3d 664 (Wash., 2008) ("Liability insurance … provides policyholders with two main benefits: payment and defense. … Related to the two main benefits of an insurance contract, liability insurers owe a duty to settle claims against their insureds. … The duty of good faith is not specific to either of the main benefits of an insurance contract but permeates the insurance arrangement.").[8]

Accordingly, the distinction made by this Court three times (applying Washington law only to the "duty to defend" claims against Zurich) was appropriate and well-considered. There was no reason to go further because there was no dispositive motion regarding the non-defense extracontractual claims against Zurich before the Court until the present motion was filed. Applying Louisiana law to those claims, as to the similar claims against NAS, is the next logical step.

D. **Case law cited by Shaw to conflate Zurich's duties actually compels the opposite result, and is inapplicable to this case.**

In support of its contentions that the separate duties of the insurer are in essence one duty, Shaw cites *Tank v. State Farm Fire and Casualty Co.*, 105 Wash.2d 381 (1986). The facts in *Tank* are distinguishable from the facts in this case. In *Tank*,

---

[8] *See also, Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554 (Mo. App. S.D. 1990) ("an insurer's duty to defend is distinct and different from its duty to settle a claim…"); *Zurich American Ins. Co. v. Frankel Enterprises, Inc.*, 509 F. Supp. 2d 1303, 1316 (S.D. Fla., 2007) (dismissing "duty to settle" claim precisely because "the duty to defend is fundamentally distinct from the duty to indemnify"); *State Farm Mut. Auto. Ins. Co. v. Mendoza*, 2006 WL 44376 (D. Ariz., 2006) ("An insurer's duty to defend and duty to settle are separate and distinct.").

11

State Farm issued a reservation of rights and hired an attorney to defend the insured. That attorney provided the defense and conducted settlement negotiations.

In this case, Shaw chose and hired its own attorneys and completely controlled its own defense throughout the litigation. Mr. Tank was a personal policyholder whereas Shaw is a multi-billion dollar corporation, which had sophisticated litigation and insurance knowledge; intentionally sought an insurance arrangement that would give it control of defense and claim-handling and had access to attorneys and experts who knew (before Zurich) that it had substantial uninsured liability for its own defective product.

In fact, the *Tank* court <u>distinguished</u> the duty to defend from the duty to settle as this Court did in this case. The *Tank* court recognized that State Farm provided the insured a defense under the policy and paid for that defense. On the other hand, the decisions regarding the payment of any settlement were reserved specifically and ultimately to the insured. In this case, Shaw got what it was entitled to under the policy. There was no question about the independence of the defense it received since it hired and controlled all attorneys who defended the litigation. In addition, Shaw also controlled all settlement negotiations with REC. It got to do what the *Tank* court said it was entitled to do: "…it is the insured who must make the ultimate choice regarding settlement." *Tank*, 105 Wash.2d at 389. Shaw fully controlled its defense and when and how much to pay in settlement. If anything, Shaw was in a better

position than the insured in *Tank,* and the insurer was dismissed on Summary Judgment in that case.

Shaw claims that it was damaged because the settlement value of the claim went up over time. However, it offers no proof that the claim went up because of anything Zurich did or did not do. There is no evidence of any causal connection. There are many reasons for the settlement value of a claim to go up during the course of a lawsuit and discovery. Under Tank, it made all decisions about whether to pay to settle or not. The fact is Shaw did exactly what it wanted to do while fully controlling its defense and settlement negotiations. Shaw controlled the flow of information from its attorneys. Although Zurich accepted the defense under the reservation of rights in September of 2010, the first report it ever got from Shaw's attorneys regarding the litigation was in March of 2011. Under *Tank*, Shaw always had "full and on-going disclosure" of the status of the litigation, full assessment of its "chances to win or loss" the lawsuit, and the information to fully make informed decisions.

Shaw also cites *Specialty Surplus Insurance Company v. Second Chance, Inc.*, 421 F. Supp. 2d 1152 (W.D. WA. 2007), in support of its contentions. *Specialty Surplus* followed *Tank* in distinguishing settlement duties from other duties. It reaffirmed *Tank's* holding that because the insured is the one facing potential financial exposure, it has the right to make the ultimate decision regarding settlement just as Shaw did in this case.

