UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP INC., et al.                           CIVIL ACTION

VERSUS                                                NO. 12-257-JJB-RLB

ZURICH AMERICAN INSURANCE
COMPANY, et al.

# ORDER

Before the court is Defendant Zurich American Insurance Company's ("Zurich") Motion to Compel Production of Documents and Deposition Testimony (R. Doc. 308), filed on July 11, 2014. The Motion is directed at Plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc. (collectively "Shaw"); the non-party law firms Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson"); Griffith, Davison & Shurtleff, P.C. (Griffith Davison); and Oles, Morrison, Rinker & Baker, LLP ("Oles Morrison"); which all oppose the Motion to Compel. (R. Docs. 337, 338, 339, 340, 341). Zurich has filed a Reply. (R. Doc. 372).

For the following reasons, Zurich's Motion to Compel is **DENIED**.

**I.    BACKGROUND**

This is an insurance dispute. In the underlying action, REC Solar Grade Silicon, LLC ("REC") sued Shaw for damages regarding defective pipe spools sold by Shaw to REC for use in a gas manufacturing plant. Shaw filed an action in the Eastern District of Washington in July of 2011 seeking a declaratory judgment providing that, among other things, Zurich American Insurance Company ("Zurich"), Shaw's primary insurer, breached its duty to defend Shaw in the underlying litigation and did so in bad faith. In August of 2011, Shaw's excess insurers, North American Specialty Insurance Company ("NAS") and Westchester Fire Insurance Company

("Westchester"), filed a similar action in the Middle District of Louisiana seeking a declaration that Shaw's claims were excluded by their policies. In November of 2011, this Court ordered the excess insurer's suit to be transferred to the Eastern District of Washington. In April of 2012, the Eastern District of Washington consolidated the actions and the dispute was transferred back to this Court.

Shaw retained Baker Donelson, Griffith Davison, and Oles Morrison during the course of the underlying litigation. Zurich issued a *subpoena duces tecum* to each of these law firms seeking the production of documents related to their defense of Shaw in the underlying litigation. Zurich also issued deposition subpoenas to five individual attorneys who represented Shaw in the underlying action: Jason Cagle (an attorney with Griffith Davison); Anthony Jach (an attorney with Griffith Davison); Daniel Terrell (former in-house counsel with Shaw); Danny Shaw (an attorney with Baker Donelson); and Robert Brown (former in-house counsel with Shaw).

On May 5, 2014, the court issued an order requiring the non-party law firms to produce certain documents and allowing for the deposition of the non-party attorneys to proceed on a limited basis. (R. Doc. 283). The court held that the following categories of information shall define the scope of the required productions or deposition testimony:

> (1) Zurich's alleged failure to pay for Shaw's defense in a timely manner and any resulting harm to Shaw, including complaints or threats to withdraw by counsel as a result of Zurich's alleged late payments;
>
> (2) Zurich's alleged failure in exercising reasonable care in controlling Shaw's defense, including Zurich's alleged requirement that Shaw's counsel treat it as a "partner"; and
>
> (3) Zurich's alleged failure to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available to Shaw and any resulting harm to Shaw, including Shaw's alleged loss of an opportunity to settle the underlying lawsuit for a sum less than $10 million between the period of the fall of 2009 through late spring of 2011.

(*Id*. at 20). The court quashed Zurich's subpoenas to the extent Zurich requested documents or deposition testimonies outside of the foregoing scope of information. (*Id*.) In reaching this conclusion, the court held that "Zurich does not have a substantial need for documents for the purpose of demonstrating the reasonableness of the settlement between Shaw and REC, which Zurich may challenge without resort to protected work product." (*Id*. at 19). Furthermore, the court stated that "information regarding the assessment of Shaw's defenses and counterclaims in the underlying action" are not relevant to whether Zurich violated its duty to defend. (*Id*. at 10).

## II. LAW AND ANALYSIS

### A. The Meet and Confer Requirement

Rule 37(a)(1) of the Federal Rules of Civil Procedure provides that any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Zurich did not include a Rule 37 certification with its Motion.

In its Reply, Zurich claims that its duty to meet and confer was satisfied at the depositions of Jason Cagle, Anthony Jach, and Danny Shaw. At those depositions, Zurich's counsel alerted the non-party attorney deponents' counsel (who is also Shaw's counsel) that Zurich would seek relief from the Court regarding the deponents' refusal to answer certain questions. At the deposition of Mr. Cagle, counsel for Zurich and counsel for the non-party attorneys discussed their positions with regard to the scope of information allowed by the court's May 5, 2014 order.

There is no indication in the record, however, that Zurich ever discussed a motion to compel the production of documents with the three non-party law firms, which all represent themselves in this matter. Zurich has not alerted the court of any discussions during the

3

depositions of the non-party attorneys that put those non-party law firms on notice of a potential motion to compel with regard to document productions, much less of any discussion that constituted a good faith attempt to resolve alleged deficiencies in the productions.

