UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE SHAW GROUP INC., et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-257-JJB-RLB** |
| **ZURICH AMERICAN INSURANCE COMPANY, et al.** | |

# ORDER

Before the court is Defendant Zurich American Insurance Company's ("Zurich") Motion to Compel Production of Electronically Stored Information, filed on July 7, 2014. (R. Doc. 306). The motion is opposed by Plaintiffs The Shaw Group Inc. and Shaw Process Fabricators, Inc. (collectively "Shaw"). (R. Doc. 325).

Also before the court is Shaw's corresponding Motion for a Protective Order Regarding the Production of Electronically Stored Information, filed on July 28, 2014. (R. Doc. 326). The motion is opposed by Zurich. (R. Doc. 344). Shaw has filed a Reply. (R. Doc. 355).

For the following reasons, Zurich's Motion to Compel is **GRANTED in part and DENIED in part,** and Shaw's Motion for Protective Order is **GRANTED**.

## I. BACKGROUND

This is an insurance dispute. In the underlying action, REC Solar Grade Silicon, LLC ("REC") sued Shaw for damages regarding defective pipe spools sold by Shaw to REC for use in a gas manufacturing plant. Shaw filed an action in the Eastern District of Washington in July of 2011 seeking a declaratory judgment providing that, among other things, Zurich American Insurance Company ("Zurich"), Shaw's primary insurer, breached its duty to defend Shaw in the underlying litigation and did so in bad faith. In August of 2011, Shaw's excess insurers, North

American Specialty Insurance Company ("NAS") and Westchester Fire Insurance Company ("Westchester"), filed a similar action in the Middle District of Louisiana seeking a declaration that Shaw's claims were excluded by their policies. In November of 2011, this court ordered the excess insurer's suit to be transferred to the Eastern District of Washington. In April of 2012, the Eastern District of Washington consolidated the actions and the dispute was transferred back to this court.

On September 25, 2013, the court entered an Agreed Protective Order and Order Governing Electronic Discovery jointly submitted by Zurich, Shaw, and NAS ("Agreed Protective Order"). (R. Doc. 164). The Agreed Protective Order delineates the parties' agreements with regard to the preservation of electronically stored documents ("ESI") and the format for production for ESI. (R. Doc. 164 at 6-7). The Agreed Protective Order also provides that the "parties will endeavor to agree on search terms to be utilized in the search for" ESI responsive to a discovery request. (R. Doc. 164 at 7).

On December 10, 2013, Zurich served Shaw with a Request for Production of Documents. (R. Doc. 306-2 at 14-22). On January 16, 2014, the court ordered Shaw to respond to Zurich's previously served discovery requests no later than February 15, 2014. (R. Doc. 236 at 4). According to a March 7, 2014 letter drafted by its counsel, Shaw produced "all documents responsive" to Zurich's discovery requests "in prior productions that were responsive to NAS's discovery requests." (R. Doc. 325-12 at 3). Shaw also represented that it would produce "a few additional hard copy documents" that were responsive to Zurich's discovery requests in a supplemental production on March 10, 2014. (*Id.*) Finally, Shaw represented that the "remaining information to be produced in response to Zurich's requests is ESI" and that it "will produce the ESI as soon as the parties reach an agreement on search terms." (*Id.*) Neither party

2

has filed a discovery motion relative to the underlying substantive discovery requests in Zurich's Request for Production or the adequacy of Shaw's production relative to non-ESI documents.

According to the records submitted by the parties, Shaw and Zurich began negotiating the ESI search terms relative to Zurich's request for production in late January 2014.[1] On January 24, 2014, Zurich submitted ESI search terms to Shaw for the purpose of responding to Zurich's Requests for Production of Documents. (R. Doc. 306-2 at 9-13). Zurich requested that Shaw search ESI from a date range of September 1, 2008 through December 31, 2012. (R. Doc. 306-2 at 11). Zurich proposed five custodians, which included individuals from Shaw's risk management department and legal department. (R. Doc. 306-2 at 11; R. Doc. 325 at 5). Zurich proposed a list of 90 search terms, which included the names of entities involved in the underlying lawsuit and the subsequent insurance litigation, the names and e-mail addresses of various individuals, and the following terms: Settlement, Settle, Mediation, Mediator, TPD, Claims, Unbundled, ROR, Reservation of Rights, defense, REC claim, deductible, attorney fees, and TPA. (R. Doc. 306-2 at 11-13).

On February 13, 2014, counsel for Shaw and Zurich discussed these search terms and the possibility for the use of alternative search terms. (R. Doc. 325-9). In an e-mail confirming the conversation, Shaw's counsel stated that he would provide Zurich's counsel with "the ESI custodian and search terms Shaw and NAS agreed to use for NAS's requests" and that, in return, Zurich's counsel would provide "a revised proposed list of search terms and date range for Zurich to see if [the parties] can reach an agreement on the scope of Zurich's ESI search." (*Id.*). Shaw's counsel then provided the ESI search terms agreed to between NAS and Shaw. (R. Doc.

