UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE SHAW GROUP INC.
SHAW PROCESS FABRICATORS INC.

CIVIL ACTION

VERSUS

NO. 12-257-JJB

ZURICH AMERICAN INSURANCE COMPANY,
ET AL

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on numerous motions for summary judgment and partial judgment filed by both plaintiffs, The Shaw Group and Shaw Process Fabricators (Collectively "Shaw"), and by Zurich American Insurance Company (Zurich), the defendant. All these motions are opposed. Zurich filed two additional motions—to strike privileged documents (Doc. 346) associated with Shaw's motion and a motion to defer ruling or, alternatively, deny (Doc. 347) Shaw's motion. Oral argument is unnecessary.

## BACKGROUND

The following facts are undisputed. Shaw and Zurich agreed to an insurance contract that granted coverage to Shaw from September 1, 2008 to September 1, 2009. The policy had a $2,000,000 "per occurrence" limit and a $4,000,000 aggregate cap. Shaw was responsible for a deductible of $750,000 "per occurrence" as well. By agreement, the parties used a third party adjustor, F.A. Richard and Associates (FARA), which entered into separate, individual contracts with Shaw and Zurich. FARA would handle and administrate claims related to the policy, and Zurich would pay claims. This arrangement—where different entities are responsible for paying claims and administrating claims, respectively—is known as an "unbundled" policy.

In 2009, REC Solar Grade Silicon (REC) sued Shaw, alleging faulty pipes that REC received from Shaw had caused damages. Shaw sent the complaint to FARA, and FARA sent it

1

to Zurich on June 29, 2009. In September of 2009, FARA determined that Shaw was likely liable for REC's claims and informed Zurich. On September 9, 2010, Zurich submitted a letter stating that it would defend Shaw under a "full reservation of rights." Prior to this letter, neither FARA nor Zurich undertook any defense of the claim,[1] and Shaw retained, and paid, its own counsel. Shaw retained three firms at various junctures of the litigation process: Oles Morrison, Griffith Nixon, and finally, Baker Donelson. Both sides agree that these law firms aggressively and adequately defended[2] Shaw.

The REC lawsuit settled in October of 2011. Several settlement conferences occurred beforehand. The first settlement conference was in December of 2009, approximately nine months before Zurich issued the "reservation of rights" letter. Although the other conferences were after Zurich's letter, Zurich participated in none of them. Ultimately, the case settled for $24,554,520.50: $20,750,000 in damages and Shaw's agreement not to pursue an uncontested counterclaim valued at $3,804,520.50. Zurich paid $4,000,000 to Shaw toward the settlement amount in accordance with the policy's aggregate cap; Shaw paid at least one $750,000 deductible.

## CLAIMS

Shaw asserts, essentially, four claims against Zurich. First, Shaw asserts that Zurich breached the insurer's duty to defend by failing to promptly pay defense costs. Second, Shaw asserts that Zurich failed to attempt to settle Shaw's suit with REC in good faith by refusing to attend settlement conferences and mediations. Third, Shaw claims that Zurich violated

---

[1] The reasons for this are hashed out across the various memoranda and addressed in the analysis section of this ruling.
[2] The dispute concerns whether Zurich had an obligation to obtain defense counsel and, if that obligation was breached, whether Shaw suffered any damages from being forced to hire and pay its own counsel.

Washington's Consumer Protection Act (CPA). Fourth, Shaw asserts that Zurich violated Washington's Insurance Fair Conduct Act (IFCA).

## LAW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. Id. The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. Id. A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. Grimes v. Tex. Dep't of Mental Health, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991), cert. denied, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. Celotex, 477 U.S. at 322.

## ANALYSIS

I. Choice of Law (Docs. 323, 330, 331, 349, 352)

In several of its memoranda, Zurich argues that Louisiana law applies to the bad faith failure to attempt to settle claim. It points out that under the dépeçage doctrine, a different state's law can apply to different issues in the case. Although Zurich acknowledges the Court has already ruled on choice of law, it argues that those rulings only applied Washington law to the duty to promptly defend issue and not the failure to attempt to settle claim. The Court does not find this argument persuasive; the ruling on the motion for reconsideration conclusively determined that Washington law applies to Shaw's claims against Zurich. (Doc. 132 at 10–12).