13

Shaw seeks to splice the general holdings of *Tank* and *Specialty Surplus* to the specific facts of this case. Indeed, all of the "duty to settle" cases Shaw cites involve fact patterns where the insurer controlled the defense, but those cases did not conjoin the two duties. *E.g., Truck Ins. Exchange of Farmers Ins. Group v. Century Indem. Co.*, 76 Wash. App. 527, 887 P.2d 455 (Wash. App. Div. 3, 1995) (insurer controlled defense and settlement, but court evaluated those duties separately). Because Shaw fully controlled its defense and settlement negotiations throughout this litigation, this case is different in that Shaw was never prejudiced in any way. Shaw would have the Court allow it to seize control of its defense of the underlying lawsuit and the settlement negotiations, while freezing Zurich out except when it wanted Zurich's policy limits, and then blame Zurich for an alleged failure to defend and to settle. *Tank* said an insured should control settlement and have a full and open defense. That's exactly what happened here.

Both *Tank* and *Specialty Surplus* specifically distinguished the duty to defend from the duty to settle by holding the insured was entitled to control settlement decisions. Shaw's reliance on these cases is misplaced. The case law supports the distinction of the obligations of the insurer made by this Court.

In fact, the doctrine of mitigation of damages is also consistent with this distinction.

Shaw has claimed that it was damaged because the settlement value of the claims being made against it by REC in the underlying lawsuit increased in value over the course of the litigation. It maintains that the case could have settled in 2009 for substantially less than it eventually settled for, and, that as a result, it was damaged.

Remi Bonnecaze, the Shaw 30(b)(6) representative, claimed in his deposition testimony that the case could have settled for $10,000,000 in 2009. *See* January 30, 2014, Deposition Transcript of Remi Bonnecaze (appearing as Rule 30(b)(6) representative of Shaw), pp. 138-140, attached as Exhibit "P".

Daniel Terrell claimed in his deposition testimony that REC proposed a walk-away settlement in 2009. *See* Deposition Transcript of Daniel Terrell, pp. 30-31, attached as Exhibit "H". In other words, if Shaw would waive its $3.8 million contractual claim against REC, REC would drop its lawsuit against Shaw.

Shaw rejected the purported settlement offers and blames Zurich. In fact, Zurich was never included in those settlement discussions.

The doctrine of mitigation of damages, or avoidable consequences, is established in the law of Louisiana and Washington. Mitigation of damages requires that an alleged victim of a tort, breach of contract or other legal wrong make reasonable efforts to avoid damages. *Ward v. Painter's Local Union 300*, 45 Wash. 2d 533,542, 276 P.2d 576 (1954); *Bernsen v. Big Ben Electric Co-Op, Inc.*, 68 Wash. 2d 427,433, 842 P.2d 1047 (1993).

The doctrine of mitigation of damages has been held to apply to claims under the Washington Consumer Protection Act, RCW 19:86. *Young v. Whidbey Island Board of Realtors*, 96 Wash. 2d 729 (1982).

Shaw insists that the REC claim could have been settled for an amount less than it was eventually settled for, but for the actions of Zurich. If this is true, then Shaw had an obligation to mitigate its damages and settle the claim. Under *Tank*, Shaw was entitled to, and, in fact, did, control all settlement decisions. It chose not to and cannot now seek compensation from Zurich for any alleged damages it could have avoided. If Shaw could have settled the claim in 2009, as it claims, it also would not have incurred its alleged damages from the payment of attorney's fees it contends it should not have had to pay.

## II. Louisiana Law compels summary judgment dismissing Shaw's non-defense extra-contractual claims.

Zurich's Memorandum in Support of the present motion explained that (A) Louisiana statutory law does not provide for Shaw's non-defense extra-contractual claims, and (B) Louisiana common law applies a six-factor test that Shaw's non-defense extra-contractual claims cannot satisfy. *Cousins v. State Farm Mut. Auto. Ins. Co.*, 294 So. 2d 272 (La. App. 1st Cir.1974). While Shaw obviously wants to avoid application of Louisiana law to its non-defense extracontractual claims, it does not even attempt to argue how those claims might satisfy the six *Cousins* factors. Accordingly, summary judgment is appropriate.

### III.   Both Washington and Louisiana Law compel summary judgment dismissing Shaw's non-defense extra-contractual claims against Zurich.

Part III of Zurich's Memorandum of Law in support of this motion specifically invoked Washington law in addition to Louisiana law. While the statutory and common-law standards of these states are quite different, both states require harm for a plaintiff to prevail in an extra-contractual claim against its insurers. *Teter v. Apollo Marine Specialties*, Inc., 115 So. 3d 590, 598 (La. App. 4 Cir., 2013); *Safeco Ins. Co. of America v. Butler*, 118 Wash.2d 383, 823 P.2d 499, 506 (Wash. 1992) (Insurer can rebut the presumption [of harm] by showing that "its acts did not harm or prejudice the insured."). Further, Zurich demonstrated why the undisputed facts affirmatively disproved the notion that Shaw was harmed by any bad faith of Zurich. Shaw did not confront this evidence; nor did it even try to show "actual" harm, simply relying on a "presumption" of harm in the absence of actual evidence. Thus, summary judgment is appropriate, under either Louisiana or Washington law.