Two of the non-party law firms, as well as Shaw, have represented that Zurich did not meet and confer prior to filing the Motion. (R. Doc. 337 at 3; R. Doc. 338 at 2; R. Doc. 340 at 6). The non-party law firm Oles Morrison, which did not have an attorney deposed, has informed the court that it was not aware any discovery dispute existed concerning the May 4, 2014 order until it was served with Zurich's motion. (R. Doc. 338 at 6). Zurich does not assert in its Reply that its counsel met and conferred with Oles Morrison.

Particularly as it relates to the production of documents, rather than attempt to resolve any dispute regarding those productions without court involvement, Zurich chose to simply seek a court order, thereby forcing the third party firms to defend themselves here in the Middle District of Louisiana or risk an adverse order not only compelling the production of privileged materials but also requiring the payment of expenses including attorney's fees.

Due to Zurich's failure to attach a Rule 37 certification to its motion as is specifically required by the Rule, as well as its failure to meet and confer with all opposing counsel subject to the motion, the Motion to Compel is **DENIED**. *See*, *e.g.*, *Ross v. Citifinancial, Inc*., 203 F.R.D. 239, 240 (S.D. Miss. 2001) (attachment of a Rule 37(a)(1) certificate is a "mandatory prerequisite" to the court's consideration of a motion to compel and the meet and confer requirement "is not an empty formality" and "cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue"); *Dimitric v. Tex. A & M Univ.*, No. 06-cv-107, 2007 WL 1090982, at *1 (S.D. Tex. April 9, 2007) ("Prior to filing this Motion, Dimitric did not confer, except through an [e-mail], with defense counsel . . . . For this reason, alone, his Motion should be denied.").

The court recognizes that the arguments regarding the scope of the permissible discovery, whether sought through requests for production of documents or deposition testimony, concerns the same issues. The court also recognizes that Zurich's communications in the depositions could be seen to satisfy the substance of the meet and confer requirement for those questions. For these reasons, the court will still address the merits of the Motion to Compel.

B.  **Zurich's Motion to Compel Documents**

Zurich does not dispute that the non-party law firms produced documents in response to its subpoenas after the court issued its May 5, 2014 order. (R. Doc. 308-1 at 2). Each of the subpoenaed non-party law firms have either represented that they have produced all documents in compliance with the May 5, 2014 order or that Zurich never challenged their productions prior to this Motion. (R. Doc. 337 at 4; R. Doc. 338 at 2; R. Doc. 341 at 2).

Zurich vaguely argues that the non-party law firms have refused to produce documents on the issue of damages, and requests the court to order production of documents establishing "how the claims made by REC against Shaw in the underlying litigation were evaluated for liability, damages and settlement purposes." (R. Doc. 308-1 at 4). In its Reply, Zurich argues, for the first time, that the productions by the three non-party law firms are deficient because the non-party law firms did not produce privilege logs. (R. Doc. 372 at 2-3). Zurich's arguments raised in its Reply, which Zurich sought leave to file on August 15, 2014, are untimely, as discovery closed on July 11, 2014. (R. Doc. 297).

Even if Zurich's arguments raised in its Reply were timely, the court would still deny the motion because Zurich is requesting the court to compel the production of documents containing information outside the scope of the court's May 5, 2014 order. Zurich seeks the production of documents outlining "the factors, the assessments, and the evaluations which led to the ultimate [REC/Shaw] settlement" and information detailing "whether the amounts paid were more than

Shaw otherwise would have paid but for the alleged bad faith of Zurich." (R. Doc. 372 at 9). In other words, Zurich is seeking privileged information regarding Shaw's decisions in entering into the settlement with REC. The court made it clear in its previous order that discovery of such privileged information is limited to that pertaining to Zurich's acts or omissions, not Shaw's attorneys' decision-making process regarding its evaluation of, and decision to enter into, its settlement with REC. (R. Doc. 283 at 19-20).

The court denies Shaw's motion to compel the production of documents, as it seeks the court to require the production of documents beyond the scope of, and inconsistent with, its previous order. Furthermore, to the extent Zurich is requesting the court to revisit its May 5, 2014 order and expand the scope of documents required to be produced by the non-party law firms, the court denies any such relief.

### C. Zurich's Motion to Compel Deposition Responses

Zurich acknowledges that the subpoenaed non-party attorneys submitted to depositions as required by the May 5, 2014 order. (R. Doc. 308-1 at 2). Zurich argues, however, that even though a question posed to Jason Cagle sought information consistent with the court's May 5, 2014 order, Mr. Cagle's counsel at the deposition (the same counsel for Shaw) instructed Mr. Cagle not to answer the question. Zurich also mentions that other "examples" of a failure to answer similar questions can be found in the depositions of the non-party attorneys Anthony Jach and Danny Shaw. (R. Doc. 308-1 at 3). The court will assume that Zurich is also attempting to compel Mr. Jach and Mr. Shaw to answer certain questions not answered in their depositions as directed by their counsel at the deposition. Zurich claims that its questions posed to these attorneys concern "whether or not there was sufficient information to evaluate the liabilities and damages issues in the case at certain points in the course of the litigation" and seek information that directly relate "to the issue of whether or not Shaw was damaged, and the extent of that

6

alleged damage, based on Shaw's claim that it was harmed by Zurich's alleged bad faith acts or omissions." (R. Doc. 308-1 at 2-3) (question marks omitted).