---

[1] In their briefs, the parties also discuss the chronology events regarding the ESI search terms negotiated between Shaw and NAS for use in Shaw's ESI production in response to NAS's document requests, as well as the ESI search terms used for Zurich's ESI production in response to Shaw's document requests. For the purpose of the instant Motions, the court is only concerned with the negotiations between the parties regarding ESI search terms to be used in response to Zurich's request for production directed at Shaw.

325-10).  In the same correspondence, Shaw's counsel requested that Zurich's counsel develop a "revised search for consideration" based upon a comparison of the provided ESI search terms used for the NAS production and Zurich's originally requested search terms.  (*Id*.).  Finally, Shaw's counsel suggested that once a revised list was agreed upon, Shaw could remove any results duplicative of the NAS search (which had already been produced to Zurich) to avoid additional costs for reviewing those documents.  (*Id*.)

On February 19, 2014, Zurich's counsel informed Shaw's counsel that Zurich would not negotiate new search terms because it believed the original search terms were reasonable, particularly in light of the ESI search terms provided by Shaw to Zurich to search its own documents.  (R. Doc. 325-11 at 2).  Furthermore, Zurich's counsel noted that the requested search terms provided by Shaw are directed at NAS policies and Shaw's claims against NAS, so they are not helpful with regard to Zurich's document requests.  (*Id*.)  The next day, Shaw's counsel responded by stating that Zurich's position is inconsistent with the requirement in the Agreed Protective Order that the parties endeavor to agree on search terms.  (R. Doc. 325-11 at 1).  Shaw's counsel further stated that Shaw only provided NAS's search terms as a starting point for Zurich and as a reference to identify duplicate search results.  (*Id*.)  Shaw's counsel also stated that if Zurich did not propose alternative search terms, Shaw would propose its own alternative search terms.  (*Id*.)

On March 7, 2014, Shaw proposed its own alternative search criteria.  (R. Doc. 325-12 at 3).  Shaw identified four custodians that Zurich requested to be searched.[2]  (*Id.*)  Shaw identified 28 search terms.  (*Id*.)  These search terms contain 17 variations of insurance policy numbers; the names of excess insurers ("westchester," "north american," or "nas"); the terms "rec claim," "rec solar grade silicon," and "moses lake"; and e-mail domain addresses for FARA, Willis, Zurich,

---

[2] It appears that two of the five custodians identified by Zurich (Steve Adams and Stephen Adams) are the same person. (R. Doc. 306-2 at 11).

Endurance Services, and Milbank. (*Id*.) Finally, Shaw proposed a date range of September 1, 2008 through October 24, 2011. (*Id*.). Shaw's counsel suggested that once an agreement was reached on search terms, Shaw would compare the results against the results obtained with NAS's search terms, remove duplicate files, and then review the remaining files for privilege prior to production to Zurich. (*Id*.) On March 12, 2014 and March 18, 2014, Shaw's counsel followed up on whether Zurich would accept these proposed alternative search terms. (R. Doc. 325-13 at 1; R. Doc. 325-14 at 1).

On March 18, 2014, Zurich's counsel again informed Shaw's counsel that Zurich would not negotiate new search terms because it believed the original search terms were reasonable and informed Shaw's counsel he would file a Motion to Compel. (R. Doc. 325-15).

On May 6, 2014, Zurich's counsel again asserted that Zurich was going to file a Motion to Compel, but asked Shaw's counsel if any ESI would be produced without court enforcement. (R. Doc. 325-6 at 2). Shaw's counsel responded that Shaw was still willing to negotiate search terms. (*Id*. at 1). It does not appear from the record that Shaw has produced any responsive ESI after conducting a search for ESI using either its own proposed search terms or those proposed by Zurich.

On July 7, 2014, four days prior to the discovery deadline,[3] Zurich filed its Motion to Compel. (R. Doc. 306). Shaw filed its corresponding Motion for Protective Order on July 28, 2014.[4] (R. Doc. 326). The dispute between the parties centers solely on the reasonableness of the search terms chosen by each party and the willingness of the parties to negotiate reasonable search terms. Zurich requests the court to compel Shaw to search for ESI using the search

---

[3] On May 30, 2014, the court ordered that the "deadline for filing all discovery motions and completing all discovery, including experts, is extended to July 11, 2014." (R. Doc. 297 at 2).
[4] Shaw's motion was filed after the deadline to file discovery motions. The same arguments, however, are raised in Shaw's timely filed opposition to Zurich's Motion to Compel.