II. Zurich's responsibility for FARA (Doc. 311)

Shaw and Zurich both seek summary judgment on the issue of whether Zurich is responsible for the actions of FARA, the third party administrator. This liability affects all of Shaw's claims. Shaw offers two arguments: first, that under the contract's language, Zurich assumes responsibility for all of FARA's actions, including the essentially non-delegable duties to act in good faith. See, e.g., *Natividad v. Alexsis, Inc.*, S.W.2d 695, 698 (Tex. 1994). Second, that FARA is Zurich's agent, and under Washington's common law of agency, Zurich, as principal, is responsible for FARA's actions. *Chicago Title Ins. Co. v. Office of Ins. Comm'r*, 309 P.3d 372, 380 (Wash. 2013). The Court agrees with Shaw's second argument: the duty of good faith and fair dealing cannot be delegated. The Court holds as a matter of law that Zurich is responsible for the actions of FARA.

III. Claim One: Failure to Promptly Pay Defense Costs (Docs. 305, 311)

A. Breach Due to Failure to Promptly Pay Defense Costs

Shaw's claims against Zurich include a breach of the insurer's obligation to defend the insured. Under Washington law, the duty to defend arises at the time of "filing . . . a complaint

alleging covered claims." *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 780–81 (Wash Ct. App. 2001). Shaw moves for summary judgment based on the fourteen month delay; Zurich moves for summary judgment arguing that because of the complex, "unbundled" policy arrangement, Shaw was to pay its first $750,000 in defense costs. The Court finds that neither party has met its burden, and therefore a genuine dispute of material fact exists as to whether Zurich breached the duty promptly pay defense costs.

    B. Causation of Damages

Zurich also claims that because it ultimately paid the $4,000,000 policy cap, Shaw suffered no damages. Though Washington law appears silent, several federal district courts interpreting general contract principles have found that damages are available even if the insurer ultimately fulfills its obligation in an untimely manner. See, e.g., *Hizer v. Gen. Motors Corp., Allison Gas Turbine Div.*, 888 F. Supp. 1453, 1459 (S.D. Ind. 1995). Shaw points to several cases holding that the "time value of money" is compensable. Zurich offers distinctions between those cases and this case,[3] but the Court finds Zurich's argument—that an insurer could fail to defend for fourteen months and then not be liable for any damages because the insurer paid costs later—illogical. The Court finds that "time value of money" is sufficient to constitute damages should Shaw prove its case.

    C. Zurich's Defenses (Doc. 311)

Zurich asserts several "affirmative defenses" in its answer, including allegations that Shaw was not cooperating with Zurich. (Doc. 311-1 at 29). Shaw argues that because Zurich breached the duty to promptly defend, Zurich should be prevented from raising these defenses. *Id*. These are counterarguments to Shaw's allegation that Zurich breached the duty to defend, not affirmative defenses. Regardless, Shaw's argument hinges on a finding that Zurich breached the

---

[3] For example, Zurich claims that in several of those cases, the defendants failed to defend the insured at all.

5

duty to defend by failing to promptly pay defense costs, and the Court, as stated above, has found that there remains a genuine dispute of material fact as to that question. Therefore, there remains a genuine dispute of material fact as to whether Shaw's own actions influenced Zurich's alleged failure to promptly defend.

IV. Claim Two: Bad Faith Failure to Attempt to Settle (Doc. 311)

Under Washington law, if the insured may reasonably be liable, an insurer has an affirmative duty to attempt to settle the case in good faith. *Truck Ins. Exch. of Farmers Ins. Grp. V. Century Indemn. Co.*, 887 P.2d 455, 460 (Wash. Ct. App. 1995). It is not required that the insurer know the extent of liability, as the duty to attempt to settle is distinct from the duty to pay on the policy. *Specialty Surplus Ins. Co. v. Second Chance, Inc.*, 412 F. Supp. 2d 1152, 1166 n.4 (W.D. Wash. 2006) This duty is rooted in common law, specifically the implied duty of "good faith and fair dealing," making it a tort claim. *Specialty Surplus Ins. Co.*, 412 F. Supp. 2d at 1165 n.4. Therefore, contractual language abrogating or ignoring this responsibility does not absolve the insured of this responsibility. *Id*.