Indeed, the briefing on summary judgment has shown that Shaw simply cannot show evidence of "actual damages" resulting from Zurich's alleged bad faith in light of the actual record:

- There is no evidence that the settlement value of REC's claims "went up," nor is that "Zurich's position" as contended by Shaw. The settlement value of any claim can change as information develops during the course of litigation.

- There is no evidence of a "demonstrated receptive climate for settlement" which is necessary to establish bad-faith failure to settle under *Tyler v. Grange Ins. Ass'n*, 473 P.2d 193, 201 (Wash. App. 1970). Shaw has not shown any settlement within Zurich's $4,000,000 layer (or even under $10,000,000) to which REC was "receptive."

17

- There is <u>no</u> evidence Shaw lost the time value of money because of anything Zurich did. Shaw paid what it was supposed to pay under its deductible. It also claims it paid some amounts earlier than it otherwise would have but offers no evidence to show when it paid those amounts or when it otherwise should have paid them to show that this actually happened.

- Shaw voluntarily paid additional fees to its attorneys and Zurich has no responsibility for these.

Further, there is evidence disproving that Shaw suffered actual damages:

- There <u>is</u> evidence explaining why Zurich did not make independent affirmative attempts to settle the case, and could not have done so because of Shaw's control of negotiations (including mediations which Shaw either failed to notify Zurich of or dis-invited Zurich).

- There <u>is</u> evidence showing FARA was not "unable to appoint counsel" – Shaw had already retained counsel to litigate against REC and Shaw was paying for that counsel under its Deductible Agreement. There is nothing in any contract between the parties which supports such an argument. . .

- There <u>is</u> evidence that Shaw sustained no "time value" loss of money due to the Deductible Agreement it chose to negotiate. Indeed, Zurich carefully explained this in a detailed discussion which Shaw does not even try to attack except with an irrelevant discussion of "who owned the money" outside of the fact that the Agreement specified what must be done with the money. *Id*.

**IV.    Shaw's unsupported claims of dishonesty.**

Shaw and its counsel have engaged in unprofessional and unnecessary name-calling in this litigation. In its Opposition to Zurich's Motion for Partial Summary Judgment, they accuse Zurich of dishonesty. In fact, Shaw contends there is a pattern of dishonesty in this case and cites two alleged incidents of dishonesty in the thousands of pages of pleadings and discovery filed by Zurich to support this claim of a pattern. These are disproved in the footnotes herein. The truth is that Zurich has

made legitimate legal arguments based on the law, pleadings, and evidence. For this motion, Zurich has relied on the very distinctions made in Shaw's Complaints and made by this Court in its prior rulings, in which carefully distinguished between the specific duties at issue. In addition to the Court's distinction, Shaw has made these very same distinctions in its pleadings. Shaw may disagree with those distinctions, but this does not make Zurich's argument dishonest.

## **CONCLUSION**

Remarkably, Shaw engages in straw-man arguments and attempts to convince this Court it ruled in a way it did not, without even attempting to justify the merits of its claims. Rather, Shaw tries to twist the language in the record and in the Court's previous rulings in order to avoid the obvious implications of the undisputed facts in the record and all applicable law (in either Louisiana or Washington): that its bad faith claims have no merit.

                        RESPECTFULLY SUBMITTED,

                        GAUDRY, RANSON, HIGGINS &
                        GREMILLION, L.L.C.

                        */s/ Wade A. Langlois, III*
                        MICHAEL D. PEYTAVIN (#14315)
                        WADE A. LANGLOIS, III (#17681)
                        JOHN J. DANNA, JR. (#28894)
                        Oakwood Corporate Center
                        401 Whitney Ave., Suite 500
                        P.O. Box 1910
                        Gretna, Louisiana 70056
                        Telephone: (504) 362-2466
                        Facsimile: (504) 362-5938

>mpeytavin@grhg.net
>wlanglois@grhg.net
>jdanna@grhg.net
>*Attorneys for Zurich American*
>*Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

>*/s/ Wade A. Langlois, III*
>WADE A. LANGLOIS, III