After considering the deposition transcripts submitted by Zurich, and the submitted briefs, the court finds that the questions to which Zurich is seeking to compel answers are the following:

- To Mr. Cagle: "Prior to the arisal (sic) of the conflict of interest, was there sufficient information for Griffith to evaluate the liability and the damages and Shaw's counterclaims to that point?" (*See* R. Doc. 308-1 at 2; R. Doc 308-2 at 2).

- To Mr. Jach: "There was a question of insurance coverage in the REC litigation or for Shaw for the REC claims. Do you recall that?" (*See* R. Doc. 308-1 at 3; R. Doc 308-2 at 9).

- To Mr. Shaw: "Do you know what factors went into Shaw's decision to ultimately pay that amount that was paid [in the Shaw/REC settlement]?" (*See* R. Doc. 308-1 at 3; R. Doc 308-2 at 12).

The questions posed to Mr. Cagle and Mr. Shaw seek information from Shaw's attorneys regarding Shaw's decision to pay certain amounts in settlement,[1] and, therefore, go to the issue of the reasonableness of the settlement between Shaw and REC. The court has already ruled that this type of privileged information is not discoverable. (R. Doc. 283 at 19).

The question posed to Mr. Jach, however, does not appear to necessarily seek information outside of the scope of three categories of inquiry allowed by the court. Instead, it appears to be a prefatory question that could conceivably serve as an entry point into the three allowed categories of inquiry, namely (1) "Zurich's alleged failure to pay for Shaw's defense in a timely manner and any resulting harm to Shaw"; (2) "Zurich's alleged failure in exercising reasonable care in controlling Shaw's defense"; and (3) "Zurich's alleged failure to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available to Shaw and

---

[1] The information sought goes beyond the alleged failure of Zurich to conduct good faith settlement negotiations. That alleged failure is within the scope of the court's prior ruling and was covered, without objection, in the deposition testimony. (R. Doc. 358-4 at 32).

7

any resulting harm to Shaw." (R. Doc. 283 at 20). That said, this prefatory question is so vaguely and broadly stated that Mr. Jach's answer would be virtually meaningless regardless of how Mr. Jach answered. It could also just as easily seek discovery of impermissible privileged communications. Counsel for Shaw was correct in his objection that to the extent any answer would involve attorney-client communications as those communications would be beyond the scope of the court's prior order. (R. Doc. 358-4 at 4). It is also noted that immediately following the objected to question, Mr. Jach was asked and answered a number of specific questions regarding Zurich's failure to pay for Shaw's defense and any affects that failure had on the defense of Shaw. (R. Doc. 358-4 at 4-6). He also answered questions regarding certain aspects regarding settlement evaluations. (*Id*.). To the extent the "question of insurance coverage" involved the failure to pay for Shaw's defense, Mr. Jach answered those questions without objection. Any further compelled answer to this question would only serve the purpose of obtaining additional information beyond or inconsistent with the May 5, 2014 order. Therefore, the court will not compel an answer to this question.

**D.  Expenses**

If a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id*.

Oles Morrison represents in its Opposition that it incurred fees and costs "in the approximate amount of $1500.00" to defend the Motion. (R. Doc. 338 at 6). An attorney at Oles Morrison submitted a declaration stating that, to research and write the Opposition, she spent

8

approximately 3.5 hours at a billing rate of $295 per hour, and a summer law clerk spent one hour at a billing rate of $150 per hour. (R. Doc. 339 at 3).

Shaw, Griffith Davison, and Baker Donaldson did not provide the amount they incurred in opposing Zurich's motion. Accordingly, the court grants these entities an opportunity to file an affidavit or declaration of reasonable expenses incurred in opposing Zurich's Motion.

The court will allow Zurich to file a response to the assertion of reasonable expenses submitted by the entities subject to the Motion to satisfy the requirement that Zurich has an opportunity to be heard.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Zurich's Motion to Compel Production of Documents and Deposition Testimony is **DENIED**.

**IT IS FURTHER ORDERED** that Shaw, Griffith Davidson, and Baker Donaldson shall each file an affidavit or declaration of reasonable expenses incurred in opposing this Motion, including attorney's fees, no later than **September 11, 2014**. Zurich may submit a response, if desired, regarding the proposed expenses and fees requested by all of the entities subject to this Motion **no later than September 22, 2014**. Upon submission of the aforementioned, the court will determine whether and to what extent payment of expenses should be ordered.

Signed in Baton Rouge, Louisiana, on September 3, 2014.

                                  **RICHARD L. BOURGEOIS, JR.**
                                  **UNITED STATES MAGISTRATE JUDGE**