5

criteria first proposed by Zurich on January 16, 2014. In contrast, Shaw requests a protective order stating that it may conduct the search using its own search criteria proposed March 7, 2014.

## II. LAW AND ANALYSIS

### A. Legal Standards

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is well established that the scope of discovery is within the sound discretion of the trial court. *E.g.*, *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724 (5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of discovery").

A party upon whom requests for production of documents have been served shall serve a copy of the answers, and objections if any, to such discovery requests within thirty (30) days after the service of the requests. Fed. R. Civ. P. 34. A shorter or longer time may be directed by court order or agreed to in writing by the parties. *Id.*

A party seeking discovery may move for an order compelling production of requested documents if a party fails to provide answers or responses. Fed. R. Civ. P. 37(a)(3)(B). If the motion to compel is denied, the court may issue any protective order authorized under Rule 26(c). Fed. R. Civ. P. 37(a)(5)(B).

Rule 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

B.  **The Parties' Lack of Diligence to Complete Discovery Within the Court's Deadlines**

The court granted, upon the parties' request, an Agreed Protective Order, through which the parties agreed to preserve certain sources of ESI in their possession, custody or control. (R. Doc. 164 at 6-8). The Agreed Protective Order also provides that the "parties will endeavor to agree on search terms to be utilized in the search" of ESI in response to a discovery request and that the documents shall be produced in ".PDF" format unless otherwise agreed by the parties. (*Id*. at 8). The Agreed Protective Order does not, however, purport to modify any of the requirements set forth in the Federal Rules of Procedure, or this court's orders, regarding the scope of discovery, the duties of the parties under the Rules, or the time frame for responding to discovery requests.

Zurich served its request for production of documents on Shaw on December 10, 2013. The court ordered Shaw to respond to Zurich's discovery request by February 15, 2014. (R. Doc. 236 at 4). As discussed above, the parties then engaged in a lengthy period of discussions to determine acceptable search terms. Despite the court's deadline, Shaw has only produced documents responsive to Zurich's request for production of documents that were either reviewed as part of its responses to NAS's discovery requests, or in hard copy documents in its custody, possession, or control. Shaw did not fully respond to Zurich's discovery request within the deadline required by this court's previous order.

That said, Zurich never filed a motion to compel the production of non-privileged ESI responsive to its December 10, 2013 request for documents until its instant motion to compel filed on July 28, 2014. (R. Doc. 325). Zurich's motion to compel was filed (1) over seven months after Zurich served its discovery requests, (2) over five months after this court ordered responses to be provided, (3) approximately four months after Zurich first informed Shaw that it would seek to compel production; and (4) just four days prior to the close of fact discovery. In

its briefing, Zurich represents that it took "months" to complete its own search for ESI and production using search terms proposed by Shaw. (R. Doc. 344 at 2). It is therefore clear to Zurich that the filing of a motion to compel so late in discovery would potentially delay these proceedings by months. Indeed, because the dispositive motion deadline has passed, Zurich has requested the court to deny or defer ruling on Shaw's Motion for Partial Summary Judgment (R. Doc. 311) so that it can obtain the ESI responses to its discovery requests. (R. Doc. 347).

The Federal Rules of Civil Procedure do not mandate that the parties agree on search criteria for ESI. The Agreed Protective Order, which the parties proposed to the court, only required the parties to "endeavor to agree on search terms to be utilized in the search for" ESI responsive to a discovery request. (R. Doc. 164 at 7). Failure to reach an agreement on search terms does not relieve Shaw of its obligation to respond to discovery requests. Shaw could have conducted its own search for responsive, non-privileged ESI and produced those documents to Zurich within the timeframe allowed by the court. In the alternative, Shaw could have sought relief from the court within the timeframes set forth in the court's scheduling order, rather than ignore those deadlines only until faced with a motion to compel. Conversely, Zurich should have sought to compel production of responsive, non-privileged ESI, once it was clear that Shaw would not search for such documents in the absence of a court order, and should have done so well before the end of discovery.

In short, both sides chose to do nothing, waiting to see if the other side would blink first. In doing so, they have compromised the deadlines in the court's scheduling order, the briefing on dispositive motions, and have essentially gambled with the parameters of ESI discovery.

  C. **Resolution of the "Search Terms" Dispute**

Zurich's motion to compel represents that each of the search terms it submitted to Shaw on January 24, 2014 are needed to obtain relevant information to the parties and witnesses in this

matter. (R. Doc. 306-1 at 2). Zurich makes no attempt in support of its motion, or in opposition to Shaw's motion for a protective order, to explain to the court why those terms are required to locate non-privileged ESI that is responsive to its actual requests for production.