Shaw claims that Zurich breached this duty because Shaw's potential liability became clear in September 2009, and it correctly points out that the extent of liability at this time was not relevant to Zurich's legal duty. (Doc. 311-1 at 24). Consequentially, Zurich's arguments that the settlement would have been well outside of its $4,000,000 aggregate cap and that liability did not "fully crystalize" until July of 2011 do not create a genuine issue of material fact. (Doc. 349 at 11–12). However, Zurich's argument that Shaw failed to alert Zurich to the settlement negotiations presents a genuine dispute of material fact. A reasonable jury could find that because Zurich was unaware of many of the opportunities, as well as disinvited to one, Zurich did not breach its duty to attempt to settle. Therefore, summary judgment must be denied.

6

V.  Claim Three: Shaw's CPA Claims (Docs. 305, 311)

Under Washington's CPA, a claimant must establish five elements: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) which impacts the public interest; (4) an injury to business or property; and (5) a causal link between the injury and deceptive act or practice. *Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 2014 WL 1671491 at *5 (E.D. Wash. 2014). Shaw claims that it has established elements one, two and three. For element one, Shaw refers to *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, which notes that the CPA incorporates provisions of Washington's Administrative Code (WAC). 792 P.2d 520, 529 (1990). Shaw alleges that Zurich committed an "unfair or deceptive trade practice" by violating WAC 284-30-330(2), which covers "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." However, "[w]hat is determinative is the reasonableness of the insurer's action in light of all the facts and circumstances of the case," and this is a question for the jury. *Industrial Indem. Co. of the Northwest, Inc.*, 792 P.2d at 528.

Zurich's first motion for partial summary judgment seeks to dispose of another CPA claim: that Zurich misrepresented its policy terms. (Doc. 305-1). The WAC—Provision 284-30-330(1)—provides for this cause of action when the insurer misrepresents a "pertinent fact" relating the policy; it requires more than a difference of opinion on coverage. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887 (9th Circuit 2012). Zurich asserts that there was merely a difference of opinion on coverage, but Shaw argues that Zurich indicated to FARA that there may not be coverage when Zurich's internal documents reveal that they knew there was coverage. Neither side has sufficiently established its position, so summary judgment is inappropriate at this time.

VI.   IFCA Claims (Doc. 331)

Shaw made several claims under IFCA, including a claim for treble damages and attorneys' fees. Zurich filed a motion for summary judgment arguing that Shaw gave inadequate notice under the statute's procedural requirements. (Doc. 331). IFCA requires twenty day notice before filing suit, both to the insurer and to Washington's insurance commissioner. RCW 48.30.015(8)(a). Several federal courts interpreting Washington law have granted summary judgment in favor of insurers based on failure to provide notice. E.g. *Hiller v. Allstate Prop. & Cas. Ins. Co.*, WL 2325603 at *9 (E.D. Wash. 2012). Federal courts interpreting Washington law have also, however, allowed for IFCA claims to move forward when the plaintiff filed suit, gave notice of intent to sue under IFCA, and then filed an amended complaint more than twenty days later to reflect the IFCA claim. E.g. *Jamir v. The Standard Fire Ins. Co.* LEXIS 131377 at **4–6 (W.D. Wash. 2010).

Shaw's first argument, that failure to provide notice is an affirmative defense and that Zurich should have asserted it in its answer, is not persuasive. Zurich cites *Freeman v. State Farm Mut. Auto. Ins. Co.*, where that court noted that the notice requirement is clear and unambiguous before granting summary judgment under IFCA. WL 2891167 at *4 (W.D. Wash 2012). However, Shaw's second argument is logical. Although Shaw's first complaint referenced the statute, they made a pointed effort to give notice to Zurich and amend the complaint before seeking the additional relief of treble damages. Zurich's argument that this defeats the purpose of the notice requirement—time to resolve the claim before litigation—does not hold. This suit had numerous other claims, meaning litigation irrespective of the disposition of the IFCA claim, and the notice before amending the complaint gave Zurich time to reduce their exposure. Even if

Zurich had resolved the IFCA claim in the twenty day window, the majority of the lawsuit would survive.

VII. Zurich's Counterclaims

In its answer, Zurich seeks several types of affirmative relief. Primarily, Zurich seeks to have a set off from any damage award, including the value of a second $750,000 deductible from Shaw based on the "per occurrence" language of the contract. Zurich also made claims for unnecessary defense costs it paid to Shaw.