The court does not find Zurich's search terms to be reasonable. When searched in the databases of the proposed custodians (which includes risk managers and attorneys) words such as "Settlement," "Settle," "Mediation," "Mediator," "Claims," "deductible," "defense," "Reservation of Rights," and "attorney fees" will generate too many non-responsive documents. Shaw has represented that Zurich's search terms generated 103,202 e-mails and an estimated 20,000 attachments, which would take 10-12 weeks to review, an additional 2 weeks to perform redactions and draft a privilege log, and cost between $550,000.00 - $650,000.00 in legal fees and related production costs. (R. Doc. 326-1).[5] Zurich refused to explore alternative search terms or their results. Accordingly, the court finds that Zurich's search terms would subject Shaw to undue burden and expenses.

The search terms proposed by Shaw are more appropriately tailored to obtain ESI responsive to Zurich's discovery requests, which concern the underlying Shaw/REC action and settlement, and the REC insurance claim. Shaw's proposed search terms contain "the REC Insurance Claim numbers used by Shaw and its insurers for the REC insurance claim, the insurance policy numbers at issue in this case, and the email prefixes of the relevant entities involved in the Underlying REC Action and REC Insurance Claim." (R. Doc. 326-1 at 10). Shaw's proposed search terms also includes the email domain address for FARA, Willis, Zurich, Endurance Services, and Milbank, which incorporates many of the individual e-mail addresses

---

[5] Shaw does not represent the amount of documents that would be generated using its own search criteria, or the time or cost required to review such materials.

that Zurich sought to have included in the ESI search.[6] Finally, the dates proposed by Shaw contain the same start date proposed by Zurich, September 1, 2008, and the appropriate end date of October 24, 2011, the date of the settlement in the underlying action between Shaw and REC. (R. Doc. 325 at 6).[7]

Rule 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).[8] Through its motion for protective order, Zurich is only "requesting that the ESI search terms and protocol be reasonably limited" and that the court order it to use its own search terms and protocol to perform the search for ESI for the custodians identified by Zurich. (R. Doc. 326-1 at 9-10). In light of Shaw's showing that Zurich's broad search terms would result in undue burden and expense to Shaw by retrieving an excess of irrelevant documents, and the court's finding that Shaw's own search terms are reasonable and well-tailored to locate responsive documents, Shaw is ordered to search for non-privileged ESI responsive to Zurich's December 10, 2013 request for production using its own proposed search terms and dates, and the custodians identified by Zurich.[9] *See Hannah v. Wal-Mart Stores, Inc.*, No. 12cv1361, 2014 WL 110950, at *5 (D. Conn. Jan. 10, 2014) (ordering parties to use defendant's proposed ESI search terms, which were "well tailored to produce relevant information without needlessly retrieving an excess of irrelevant documents," instead of

---

[6] Zurich does not identify the individuals listed in its requested search terms, and provides no argument as to why the names of those individuals should be included in the ESI search terms.
[7] Zurich has made no showing that its own proposed end date of December 31, 2012 is appropriate.
[8] Shaw suggests that the court may also issue a protective order under Rule 26(b)(2)(B). (*See* R. Doc. 325 at 7-8). That rule provides that a "party need not provide discovery of electronically stored information from *sources* that the party identifies as not reasonably *accessible* because of undue burden or cost." Fed. R. Civ. P. Rule 26(b)(2)(B) (emphasis added). Shaw has not identified any sources of ESI that it has identified as "not reasonably accessible" because of undue burden or cost. This dispute concerns the methodologies for obtaining ESI, not the sources in which the ESI is stored.
[9] Zurich identified both "Steve Adams" and "Stephen Adams" as Shaw custodians. (R. Doc. 306-2 at 11). Although it may be safe to assume that this is the same person, it is not clear from the record if that is the case. Both names shall be considered custodians.

plaintiff's proposed ESI search terms, which "would case far too wise a new over the universe of ESI, [and] would result in a burdensome amount of irrelevant documents.").

Considering the impending deadlines in this matter, however, the court will require Shaw to produce the documents on a relatively expedited basis.

## III. CONCLUSION

**IT IS ORDERED** that Zurich's Motion to Compel (R. Doc. 306) is **GRANTED in part and DENIED in part,** and Shaw's Motion for Protective Order (R. Doc. 326) is **GRANTED.**

**IT IS FURTHER ORDERED** that Shaw shall fully respond to Zurich's First Requests for Production by producing non-privileged, responsive documents, and if applicable, a privilege log, within thirty (30) days of this order. No other discovery is permitted as the deadline has expired. For the purpose of locating non-privileged, responsive ESI, Shaw must use the search terms and date ranges identified in its March 7, 2014 search terms (R. Doc. 325-12 at 3), and the custodians identified by Zurich in its January 24, 2014 suggested search criteria. (R. Doc. 306-2 at 9-13).

**IT IS FURTHER ORDERED** that each party shall bear its own expenses in bringing and opposing these motions.

Signed in Baton Rouge, Louisiana, on September 3, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**