A. Set off Amounts (Docs. 311, 352)

i. Set Off for Second Deductible (Docs. 311, 352)

If an insured has not paid a deductible owed, this amount may be set off from a payment the insurer must make the insured. *Bickford v. City of Seattle*, 17 P.3d 1240, 1243 (Wash. Ct. App. 2001). Zurich's request for a set off requires that Shaw owes, and failed to pay, a second deductible. Shaw argues first that Zurich waived this by having its witness testify that they did not know what Shaw owed. (Doc. 311-1 at 31–32). Shaw also argues that Zurich paid $4,000,000 to gain "leverage" rather than to honor the policy, and Shaw further claims that it paid enough to match the second deductible obligation, even if it were owed. (Doc. 377 at 6–9). Zurich argues that because they paid $4,000,000, or the equivalent of two occurrences, they are entitled to two deductibles. (Doc. 352-12 at 13–14). Zurich disputes both Shaw's characterization of the $4,000,000 payment and how much Shaw paid Zurich. (Doc. 390 at 6–8). At this time, the Court defers ruling on this issue.

ii. Set Off for Settlements of Excess Insurers (Doc. 352)

Zurich further claims a right to have any damage award offset in the amount of the settlements received by Shaw from the excess insurers. (Doc. 352-12 at 17). It points to its

$4,000,000 policy limit and the size of the settlement, arguing that Shaw should be limited to its "actual damages" because Shaw designed its insurance policies so that certain insurers would be liable for certain amounts (Doc. 352-12 at 18–19). Shaw counters that it is seeking tort damages for the failure to defend, not contract, so its contract limitations are not relevant. (Doc. 377). Shaw also cites case law to support its position that tort remedies are necessary because otherwise, the insured would have to prove what would have happened; that would be an extremely difficult burden. *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). Zurich counters that this would remove any incentive for insurance companies to pay in similar situations, as they would risk exposure of double liability. (Doc. 390 at 17).

Although evidence of the policy limit and the settlements with the excess insurers may have some bearing on the amount of damages caused by bad faith failures to promptly pay defense costs and to attempt to settle, the evidence does not afford Zurich a set off. Summary judgment on this issue is therefore denied.

        iii.      Set Off for Payments Made by Zurich Under the Policy (Doc. 352)

The last set off that Zurich seeks is for the $4,000,000 million that it paid to Shaw. (Doc. 352-12 at 19) Zurich argues that otherwise, Shaw will obtain double recovery for the same harm. *Id.* at 20. Shaw argues that its bad faith claims are tort claims, not contractual ones. (Doc. 377 at 13). Under Washington law, bad faith claims acknowledge "that traditional contract damages do not provide for an adequate remedy for a bad faith breach of contract." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) (Internal Citations Omitted). Zurich argues neither that the claims are contractual nor that Shaw has misstated Washington law. Instead, Zurich claims that courts developed bad faith law as it is with situations where the insurer paid nothing and not for this "unique" situation. (Doc. 390 at 16). Nonetheless, Zurich can offer no authority for its

position. Consequently, summary judgment in favor of Zurich should be denied on the issue of a set off for the $4,000,000 already paid to Shaw.

B. Unnecessary Defense Costs (Doc. 311)

Zurich also seeks to recoup unnecessary defense costs from Shaw. (Doc. 311-1 at 32). Shaw argues that Zurich should be estopped from doing so because it already audited Shaw's bills, Washington law prevents reimbursement, Zurich must have advised Shaw in writing that it will claim reimbursement when making payments and failed to do so[4], and that Zurich paid the attorneys, not Shaw, so they are the proper persons from whom to seek reimbursement.

Shaw cites a series of cases excluding reimbursement, but Zurich argues that these cases are distinguishable because they involve defending claims that later turned out to be excluded. (Doc. 349 at 27). Zurich also notes that it did not audit the bills from Baker Donelson, and those are the costs from which Zurich seeks reimbursement. *Id*. Zurich further argues that when it issued its letter with full reservation of rights, this advised Shaw in writing that it may seek reimbursement. *Id*. at 26–27. Finally, Zurich claims that although they paid law firms and attorneys, they did so at Shaw's orders. *Id*. at 27.

The Court finds estoppel inappropriate at this juncture and that Shaw's claims for what it believes are unpaid defense costs have opened the door on what would be a fair award under the circumstances of this case. Zurich, however, has not established that it is entitled to any amount of damages at this time. Therefore, summary judgment must be denied.

VIII. Attorneys' Fees

Zurich filed a motion for partial summary judgment to prevent Shaw from recovering attorneys' fees. (Doc. 330). Zurich's arguments hinge on that attorneys' fees could only be

---

[4] See WAC 284-30-350(7).

available to Shaw under Washington law in three instances: common law, Washington's IFCA, and the Washington CPA.

Zurich's first argument, failure of IFCA notice, has been addressed[5] above. The second IFCA argument, denial of coverage, fails to compel summary judgment as well. Although Zurich never formally denied coverage, it did fail to pay for an extended period of time—this could constitute a "constructive denial" of coverage. Zurich, then, has failed to establish that it never denied coverage. Regarding the CPA claim, a reasonable jury could find that Zurich's failure to participate in settlement conferences and communicate with Shaw regarding the case *caused* Shaw to suffer the loss of money, time value of money, and a variety of other damages. Zurich's causation dispute presents a factual question. As with IFCA, the Washington common law argument fails to support summary judgment because a genuine dispute of material fact exists as to whether Zurich constructively denied coverage to Shaw. At this time, summary judgment in favor of Zurich would be premature.

IX. REC Settlement's Reasonableness (Doc. 332)

In August of 2013, Judge Peterson in the Eastern District of Washington accepted the settlement between Shaw and REC as reasonable. (Doc. 332-1 at 1). Zurich argues that Judge Peterson only ruled that the $20,750,000 in cash was reasonable, not the waiver of the $3,804,520.50 counterclaim. *Id*. at 1–2. Therefore, according to Zurich, Judge Peterson must have considered the waived claim's value as unreasonable. *Id*. at 2. The Court finds that Judge Peterson's ruling reflects that the Judge found the entire settlement reasonable. The Court, it should be noted, makes no finding of its own as to the reasonableness of settlement; it is merely interpreting Judge Peterson's decision.

X. Other Motions

---

[5] See Section II.I, *supra*.

A. Motion to Strike Privileged Documents (Doc. 346)

In relation to Shaw's Motion for Partial Summary Judgment (Doc. 311), Zurich seeks to strike several documents submitted by Shaw to support this motion. (Doc. 346). Zurich argues that these are not relevant to the case and include legal advice and other discussions protected by attorney-client privilege. (Doc. 346-1 at 1–3). This motion is moot, however, because these documents do not form the basis of the Court's ruling, and the motion to strike only seeks to prevent their use in support of the summary judgment motion and the opposition to one of Zurich's summary judgment motions.

B. Motion to Defer Ruling (Doc. 347) on Summary Judgment Motion (Doc. 311)

Based on alleged discovery violations and refusals to produce certain documents by Shaw, Zurich requests that the Court defer ruling on, or deny, the plaintiffs' Motion for Partial Summary Judgment. (Doc. 347-1 at 1–2). Such a ruling requires meeting four elements:

> Three general requirements can be elicited from International Shortstop that the non-movant must establish for a continuance of discovery: (i) requesting extended discovery prior to the court's ruling on summary judgment; (ii) put the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) demonstrating to the trial court specifically how the requested discovery pertains to the pending motion. Additionally, the non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth.

*Wichita Falls Office Associates v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (Internal Citations Omitted). Shaw contests the motion, arguing that Zurich has failed to be appropriately "diligent" in seeking the desired discovery. (Doc. 368 at 1); *Wichita Falls Office Associates*, 978 F.2d at 919. With respect to element three, that the pending requests affect the motion, Zurich's motion is now moot. The declaration Zurich submitted indicated the information would affect the duty to promptly defend and bad faith claims, and the Court denied summary judgment on those claims on the merits. Therefore, the Court finds ruling on this motion unnecessary.

**CONCLUSION**

Zurich's motion for summary judgment (Doc. 323) is DENIED. Zurich's motions for partial summary judgment (Docs. 305, 330, 331, 332, and 352) are DENIED. Shaw's motion for partial summary judgment (Doc. 311) is DENIED in part and GRANTED in part with respect to Zurich's responsibility for the actions of FARA. Zurich's motions to strike (Doc. 346) and to defer ruling (Doc. 347) are MOOT.

Signed in Baton Rouge, Louisiana, on November 20, 2014.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**